

Office of the Director

U.S. Department of Homeland Security
500 12th Street, SW
Washington, DC 20536

**U.S. Immigration and Customs Enforcement**

June 4, 2024

| | |
|---|---|
| MEMORANDUM FOR: | Daniel A. Bible<br>Executive Associate Director<br>Enforcement and Removal Operations |
| FROM: | Patrick J. Lechleitner<br>Deputy Director and<br>Senior Official Performing the Duties of the Director |
| SUBJECT: | Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, *Securing the Border*, and Interim Final Rule, *Securing the Border* |

The President issued Presidential Proclamation of June 3, 2024, *Securing the Border*. Subsequently, the Secretary issued a memorandum directing relevant components to take all appropriate actions to implement the Proclamation. In addition, the Secretary and the Attorney General issued an Interim Final Rule (IFR), *Securing the Border*, establishing certain limitations on asylum eligibility and revising certain standards and procedures associated with the expedited removal process. These documents go into effect at 12:01 a.m. Eastern Daylight Time on June 5, 2024.

The IFR makes key changes to asylum processing that will be in place whenever encounters are at levels that impede DHS' ability to apply timely decisions and consequences to the majority of noncitizens encountered at the southern border, as described in the Proclamation. These changes include: deeming certain noncitizens who enter across the southern border during circumstances of high encounters at the border to be ineligible for asylum, with limited exceptions; applying a manifestation of fear requirement for those processed for expedited removal to be referred to USCIS for a credible fear interview; and creating a new, higher screening standard when screening for statutory withholding of removal and protection under Article 3 of the Convention Against Torture.

The IFR is intended to significantly increase the consequences in place for noncitizens who cross irregularly—including those who cross unlawfully between ports-of-entry (POEs)— and to maximize our ability to remove noncitizens who do not establish a legal basis to remain in the United States as quickly as possible. The ultimate goal of these measures is to decrease encounter rates at the southern border.

Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, *Securing the Border*, and Interim Final Rule, *Securing the Border*
Page 2 of 5

The Proclamation's suspension and limitation on entry and the IFR both rely on factual findings about average daily encounters, and after June 5, 2024, will turn on or off depending on encounter numbers. The measures in the Proclamation and the rule apply until 14 calendar days after the Secretary makes a factual determination that there has been a 7-consecutive-calendar-day average of less than 1,500 encounters between POEs. The measures continue or reactivate on the calendar day after the Secretary makes a factual determination that there has been a 7-consecutive-calendar-day average of 2,500 encounters or more between POEs.

During a period where the Presidential Proclamation's suspension and limitation on entry applies, the entry of noncitizens across the southern border is suspended and limited, unless an exception applies. For purposes of the Presidential Proclamation, "southern border" refers to:

- The southwest land border, defined as the entirety of the U.S. land border with Mexico; and
- The southern coastal border, defined as all maritime borders in Texas, Louisiana, Mississippi, Alabama, and Florida, and all maritime borders proximate to the southwest land border, the Gulf of Mexico, and the southern Pacific coast in California, as well as the coasts of the U.S. Virgin Islands and Puerto Rico.

The Presidential Proclamation does not apply to U.S. citizens. Moreover, it is not applicable to any of the following:

- U.S. noncitizen nationals;
- Lawful permanent residents (LPRs);
- Unaccompanied children (UCs);
- Noncitizens who are determined to be victims of severe forms of trafficking;
- Noncitizens who have sufficient documents to seek entry or admission into the United States, including visa holders, members of the armed forces, visa waiver program travelers, or those holding advance parole documents;
- Individuals arriving at a POE with a CBP One appointment, which the Secretary has determined is a safe and orderly process to arrive at a POE;
- Noncitizens who a U.S. Customs and Border Protection (CBP) officer permits to enter, based on the totality of the circumstances, including consideration of significant law enforcement, officer and public safety, urgent humanitarian, and public health interests that warrant permitting the noncitizen to enter; and
- Noncitizens who a CBP officer permits to enter due to operational considerations that warrant permitting the noncitizen to enter.

