**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:24-cv-1702-RC |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ..........................................................................................................................3

I.      INTERVENTION AS OF RIGHT SHOULD BE DENIED ............................................4

      A.      Texas Lacks a Concrete Interest in This Suit .......................................................4

              1.      Texas cannot establish standing .................................................................5

              2.      Texas has not identified a significantly protectable interest ....................10

      B.      Texas's Asserted Interest in the IFR's Enforcement is Adequately Represented by the Federal Government .................................................................................12

II.     PERMISSIVE INTERVENTION SHOULD BE DENIED ...........................................13

CONCLUSION......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Arpaio v. Obama*,
    27 F. Supp. 3d 185 (D.D.C. 2014)*, aff'd*, 797 F.3d 11 (D.C. Cir. 2015) ................................6

*Am. Immigr. Laws Ass'n v. Reno*,
    199 F.3d 1352 (D.C. Cir. 2000) ...........................................................................................11

*City of Cleveland, Ohio v. Nuclear Regul. Comm'n*,
    17 F.3d 1515 (D.C. Cir. 1994) ............................................................................................10

*Defs. of Wildlife v. Perciasepe*,
    714 F.3d 1317 (D.C. Cir. 2013) .............................................................................................3

*Dellums v. United States Nuclear Regulatory Comm'n*,
    863 F.2d 968 (D.C. Cir. 1988) ...............................................................................................5

*Dep't of Homeland Sec. v. New York*,
    141 S. Ct. 1370 (2021) .........................................................................................................13

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*,
    717 F.3d 189 (D.C. Cir. 2013) ..................................................................................5, 6, 14

*Diamond v. Charles*,
    476 U.S. 54 (1986) ...................................................................................................9, 10, 14

*Donaldson v. United States*,
    400 U.S. 517 (1971) .............................................................................................................10

*East Bay Sanctuary Covenant v. Biden*,
    102 F.4th 996 (9th Cir. 2024) ............................................................................................8, 9

*E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) ....................................................................................4, 13-14

*FEC v. NRA Political Victory Fund*,
    513 U.S. 88 (1994) ...............................................................................................................15

*Florida v. Mellon*,
    273 U.S. 12 (1927) .................................................................................................................6

*Fund For Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ...............................................................................................5

*Grace v. Barr*,
    965 F.3d 883 (D.C. Cir. 2020) .............................................................................................11

*Jones v. Prince George's Cnty.*,
    348 F.3d 1014 (D.C. Cir. 2003) ........................................................................3, 4

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) .............................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................6

*Make The Rd. New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ..........................................................................11

*Old Dominion Elec. Coop. v. FERC*,
    892 F.3d 1223 (D.C. Cir. 2018) .....................................................................5, 14

*Printz v. United States*,
    521 U.S. 898 (1997) .............................................................................................7

*Raines v. Byrd*,
    521 U.S. 811 (1997) .........................................................................................6, 7

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) .............................................................................................7

*Tiffany Fine Arts, Inc. v. United States*,
    469 U.S. 310 (1985) ...........................................................................................10

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ...................................................................................5, 9, 14

*United States v. Texas*,
    599 U.S. 670 (2023) ...................................................................................6, 7, 8

*Washington v. FDA*,
    No. 23-35294, 2024 WL 3515765 (9th Cir. July 24, 2024) ................................8

## FEDERAL STATUTES

8 U.S.C. § 1225(b)(1)(B)(iv) ..........................................................................................2

8 U.S.C. § 1252(a)(2)(A) ..............................................................................................11

8 U.S.C. § 1252(e)(3) ....................................................................................................11

28 U.S.C. § 517 .............................................................................................................15

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 24(a)(2) ................................................................................................ 3, 4, 10, 12

**FEDERAL REGISTER**

*Securing the Border*,
   89 Fed. Reg. 48,487 (June 3, 2024) ........................................................................................2

*Securing the Border*,
   89 Fed. Reg. 48,710 (June 7, 2024) ........................................................................................2

