**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, | ) ) ) ) |
| *Plaintiffs*, | ) )  No. 1:24-cv-01702-RC |
| v. | ) ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) |
| *Defendants*. | ) ) ) |

**<u>PLAINTIFFS' OPPOSITION TO TEXAS'S MOTION TO INTERVENE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

I.      Intervention As Of Right Should Be Denied. .................................................................... 2

        A.     Texas Lacks a Direct, Legally Protectable Interest in the Subject of this Action. ........................................................................................................................ 2

        B.     Defendants' Representation is Adequate. ................................................................ 6

II.     Permissive Intervention Should Be Denied. ....................................................................... 7

CONCLUSION ................................................................................................................................. 9

# TABLE OF AUTHORITIES[*]

**CASES**

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022)..................................................................5

*Arpaio v. Obama*, 27 F. Supp. 3d 185 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015) ..............................................................................................................................8

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ...................................................4, 5, 6, 8

*Cooper v. Newsom*, 13 F.4th 857 (9th Cir. 2021), *cert. denied*, 143 S. Ct. 287 (2022)..................................................................................................................................8

*Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013) ...............................4

*Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2013)..................3

*Diamond v. Charles*, 476 U.S. 54 (1986) .........................................................................3

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute as stated in Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985).................................3

*East Bay Sanctuary Covenant v. Biden*, 102 F.4th 996 (9th Cir. 2024), *petition for cert. filed*, 92 U.S.L.W. 3360 (U.S. June 28, 2024) (No. 23-1353)...........................5

*EEOC v. National Children's Center, Inc.*, 146 F.3d 1042 (D.C. Cir. 1998)..............7, 8

*Friends of Earth v. Haaland*, Civ. A. No. 21-2317, 2022 WL 136763 (D.D.C. Jan. 15, 2022) .................................................................................................................3, 7

*Illinois v. Bristol-Myers Co.*, 470 F.2d 1276 (D.C. Cir. 1972).........................................8

*Jones v. Prince George's County*, 348 F.3d 1014 (D.C. Cir. 2003).................................2

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020)........................................................................................................................3

*Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668 (D.C. Cir. 1976) ...........................5

*In re Sealed Case*, 237 F.3d 657 (D.C. Cir. 2001)............................................................3

*Trump v. New York*, 592 U.S. 125 (2020).......................................................................3

*United States v. Texas*, 599 U.S. 670 (2023) ...........................................1, 3, 4, 5, 6, 8*

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*Voltage Pictures, LLC v. Vazquez*, 277 F.R.D. 28 (D.D.C. 2011) ................................................... 8

*Washington v. United States FDA*, No. 23-35294, ___ F.4th ___, 2024 WL 3515765
   (9th Cir. July 24, 2024) ............................................................................................................. 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24(a)(2) ..................................................................................................................... 2

U.S. Customs & Border Protection, *Southwest Land Border Encounters*,
   https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (last
   modified July 15, 2024) ............................................................................................................ 4

**INTRODUCTION**

Texas lacks any legally protectable interest in the subject of this litigation and therefore cannot satisfy the fundamental requirement for intervention as of right. Texas asserts that there may be downstream costs to the State if the Rule is invalidated. But as the Supreme Court emphasized just last year in *United States v. Texas*, 599 U.S. 670, 674-75 (2023), all federal policies have some downstream costs to the States but that does not give them a sufficient interest to challenge federal immigration policies. Moreover, Texas has failed to show that Defendants are not adequately representing its asserted interests. Texas's attenuated interest in this action, and its failure to establish that the federal Defendants will not vigorously defend its interests, also make permissive intervention inappropriate.

At bottom, Texas is once again seeking to use litigation to score political points. ECF No. 19-1 ("Mot.") at 1 ("For years, Defendants have allowed illegal immigration to run rampant"); *id*. at 2 ("While running for President, Joe Biden called for migrants to 'surge' to the border."). But that is not the purpose of intervention. The motion should be denied.

**BACKGROUND**

On June 4, 2024, Defendants issued the Interim Final Rule ("Rule") and related Guidance challenged in this litigation. As discussed in Plaintiffs' summary judgment motion (ECF No. 23), the Rule unlawfully restricts access to asylum, withholding of removal, and protection under the Convention Against Torture for noncitizens who cross the southern border between designated ports of entry. The Guidance unlawfully condenses the consultation period prior to noncitizens' credible fear screening interviews to as little as four hours.

Plaintiffs filed their original complaint on June 12. On July 1, the Court entered a minute order adopting the parties' proposed schedule for Plaintiffs to file an amended complaint and for

1

briefing on cross-motions for summary judgment. Pursuant to that schedule, Plaintiffs filed their amended complaint on July 12 (ECF No. 14) and their motion for summary judgment on July 26 (ECF No. 23).