In general, noncitizens encountered by CBP between POEs on the southern border are subject to the Presidential Proclamation, though it is not applicable to excepted categories of noncitizens such as LPRs, UCs, and other excepted categories of noncitizens.

Additionally, the IFR implements a limitation on asylum eligibility for any noncitizen, with limited exceptions, who enters the United States across the southern border during a period in which the suspension and limitation on entry applies, as described in the Presidential

Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, *Securing the Border*, and Interim Final Rule, *Securing the Border*
Page 3 of 5

Proclamation, and makes a number of changes to the credible fear process as applied to such individuals.

Specifically, CBP will not question a noncitizen described in the Presidential Proclamation and processed for expedited removal regarding his or her fear of return, but will refer the impacted noncitizen for a credible fear interview before U.S. Citizenship and Immigration Services (USCIS) only if the noncitizen manifests a fear of return, or expresses an intention to apply for asylum or protection, expresses a fear of persecution or torture, or expresses a fear of return to his or her country or the country of removal.

Those who enter the United States across the southern border while the suspension and limitation described in the Presidential Proclamation is in effect will be ineligible for asylum unless they demonstrate to USCIS or EOIR that certain exceptionally compelling circumstances exist, including if the noncitizen demonstrates that they or a member of their family with whom they are traveling:

> (1) faced an acute medical emergency;
> (2) faced an imminent and extreme threat to life or safety, such as an imminent threat of rape, kidnapping, torture, or murder; or
> (3) satisfied the definition of "victim of a severe form of trafficking in persons" provided in 8 C.F.R. § 214.11.

ERO officers will not determine whether noncitizens are subject to an exception to the limitation on asylum eligibility, however, officers will assist partner agencies, such as USCIS, in their assessment of whether the rule applies or if a noncitizen is subject to an exception, by documenting any information affirmatively stated by the noncitizen that may be relevant to the consideration of the above factors.

ERO officers will continue to follow all other applicable legal obligations and DHS and ICE policies and procedures, including complying with the *Orantes* Injunction,[1] the *Flores* Settlement Agreement,[2] and the *Ms. L. v. ICE* Settlement Agreement.[3]

### Guidance on Noncitizens Manifesting Fear

Upon suspension of and limitation on entry during certain periods of high encounters under the Presidential Proclamation of June 3, 2024, *Securing the Border*, pursuant to the *Securing the Border* IFR, 8 C.F.R. § 235.15, a noncitizen who enters across the southern border, who is not described in the exceptions to the Presidential Proclamation and who is placed in expedited removal will be referred for a credible fear interview only if the noncitizen manifests a fear of return or expresses an intention to apply for asylum or related protection, expresses a fear of persecution or torture, or expresses a fear of return to his or her country or designated country of

---

[1] *Orantes-Hernandez v. Gonzales*, No. 82-01107 (C.D. Cal. Nov. 26, 2007) (Modified, Consolidated Injunction).

[2] *Flores v. Reno*, No. 85-4544 (C.D. Cal. Jan. 17, 1997) (Stipulated Settlement Agreement).

[3] *Ms. L. v. ICE*, No. 18-428 (S.D. Cal. Dec. 11, 2023) (Settlement Agreement).

Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, *Securing the Border*, and Interim Final Rule, *Securing the Border*
Page 4 of 5

removal. Such a noncitizen in expedited removal must manifest fear, or express a fear or intention to apply for asylum or related protection. This fear is not prompted by CBP or ICE questioning regarding whether the noncitizen has a fear of persecution or torture. A noncitizen can manifest fear or an intention to apply for asylum or related protection *at any time in custody*.