## INTRODUCTION

The State of Texas seeks to intervene in this suit assertedly to help the United States defend an Interim Final Rule ("IFR") promulgated by the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ") (collectively, "the Departments") in June 2024, and a DHS-issued memorandum ("Consultation Memo"). The IFR and Consultation Memo were promulgated following a Presidential Proclamation suspending and limiting entry into the United States for certain categories of noncitizens. The IFR imposes a limit on asylum eligibility and modifies the asylum and protection screening process while the conditions described in the Proclamation exist. And during such periods, the Consultation Memo provides a shorter time period for noncitizens who are preparing for such screenings to consult with a person of their choice. Although the federal government is vigorously defending the IFR and Consultation Memo issued just two months ago, Texas now seeks to intervene, claiming the federal government cannot adequately defend the IFR and protect Texas's interests.

Texas's motion should be denied. Texas has not even attempted to establish Article III standing, a requirement to intervene in this case. It also has not established any significant protectable interest in the continued implementation of the IFR or the Consultation Memo challenged in this suit. Texas has not demonstrated that the federal government inadequately represents its asserted interest in maintaining the IFR or Consultation Memo. And Texas's proposed intervention is precluded by numerous equitable and practical concerns, including that its intervention would undermine Congress's policy choice to give authority over the federal government's litigation to the Attorney General and Solicitor General.

## BACKGROUND

In June 2024, the President signed a Proclamation suspending and limiting the entry of certain categories of noncitizens. *Securing the Border*, 89 Fed. Reg. 48,487 (June 3, 2024) ("Proclamation"). The President found that, because of recent irregular arrivals of migrants in large numbers at the nation's southwest border, the border security and immigration systems of the United States were severely strained, such that entry of certain categories of noncitizens across the southern border was detrimental to the interests of the United States. *Id.* The next day, the Departments promulgated an IFR that effectuates changes to the process for noncitizens, who are described in the Proclamation, seeking asylum and related forms of protection who enter during the emergency border circumstances identified in the Proclamation. *Securing the Border*, 89 Fed. Reg. 48,710 (June 7, 2024); *id.* at 48,710 (stating that the IFR became effective at 12:01 a.m. eastern daylight time on June 5, 2024). The IFR implements three key changes as to those noncitizens covered by the Proclamation: (1) it renders certain noncitizens who enter across the southern and coastal borders during emergency border circumstances ineligible for asylum unless they can establish exceptionally compelling circumstances or are excepted by the Proclamation; (2) it applies that limitation on asylum eligibility during credible fear interviews and screens those subject to the limitation for other forms of protection under a heightened "reasonable probability" standard; and (3) it changes the way DHS screens noncitizens, providing that DHS will refer noncitizens for credible fear interviews only if they affirmatively manifest or express a fear of return or an intent to seek asylum. *Id.* Supporting the implementation of the IFR, DHS issued the Consultation Memo, which provides that during the emergency border circumstances described in the Proclamation, DHS will reduce the period in which a noncitizen may consult with a person of their choosing under 8 U.S.C. § 1225(b)(1)(B)(iv) from a minimum of twenty-four hours to a minimum of four hours (in accordance with specified rules).

Following the promulgation of the IFR and Consultation Memo, Plaintiffs—individual noncitizens who allege they were subject to the IFR or Consultation Memo and two organizations that provide legal services to noncitizens seeking asylum, First Am. Compl. ¶¶ 10-25—challenged the Rule and Consultation Memo under the Administrative Procedure Act. This case was filed on June 12, 2024, and the parties proposed a quick summary judgment briefing schedule that the Court endorsed. ECF Nos. 10, 22; Court orders dated July 1, 2024, July 26, 2024. The parties are already in the middle of briefing: Plaintiffs' motion for summary judgment was filed on July 26, 2024. ECF No. 23.

On July 19, 2024, Texas moved to intervene. ECF No. 19. At a high level, Texas claims an interest in the IFR's continued implementation. Texas generally speculates that the federal government "cannot be trusted to defend or enforce" the Rule. Memorandum of Law in Support of Motion, ECF No. 19-1 ("Mot.") at 16.