Meanwhile, on July 19, Texas filed a motion to intervene as a defendant. Mot. 1-29. Texas states that it "wants to defend the authority behind the IFR"; that it "plans to follow the agreed scheduling order"; and that it "intends to oppose Plaintiffs' claims and requests for relief, offer defensive arguments, and seek no additional relief." *Id.* at 11, 12, 22.

## ARGUMENT

### I. Intervention As Of Right Should Be Denied.

To intervene as of right, Texas must "claim[] an interest relating to the property or transaction that is the subject of the action," and it must also demonstrate that it "is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24(a)(2) thus set outs four mandatory requirements: "timeliness, interest, impairment of interest, and adequacy of representation." *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). Texas "must satisfy all four elements." *Id.* at 1019. Because Texas can neither show a legally protectable interest in the subject of the action nor that Defendants are inadequately representing its interests, intervention as of right should be denied.

### A. Texas Lacks a Direct, Legally Protectable Interest in the Subject of this Action.

Texas lacks the significantly protectable interest required to intervene as of right. The D.C. Circuit has equated Rule 24(a)(2)'s requirement of a protectable interest with the injury-in-fact required for Article III standing. *E.g.*, *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013); *see Friends of Earth v. Haaland*, Civ. A. No. 21-2317 , 2022 WL 136763, at *2

2

(D.D.C. Jan. 15, 2022). Standing requires "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Trump v. New York*, 592 U.S. 125, 131 (2020) (quotation marks omitted). Similarly, Rule 24(a)(2) requires a "significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), *superseded by statute as stated in Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985), that is "direct and immediate," *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (internal quotation marks omitted); *accord Diamond v. Charles*, 476 U.S. 54, 75 (1986) (O'Connor, J., concurring in part and in the judgment) (intervenors must have "a direct and concrete interest that is accorded some degree of legal protection").[1]

Texas asserts that it has an adequate protectable interest in the subject of this case because (1) Plaintiffs may succeed in vacating the Rule or Defendants may "stipulate[] to dismissal of the IFR"; (2) either of those outcomes may, in turn, cause an increase in the number of migrants entering Texas through the southern border; and (3) the presence of additional migrants in Texas may cause the State to incur downstream costs related to infrastructure and housing, "criminal justice system costs," and "welfare expenditures," as well as "administrative burdens to comply with federal law by ensuring it is not providing state and local public benefits to ineligible migrants." Mot. 1, 12-13, 16. That theory of potential downstream costs is not only far too indirect and conjectural to satisfy the protectable interest requirement but would also effectively render Rule 24(a)(2)'s protectable interest requirement meaningless.

---

[1] In addition to the requirements imposed by Rule 24(a)(2), a would-be defendant-intervenor must also show Article III standing if it seeks either to invoke a court's jurisdiction or "pursue[] relief that is broader than or different from the party invoking a court's jurisdiction." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *see also Deutsche Bank*, 717 F.3d at 194. Texas has failed to establish state standing under *Texas*, 599 U.S. at 674-75. As noted above, however, the standing and protectable interest requirements are largely identical under D.C. Circuit law.

3

Texas likewise can only speculate as to how vacatur of the Rule might affect migration numbers in Texas and any resulting economic impact—particularly given "the myriad economic, social, and political realities in the United States and in foreign nations" that may influence "the complex decisions made by [non]citizens of the United States before they risked life and limb to come here." *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015); *cf. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013) (stressing that standing requires "requires more than the possibility" of harm). Indeed, southern border crossings were already declining in April and May 2024, before the Rule was issued. *See* U.S. Customs & Border Protection, *Southwest Land Border Encounters*.[2]

The Supreme Court has already held that the same kinds of asserted downstream costs resulting from immigration that Texas asserts here are insufficient to show injury-in-fact, which parallels the legally protectable interest requirement under Rule 24(a)(2). In *United States v. Texas*, Texas and Louisiana claimed standing to challenge the federal government's immigration enforcement priorities based on assertions that the federal policy "imposes costs on the States," because "they must continue to incarcerate or supply social services such as healthcare and education to noncitizens who should be (but are not being) arrested by the Federal Government." 599 U.S. at 674-75. In holding that these asserted harms were insufficient to confer standing, the Supreme Court cautioned that "federal courts must remain mindful of bedrock Article III constraints in cases brought by States against an executive agency or officer," since "in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *Id.* at 680 n.3. Thus, when a State asserts that federal policy "has

---

[2] https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters (July 15, 2024) (last modified July 15, 2024).

produced only those kinds of indirect effects, the State's claim for standing can become more attenuated." *Id.*; *see also Washington v. U.S. FDA.*, No. 23-35294, ___ F.4th ____, 2024 WL 3515765, at *8 (9th Cir. July 24, 2024) (rejecting a putative state intervenor's assertion that an injunction against federal agency action would cause it to incur increased Medicaid costs because it "is exactly the kind of 'indirect effect[] on . . . state spending' that the Supreme Court has rejected as a basis for standing" (alterations in original) (quoting *Texas*, 599 U.S. at 680 n.3)).