There may be cases in which a noncitizen manifests a fear of return after the expedited removal order is issued and the noncitizen is transferred to ERO custody. ICE has long recognized that a fear or intention to apply for asylum or related protection can be manifested in many different ways. Indeed, a fear may be manifested verbally, non-verbally, or physically. In determining whether a noncitizen manifests fear, the following verbal, non-verbal, and physical indicators can be indicative of fear of persecution or torture, though this is not an exhaustive list:

- Statements of fear
  - For example, statements may include, but are not limited to, the following;
    - I am afraid to go to [country]
    - I don't want to go to [ country] because I [or my family traveling with me or my family in my home country] will be harmed
    - Individual or group] will hurt me [or my family]
    - I am afraid of [country's government or governing group]
- Statements that the noncitizen was previously harmed in their home country or country of removal
- Statements that, if traveling in a family unit or family group, the noncitizen's family member was previously harmed in home country or proposed country of removal
- Evidence of physical injury consistent with abuse (e.g., bruises, scars)
- Evidence of self-harm
- Non-verbal actions that may indicate fear such as hysteria, trembling, shaking, unusual behavior, changes in tone of voice, incoherent speech patterns, panic attacks, or an unusual level of silence.

If doubt or ambiguity exists as to whether a noncitizen's statement, actions, or behavior constitute a manifestation of fear, expression of fear, or expression of an intent to seek asylum or protection, then ERO officers should refer the matter to a supervisor.

If ERO determines that a noncitizen subject to expedited removal manifests a fear of return or expresses an intention to apply for asylum or related protection, or expresses a fear of persecution or torture, or expresses a fear of return to his or her country or designated country of removal, the officer will provide the noncitizen with the Information About Credible Fear Interview Sheet and refer the noncitizen to USCIS for a credible fear interview. Noncitizens who have been referred to USCIS for a credible fear interview shall be afforded a consultation period of a minimum of 4 hours that must occur between 7 a.m. and 7 p.m. local time prior to a credible fear interview. The 4 hour consultation period begins when ICE provides the individual with an opportunity to consult, i.e., when the noncitizen is provided access to a phone. The ERO officer makes no qualitative determination of any claim of fear.

Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, *Securing the Border*, and Interim Final Rule, *Securing the Border*
Page 5 of 5

## Signage and Video Guidelines for Noncitizens Described in the Presidential Proclamation

ERO must take the following measures in ICE facilities in which noncitizens subject to the Presidential Proclamation and/or the IFR are housed to ensure that noncitizens who may wish to seek asylum or other protection in the United States are aware of their ability to claim a fear of return or an intention to seek asylum or related protection.

- Post signs in the following areas in detention facilities:
    - Intake/In-processing areas, including hold rooms
    - Medical Units
    - Housing units – including special/restricted housing units
    - Dining Areas
    - Law Libraries

The language on these signs will be provided by ICE headquarters and read:

> If you
> Are hungry or thirsty,
> Need medical care,
> Fear persecution or torture if removed from the United States,
> Have been a victim of abuse,
> Have been a victim of a sexual assault,
> Have witnessed a crime,
> Tell an Officer. Your claim will be heard.
> You may be referred to a medical professional, an asylum officer, or other law enforcement professional.

These signs must be posted in English and Spanish. ERO will have additional translations available in facility law libraries in the following languages: Arabic, Bengali, French, Haitian Creole, Hindi, K'iche' (Quiché)/Kxlantzij, Portuguese, Punjabi, Romanian, Russian, Simplified Chinese, Turkish, and Vietnamese.

Moreover, in any location where it is possible to show to noncitizens a video, the video provided explaining to noncitizens that they should raise these concerns should be played on a loop. It may be played in conjunction with other videos but should be shown no fewer than once every two hours from 7:00 a.m. until 7:00 p.m. on a daily basis.

Specifically, the videos must be played in in-processing areas.

## Disclaimer

This guidance does not, is not intended to, and may not be construed to create or modify any right or benefit, substantive or procedural, enforceable at law by any party against the United States, its agencies, its officers, or any person.