## ARGUMENT

This Court should deny Texas's motion to intervene. Texas primarily asks this Court to allow it to intervene as of right. *See* Mot. 11-21. And Texas also briefly suggests that it should also be permitted permissive intervention. *See* Mot. 21-22. Neither of those arguments has merit.

To intervene as of right, "1) the application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1322–23 (D.C. Cir. 2013); *see also* Fed. R. Civ. P. 24(a)(2); *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation"). In addition, an applicant seeking to

intervene as of right under Rule 24(a) must possess Article III standing to participate in the lawsuit. *See Jones*, 348 F.3d at 1017. In determining whether permissive intervention is appropriate, courts assess whether the putative intervenor has presented: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Here, Texas fails to demonstrate a basis for intervening. Texas has not shown it has Article III standing, a requirement to intervene in this case. It also lacks the concrete interest in this suit required by the standard for intervention as of right. Texas also cannot show that the federal government inadequately represent its asserted interest in the IFR's enforcement and the administration of the Consultation Memo. Finally, Texas presents no cognizable or substantial equitable or practical reason to permit its participation in this suit.

## I.    INTERVENTION AS OF RIGHT SHOULD BE DENIED.

### A.    Texas Lacks a Concrete Interest in This Suit.

Intervention is designed to allow parties with a cognizable interest in the transaction or other subject of the litigation to participate in the litigation in order to ensure that their interests are not compromised in their absence. Two related doctrines require putative intervenors to demonstrate a legally cognizable interest that might be affected by the case: Article III standing and the requirement of a judicially cognizable interest for purposes of intervention. Texas here has no such interest. The Supreme Court has made clear that States have no cognizable interest for standing purposes in the enforcement of the immigration laws against third parties, notwithstanding any indirect effect that federal immigration policies may have on conditions within the States.  And the D.C. Circuit has squarely held that the indirect impact that a federal immigration policy may have on the population of a state and the demand on its resources is

insufficient to support Article III standing. Given that Texas does not even have Article III standing, it has also failed to establish a distinct interest in the litigation as required for intervention.

### 1. Texas cannot establish standing.

As an initial matter, in order to intervene in this litigation, Texas is required to establish Article III standing. *See Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013) ("It is therefore circuit law that intervenors must demonstrate Article III standing.") citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018) ("Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing."). Texas does not even attempt to prove Article III standing, claiming instead that it is not required to show standing since "it is not pursuing 'relief that is different from that which is sought by a party with standing'" and, in fact, "it is not seeking any relief at all." Mot. at 11 (quoting *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017)). This is wrong under unambiguous Circuit case law. The Supreme Court held in *Town of Chester* that an intervenor of right who seek distinctive relief must demonstrate its own Article III standing, 581 U.S. at 439, but it did not consider whether all intervenors must do so. The decision thus "does not cast doubt upon, let alone eviscerate" settled D.C. Circuit precedent "that all intervenors must demonstrate Article III standing." *Old Dominion Elec. Coop.*, 892 F.3d at 1233, n. 2; *see also Deutsche Bank*, 717 F.3d at 193 (rejecting the argument that "defendant-intervenors . . . are not obliged to demonstrate Article III standing at all."); *Cf. Dellums v. United States Nuclear Regulatory Comm'n*, 863 F.2d 968, 987 n.11 (D.C. Cir. 1988) (intervening Supreme Court precedent must clearly dictate a departure from circuit law before a subsequent panel is free to discard an earlier panel's holding). As Texas has not even tried

to show Article III standing, and Texas cannot be allowed to show Article III standing for the first time on reply, it has forfeited this argument and the motion must be denied.