The D.C. Circuit and other courts have likewise rejected such limitless theories of harm advanced by States and local officials seeking to litigate federal immigration policies. *See, e.g.*, *Arpaio*, 797 F.3d at 25 ("If such allegations were routinely accepted as sufficient to confer standing, courts would be thrust into a far larger role of judging governmental policies than is presently the case, or than seems desirable." (quotation marks omitted)); *Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C. Cir. 1976) (emphasizing that downstream state fiscal impacts are "an incidental result of the challenged action" and are insufficient for standing); *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir. 2024) (denying intervention in a challenge to a similar 2023 asylum ban and stressing that States lack a legally protectable interest "in compelling enforcement of federal immigration policies."), *petition for cert. filed*, 92 U.S.L.W. 3360 (U.S. June 28, 2024) (No. 23-1353); *id.* ("Even if disposition of this appeal might affect state expenditures and political representation, such incidental effects are not at issue in the litigation and are, in any event, attenuated and speculative."); *Arizona v. Biden*, 40 F.4th 375, 386 (6th Cir. 2022) ("Are we really going to say that any federal regulation of individuals . . . that imposes peripheral costs on a State creates a cognizable Article III injury for the State to vindicate in federal court? If so, what limits on state standing remain?"). Allowing Texas to intervene here would eviscerate Rule 24(a)(2)'s requirement that intervenors have a direct and immediate stake in the

subject matter of the litigation. Texas's theory would allow states to intervene to defend virtually any federal policy that might affect immigration—for example, an FBI policy about what resources should be used to prevent smuggling; reduced enforcement against employers for hiring undocumented workers; or an agreement with Mexico on aid, trade, or immigration. Each of these decisions (and many others) might conceivably increase downstream costs that states bear vis-à-vis immigrants. And the same theory would apply to nearly every other kind of federal decision making, such as budgeting or law enforcement. If effectively everything the federal government does provides states with standing and the ability to intervene as of right, Rule 24(a)(2)'s significantly protectable interest requirement would become meaningless. *See Texas*, 599 U.S. at 680 n.3 (noting that "federal policies frequently generate indirect effects on state revenues or state spending"); *Arpaio*, 797 F.3d at 25 .

### B.  Defendants' Representation is Adequate.

Because Texas has not remotely shown that it has a legally protectable interest in this matter, it must be denied intervention as of right. But even if the Court were to find that Texas has made that showing, it should still deny the motion because Defendants adequately defend the State's interests.

Texas argues that it believes the federal government has not adequately defended *prior* immigration policies. Mot. 16-21. Even if that were true, it does not mean that Defendants will fail to adequately defend *this Rule*. Texas points to nothing in this litigation indicating that the United States will not vigorously defend the Rule. Thus, if the Court finds that Texas has a legally sufficient protectable interest and reaches this prong of the intervention analysis, it should deny the motion on the independent ground that Texas has failed to establish that Defendants will not adequately defend its interests.

Texas can of course file an amicus brief if it wishes its views to be known. *See, e.g.*, *Friends of Earth*, 2022 WL 136763, at *6 (denying intervention but allowing participation as amicus). And the Court could, if it chooses, deny the motion without prejudice to allow Texas to re-file should Defendants cease to defend their own Rule. But that is only assuming the Court first finds that Texas has first established it has a legally protectable interest in this matter. If the State lacks a protectable interest, then the Court would not reach the adequacy prong of the intervention analysis, since the protectable interest prong is not strengthened or altered by whether Defendants are adequately defending Texas's interests. Regardless of whether Defendants are adequately defending the Rule, Texas must first establish that it has a "legally protectable interest," which Texas has not done.[3]

## II.  Permissive Intervention Should Be Denied.

Texas also briefly argues in the alternative that it should be granted permissive intervention. Mot. 21-22. Permissive intervention under Rule 24(b)(2) requires, at minimum, "a timely motion," "an independent ground for subject matter jurisdiction," and "a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). "[P]ermissive intervention is an inherently discretionary enterprise," and "Rule 24(b) vests district courts with considerable discretion" to deny permissive intervention even if the minimum "requirements of the rule are met." *Id.* at 1048. The Court should deny permissive intervention in the exercise of its discretion because of the