Regardless, Texas is unable to show it has standing because it cannot show a legally cognizable injury that would be caused by vacatur of the challenged IFR. Article III standing requires a showing of injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). The injury alleged must be a "legally and judicially cognizable" injury tied to the conduct that Texas is challenging. *United States v. Texas*, 599 U.S. 670, 676 (2023) (quotation omitted). The injury must also be "actual or imminent, not conjectural or hypothetical." *Deutsche Bank*, 717 F.3d at 193.

The general costs to the State that Texas asserts would result from a projected increase in the number of noncitizens should the IFR be vacated do not constitute a "judicially cognizable" injury as they are only hypothetical nor are they sufficient to show a "legally protected" interest. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). A State "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015). "To accept such a broad interpretation of the injury requirement would permit nearly all state officials to challenge a host of Federal laws." *Id.*; *see also, e.g.*, *Florida v. Mellon*, 273 U.S. 12, 18 (1927) (holding that Florida lacked standing to challenge a federal inheritance tax that would cause the State financial harm by prompting the withdrawal of property from the State and diminishing the States' tax base, because any such harm was "at most, only remote and indirect"). A State therefore also necessarily suffers no cognizable interest or a sufficient injury-in-fact if the vacatur of a federal program results in an increase in population and therefore in costs of providing services.

Here, an order vacating the IFR and Consultation Memo—an order the federal government does not want and continues to defend against—would not directly injure Texas in a legally and judicially cognizable manner. This is not a situation where the federal government has required a State to act or to refrain from acting, determined how much federal funding a State receives, or deprived a State of a legal right. The IFR and Consultation Memo merely guide federal officials on how to enforce and administer federal law in a field that the Constitution commits solely to the federal government. The indirect effects of those actions on States—and the indirect results of vacating those actions—do not qualify as "legally" and "judicially cognizable" injuries. *Raines*, 521 U.S. at 819. In our federal system, which allows the federal and state governments to operate on individuals "within their respective spheres," *Printz v. United States*, 521 U.S. 898, 920 (1997) (citation omitted), independently of each other, it is hardly surprising that federal policies may have indirect and derivative effects on a state's resources and regulatory reach.  But that is the inevitable consequence of the federal structure established by the Framers, and it does not support the notion that a State has a judicially cognizable interest in avoiding or maintaining the indirect effects of federal policies.

The Supreme Court's recent decision in *Texas*, 599 U.S. 670, reinforces the conclusion that Texas has no cognizable interest in the resolution of this case. In brief, the IFR's direct effect is, in part, to impose a presumption of asylum ineligibility on certain noncitizens in the exercise of the Executive's discretion and thereby potentially subject those noncitizens to removal, including expedited removal, if appropriate. Vacating the IFR would eliminate these effects. But third parties—including Texas—have no "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). An entity that does not face prosecution "lacks standing to contest the policies of the prosecuting authority." *Id.*

An entity similarly has "no judicially cognizable interest in procuring" or preventing "enforcement of the immigration laws" against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984).

In *Texas*, the Supreme Court applied those principles to hold that two States lacked standing to challenge the Executive's immigration enforcement priorities. *See Texas*, 599 U.S. at 676. In so holding, the Court rejected the States' argument that they had standing because, for example, the States might spend money on incarceration and social services for "noncitizens who should be (but are not being) arrested by the Federal Government." *Id.* at 674. The Supreme Court held that the States' asserted injury, which flowed from the Executive's exercise of immigration enforcement discretion against third parties, did not overcome the rule of *Linda R.S.* and *Sure-Tan* that no one, including a State, has standing to challenge the exercise of enforcement discretion against others. *See id.* at 676-78. Here, as in *Texas*, the potential downstream effect that a State might expend more on state programs in response (in this case to a vacatur of the IFR) does not overcome that barrier to standing. *Accord Washington v. FDA*, No. 23-35294, 2024 WL 3515765, at *8-9 (9th Cir. July 24, 2024).