---

[3] The motion is also untimely if Texas intends to challenge the exceptions to the Rule. Texas states that while it intends to defend the Rule's restrictions on asylum, withholding, and CAT protection, it does not agree with the Rule's exceptions for noncitizens fleeing danger who, for example, present exceptionally compelling circumstances. Mot. 10, 21. But if Texas wanted to challenge those exceptions, it should have sought intervention earlier so it could have filed its brief when Plaintiffs filed their summary judgment motion.

highly attenuated nature of Texas's asserted interest in this action, as explained above with respect to intervention as of right. *See Illinois v. Bristol-Myers Co.*, 470 F.2d 1276, 1279 (D.C. Cir. 1972) (affirming denial of permissive intervention in part due to proposed intervenor's "relatively minor interest" in the action) (internal quotation marks omitted); *Voltage Pictures, LLC v. Vazquez*, 277 F.R.D. 28, 33 (D.D.C. 2011) (denying permissive intervention in part because movant lacked "a legally protected interest sufficient to warrant intervention").

The floodgates concerns raised by the Supreme Court in *Texas*, by the D.C. Circuit in *Arpaio*, and by other circuits militate just as strongly against granting permissive intervention. *Texas*, 599 U.S. at 680 n.3; *Arpaio*, 797 F.3d at 22, 25; *see also Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014) ("To accept such a broad interpretation of [Article III's] injury requirement would permit nearly all state officials to challenge a host of Federal laws . . . ."), *aff'd*, 797 F.3d 11; *Cooper v. Newsom*, 13 F.4th 857, 868-89 (9th Cir. 2021) (affirming denial of permissive intervention to county district attorneys seeking to defend state policy in part because "some or all of the fifty-five other" district attorneys in the state could make the same argument), *cert. denied*, 143 S. Ct. 287 (2022). If Texas is granted permissive intervention here, it would open the door to an untold number of similar intervention motions by state and local officials who wish to defend other federal policies that affect them only peripherally, if at all.

Permissive intervention is additionally not appropriate because Texas has failed to show that Defendants will not adequately defend its interests. That is an independent reason to deny permissive intervention.

Texas's motion conspicuously devotes considerable space to making political statements. *See, e.g.*, Mot. 1 ("The southern border of the United States is in crisis. . . . But the Biden Administration has stood idle, and Americans are paying the price."); *id.* at 1-2 ("Defendants

8

have shown no interest in using their broad executive powers to stem the border crisis."); *id.* at 2 ("Since President Biden took office, border crossings have overwhelmed Border Patrol."); *id.* at 4 ("[T]his Administration refuses to enforce the law."). That is not a proper reason to allow them into this litigation and distract from the legal issues.

## CONCLUSION

The Court should deny the motion to intervene.

Dated: August 2, 2024

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union
Foundation of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
*aspitzer@acludc.org*
*smichelman@acludc.org*

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
*aharris@aclutx.org*
*ddonatti@aclutx.org*

Keren Zwick (D.D.C. Bar. No. IL0055)
Richard Caldarone (D.C. Bar No. 989575)*
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370
*kzwick@immigrantjustice.org*
*rcaldarone@immigrantjustice.org*

Respectfully submitted,

*/s/ Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

*/s/ Lindsay C. Harrison*
Lindsay C. Harrison (D.C. Bar #977407)
Matthew E. Price (D.C. Bar # 996158)
Mary E. Marshall (D.C. Bar #1739058)**
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
T: 202-639-6000
*mprice@jenner.com*
*lharrison@jenner.com*
*mmarshall@jenner.com*

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654

9

*mgeorgevich@immigrantjustice.org*

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: 202-355-4471
*crowmelissa@uclawsf.edu*

Blaine Bookey*
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
T: 415-581-8825
*bbookey@uclawsf.edu*

Edith Sangueza*
Center for Gender and Refugee Studies
26 Broadway, 3rd Floor
New York, NY 10004
T: 415-581-8835
*sanguezaedith@uclawsf.edu*

Robert Pauw*
Center for Gender and Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080
*rpauw@ghp-law.net*

353 N Clark St, Chicago, IL 60654
T: 312-222-9350
*mroot@jenner.com*
*aosborne@jenner.com*

Tamara Goodlette (D.C. Bar. No. TX24117561)
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 207
*tami@texascivilrightsproject.org*

Morgan Russell*
Katrina Eiland*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
*mrussell@aclu.org*
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*

*Attorneys for Plaintiffs*

*\*Admitted via certificate of pro bono representation or pro hac vice*
*\*\*D.D.C application pending*