The Ninth Circuit recently also came to a similar conclusion when five States moved to intervene in a similar case brought by organizations challenging a rule implementing immigration policy. In *East Bay Sanctuary Covenant v. Biden*, five States sought to intervene, claiming an interest in preserving the challenged rule, largely based on downstream economic effects on the States, alleging the federal government could not adequately represent their interests—the same arguments Texas makes here. 102 F.4th 996, 1000 (9th Cir. 2024). The Ninth Circuit denied the motion, holding the States did not have a significant protectible interest in maintaining the rule. "Although 'federal policies frequently generate indirect effects on state revenues or state spending,' states have no legally protectible interest in compelling enforcement of federal immigration policies." *Id.* at 1002, citing *Texas*, 599 U.S. at 677-80. Specifically, the State's

professed interest in avoiding increased expenditures was not a significant protectible interest because the claimed expenditures were not directly connected to the challenged rule. "While an economic interest may be sufficient to support a right of intervention, it must be concrete and related to the underlying subject matter of the action." *East Bay*, 102 F.4th at 1002 (internal citations omitted). Even if the outcome of a case may affect state expenditures, "such incidental effects are not at issue in the litigation and are, in any event, attenuated and speculative." *Id.*

The injuries Texas claims here are similarly "attenuated and speculative." These principles squarely preclude Texas's claim to standing. Texas here claims an interest in the continued implementation of a discretionary immigration enforcement policy on the basis that any reversal of the policy would cause Texas to make additional expenditures—"provid[ing] benefits" to noncitizens and "encountering administrative burdens." Mot. at 13. But like the States in *Texas,* Texas here cannot leverage the incidental, downstream effects of vacating enforcement policies directed at third parties that may lead it to make additional expenditures to create standing. Furthermore, even though the Complaint discusses the decreased consultation period described in the Consultation Memo in detail, Texas entirely fails to explain why it believes it has any interest in the implementation of that Memo. *See generally,* Mot.

Finally, Texas admits in its motion that it does not intend to defend the IFR in full, as the federal government does, and therefore admits that it is seeking a different outcome from the government. Mot. at 21 ("Even if Defendants could be trusted to defend the sources of authority behind the IFR, Texas—unlike them—has no interest in defending the *exceptions* to the IFR. […] Defendants will defend the IFR on the bases of these exceptions—Texas will not.") (emphasis in original). Where, as here, an intervenor would "seek[] additional relief beyond that which the" parties seek, "an intervenor of right must demonstrate Article III standing." *Laroe Ests.*, 581 U.S. at 439; *see also Diamond v. Charles*, 476 U.S. 54, 68 (1986) (when an intervenor seeks to

"continue a suit in the absence of the party on whose side intervention was permitted," the intervenor must demonstrate its own standing). As a result, Texas must show independent Article III standing to intervene in this case and they have failed to do so.

2. Texas has not identified a significantly protectable interest.

To support a request for intervention as of right, a prospective intervenor needs to demonstrate, among other things, a "significantly protectable interest" at stake in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see also* Fed. R. Civ. P. 24(a)(2). As the Supreme Court has made clear, that barrier requires that a prospective intervenor do more than articulate some asserted harm or interest related to the action; instead, the intervenor must demonstrate that the interest in question is "legally protectible." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 315 (1985); *see Diamond*, 476 U.S. at 75 (O'Connor, J., concurring in part and concurring in the judgment) ("Clearly, *Donaldson*'s requirement of a 'significantly protectable interest' calls for a direct and concrete interest that is accorded some degree of legal protection."); *City of Cleveland, Ohio v. Nuclear Regul. Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994) ("The rule impliedly refers not to any interest the applicant can put forward, but only to a legally protectable one.").

The Supreme Court has made clear that satisfying that standard requires a substantially more direct interest than does Article III and that indirect financial harms—like those claimed by Texas—do not suffice. For example, in *Donaldson*, the government sought to enforce administrative summonses issued by the Internal Revenue Service to Donaldson's former employer and its accountant for records related to Donaldson's tax liability. 400 U.S. at 518-20. The Supreme Court rejected Donaldson's argument that he could intervene in that suit as of right. Even assuming that the employer's and accountant's disclosure of records potentially establishing Donaldson's tax liability would have injured him in an Article III sense, the Court concluded that

10

Donaldson's claimed interest "cannot be the kind contemplated by Rule 24(a)(2)" because it was not independently legally protected. *See id.* at 530-31. Likewise here, following Texas's chain of cascading hypotheticals—the IFR being vacated would result in more people entering the State, and that would cause the State to spend more money on services for those people, and the Court found that was sufficient to show Article III injury—it would still not be enough for Texas to show it has an interest in the outcome of this case sufficient to intervene as of right.

Moreover, Texas does not have a legally protectable interest in the focus of the challenges at the core of this suit—the Departments' adoption of policies and procedures relating to credible fear and grants of asylum—because it is excluded from the special judicial review scheme for such policies and procedures. Specifically, 8 U.S.C. § 1252(a)(2)(A) generally bars judicial review of "procedures and policies adopted . . . to implement" the expedited removal provisions. Although 8 U.S.C. § 1252(e)(3) restores narrow jurisdiction to consider very specific claims under very specific circumstances, such suits may be brought only by noncitizens—not advocacy organizations or States. *See Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000) (finding no jurisdiction to consider suit brought by organizations seeking third-party standing, stating "[f]rom all we can gather, Congress must have contemplated that lawsuits challenging [actions] would be brought, if at all, by individual aliens who—during the sixty-day period—were aggrieved by the statute's implementation"); *Make The Rd. New York v. Wolf*, 962 F.3d 612, 628 (D.C. Cir. 2020) (explaining that organizations suing on behalf of individual noncitizens invoking an associational standing theory of Article III injury may sue under section 1252(e)(3)); *see also Grace v. Barr*, 965 F.3d 883, 891 (D.C. Cir. 2020) (section 1252(e) covers "agency [regulations or] policies governing credible-fear interviews"). Given that Texas is not contemplated within this narrowly tailored review scheme, it cannot have a legally protectable interest in this suit.

Texas's claimed interest in this litigation stems from its assertions that, if the government were to stop defending or implementing the IFR, it would experience various downstream economic impacts. (Texas make no mention of the projected impact of any failure to defend the Consultation Memo.) As explained, those asserted concerns are noncognizable and speculative and cannot support even Article III standing let alone establish a legally protected interest under Rule 24(a)(2)'s standard. The motion thus fails for this reason as well.

**B.     Texas's Asserted Interest in the IFR's Enforcement is Adequately Represented by the Federal Government.**

Regardless, Texas has not demonstrated that its interests are not "adequately represent[ed]" by the federal government as required to obtain intervention as of right. The federal government has shown no indication it will fail to continuously and vigorously defend the IFR and Consultation Memo, and Texas has no basis to say otherwise.

As an initial matter, there can be no dispute that the federal government is defending the challenged IFR and Consultation Memo. These policies were adopted just two months ago, and the IFR explains at length why it is necessary. The Department of Justice is vigorously defending the IFR and the Consultation Memo. Per the parties' agreed-upon schedule, the federal government will move for summary judgment in just two weeks, arguing that the challenges to the IFR and Consultation Memo all fail as a matter of law. The federal government is thus more than adequately representing Texas's interests.

Indeed, Texas's alleged interests in defending this case will be more than adequately represented by the federal government because, unlike Texas, the federal government is seeking to defend the entire IFR, and not just parts of it. As discussed *supra*, Texas is interested in defending only the portions of the IFR it deems to be valid, while also arguing that the exceptions "frustrate the stated aim" of the IFR and admitting it will not defend those exceptions. Mot. at 21.

The federal government, by contrast, will defend the entire IFR—including the portions Texas is interested in. It is therefore clear Texas's interests in defending the IFR will be adequately represented by the federal government and Texas's involvement is not needed. Indeed, should Texas be permitted to intervene and then decide it wants to challenge the exceptions to the IFR, Texas's involvement will serve only to obstruct the government's case.

In attempting to make the necessary showing, Texas claims the "Biden Administration has a history of collapsing in its defense of immigration policies" and points to the litigation of the Public Charge rule and a related lawsuit. Mot. at 17-21, citing *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021). Texas claims the federal government wrongly abandoned its defense of the Public Charge rule following an adverse decision by the district court. *Id.* The federal government disputes that its decision not to appeal the adverse decision in the circumstances of that case was in any way improper. But, in any event, that decision says nothing about the Government's defense in the present action. This case challenges a different rule—one that was just adopted two months ago.  And the government is vigorously defending that rule.

The federal government intends to continue defending the IFR and Consultation Memo, and nothing in Texas's motion supports a contrary conclusion.

## II.   PERMISSIVE INTERVENTION SHOULD BE DENIED.

As explained, Texas has no substantial interest in this suit, which concerns the Executive's implementation of discretionary immigration enforcement policies and procedures over which the federal government—not the States—has sole authority. Allowing Texas to nevertheless intervene would raise substantial practical and equitable concerns that should preclude its participation in this suit. In determining whether permissive intervention is appropriate, courts assess whether the putative intervenor has presented: "(1) an independent ground for subject matter jurisdiction; (2)

a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C.*, 146 F.3d at 1046.

First, as discussed above, Texas cannot establish Article III standing. If the Court were to permit intervention despite a lack of standing, "then any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank*, 717 F.3d at 195 (Silberman, J., concurring) (stating that a party seeking permissive intervention must establish standing). Regardless, where, as here, an intervenor would "seek[] additional relief beyond that which the" parties seek, "an intervenor of right must demonstrate Article III standing." *Laroe Ests.*, 581 U.S. at 439; *see also Diamond*, 476 U.S. at 68 (when an intervenor seeks to "continue a suit in the absence of the party on whose side intervention was permitted," the intervenor must demonstrate its own standing).

The same logic applies to permissive intervenors: "For all relief sought, there must be a litigant with standing," *Laroe Ests.*, 581 U.S. at 439, regardless of how that litigant joins the suit. *See Old Dominion Elec. Coop.*, 892 F.3d at 1232 ("Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing."). Texas here does not merely intend to participate in the litigation as the parties have formulated it—which it could in any event have done as an amicus—but rather seeks to intervene to defend only portions of the IFR because it believes the federal government "cannot be trusted to defend or enforce" the IFR. Mot. at 16. Texas's stated intent to defend only portions of the IFR, rather than the entire IFR like the federal government, shows it is seeking different relief than the federal government and thus must demonstrate standing—which it cannot demonstrate.

Second, permitting intervention here would undermine the authority that Congress has placed in the Executive Branch to conduct litigation. Texas's apparent justification for intervening

would be to permit it to defend the IFR if the federal government were (contrary to all indications) to stop defending it. But it would be inappropriate to permit third parties—and especially third parties with such a marginal interest in the suit—to intervene in that (hypothetical) situation. By statute, the "Solicitor General" and other "officer[s] of the Department of Justice" as the Attorney General may direct have responsibility for "attend[ing] to the interests of the United States" in the courts. 28 U.S.C. § 517. As the Supreme Court has explained, vesting this authority in the Attorney General and Solicitor General "represents a policy choice by Congress." *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994). There is certainly no basis to permit Texas to intervene and seek to peremptorily usurp this authority, especially at this time, when there is no indication that the federal government intends to take any action that might be contrary to Texas's interests in the ultimate outcome of this litigation.

**CONCLUSION**

For the foregoing reasons, the Court should deny the motion to intervene.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Senior Counsel

By: /s/ *Erin T. Ryan*
ERIN T. RYAN
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-5802
Email: Erin.T.Ryan@usdoj.gov

CHRISTINA P. GREER
BRIAN C. WARD
Senior Litigation Counsel

Dated: August 2, 2024                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: _/s/ Erin T. Ryan_
ERIN T. RYAN
Trial Attorney
United States Department of Justice
Civil Division