# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAS AMERICAS IMMIGRANT
ADVOCACY CENTER, et al.

       *Plaintiff*,

v.

U.S DEPARTMENT OF HOMELAND
SECURITY, et al.

       *Defendants,*

And

STATE OF TEXAS,

       [Proposed] *Intervenor-Defendant.*

No. 1:24-CV-01702

---

## TEXAS'S REPLY IN SUPPORT OF MOTION TO INTERVENE

---

**ARGUMENT**

Texas seeks to intervene as a defendant in this litigation over the Interim Final Rule ("IFR") issued by Defendants, which was promulgated to stem the surge of migrant arrivals at the southern border. *See* Interim Final Rule with Request for Comments: "Securing the Border," 89 Fed. Reg. 48,710 (June 5, 2024), Agency/Docket No. USCIS-2024-0006 (the "IFR"). Plaintiffs challenge the IFR, arguing it violates the APA. But the IFR helps keep some semblance of order and security at the border. Its invalidation would severely impair Texas's interests.

Texas satisfies all the requirements for intervention. ***First***, Texas seeks the same relief as defendants—keeping the IFR intact—and so does not require independent Article III standing. The precedent set by the Supreme Court in *Little Sisters of the Poor* and subsequent district court rulings support this position. ***Second***, even if standing were required, Texas has shown that its interests are directly tied to the benefits derived from the IFR. The potential vacatur of the IFR poses a significant threat to Texas's sovereign and financial interests. ***Third***, Defendants' shaky defense of recent immigration policies shows why Texas must step in. The federal government's past waffling on important immigration issues and last-minute shifts in positions prove it cannot fully protect Texas's interests here.

For these reasons, Texas's motion to intervene as of right should be granted, or this court should—at minimum—allow permissive intervention since Texas, as a border state, can provide important insight that more fully develops the factual and legal issues implicated by this case.

## I.    The Court Should Grant Intervention as of Right.[1]

The crux of this matter is straightforward: Texas does not seek extra relief but merely aims

---

[1] Neither party contests that Texas's motion is timely. Texas sought intervention just over one month after Plaintiffs initiated litigation and mere days after Plaintiffs filed their amended complaint. Should this Court grant intervention, Texas would be able to participate in the upcoming summary judgment briefing without disrupting the Parties' agreed upon schedule. Plaintiffs only contest Texas's timeliness in the event Texas plans on challenging the IFR exceptions. *See* Dkt 35 at 7 n. 3. However, as Texas stated in its motion and herein, Texas only seeks to defend the IFR. It requests no relief outside of maintaining the status quo.

2

to keep the IFR intact. Texas's intervention is about safeguarding its substantial and specific interests from the adverse effects that would follow vacatur of the IFR, ensuring that its communities and resources are not unduly burdened by the kinds of overwhelming migration the IFR helps stymie. This Court should recognize the unique position and rights of Texas in this context and grant its motion to intervene.

### A. Texas need not show standing to intervene as a defendant.

Even though the parties spill considerable ink arguing to the contrary, Texas need not show Article III standing to intervene as a defendant because the relief it seeks is identical to the relief sought by Defendants: maintaining the status quo by ensuring the IFR is not vacated. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is *different* from that which is sought by a party with standing."). When a party seeking to intervene does not seek relief broader or different from the relief sought by existing parties, it need not demonstrate independent Article III standing. *Little Sisters of the Poor Saints Peter & Paul Home v. Pa.*, 591 U.S. 657, 674 n.6 (2020) (holding that it was error for court to "inquir[e] into [proposed intervenor's] independent Article III standing" where groups sought same relief as existing party).

To this end, since *Little Sisters of the Poor*, this District has repeatedly held that it is not necessary to conduct an independent standing analysis when a proposed intervenor does not seek additional or broader relief from the court. *Env't Integrity Project v. Wheeler*, 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (K.B. Jackson, J.); *Twing v. U.S.*, 2021 WL 7908121, at *1 n.2 (D.D.C. Mar. 30, 2021) (K.B. Jackson, J.). Thus, when, as here, a party "seek[s] to intervene as [a] defendant[], and [is] not invoking the Court's jurisdiction—let alone seeking 'relief that is broader than or different from the party invoking the Court's jurisdiction'—[it is] not required to demonstrate that [it has] Article III standing." *Env't Integrity Project*, 2021 WL 6844257, at *2 (quoting *Little Sisters of the Poor*, 591 U.S. at 674 n.6).

Defendants' fallback argument is that since Texas has disclaimed any defense of the IFR's exceptions, it is somehow seeking "additional relief." But this argument confuses the ultimate

relief sought by Texas with its arguments made in support of intervention. Both Texas and Defendants (at least for now) seek the same relief: maintaining the status quo via dismissal of Plaintiffs' lawsuit for lack of standing or summary judgment for the IFR.

In other words, Texas does not seek "additional relief" because it disfavors the IFR's exceptions. Rather, Texas's argument on the IFR's exceptions helps show how Texas's interests split from those of Defendants—something Texas has the burden of showing under Rule 24. That Texas's and Defendants' interests diverge speaks to why Texas will not be adequately represented by Defendants and says nothing about the ultimate relief sought. Thus, Texas need not show standing, and this Court's analysis should be cabined to whether Texas has satisfied the interest-impairment element of Rule 24. For the reasons argued (and below), it has.

### B. Even if standing were required, Texas has shown standing for the same reasons it has shown it has a legally protected interest in ensuring the IFR is not vacated.

At any rate, Texas has standing and is "so situated" that any disposition without its participation "*may* as a practical matter impair" its interests. Fed. R. Civ. P. 24(a)(2) (emphasis added). Where, as here, a proposed intervenor seeks to show its standing to defend an agency decision, the D.C. Circuit "has generally found a sufficient injury in fact where a party benefits from an agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015).

Texas benefits from the IFR. *See* Dkt. 19-1 at 15–16. And there is at least a "possibility" of impairment of Texas's interest here if the IFR is vacated. *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981). As Defendants admit, new migrant arrivals create a "strain on operations and resources." 89 Fed. Reg. 48737. This is no less true for the federal government than it is for the state of Texas, with border towns closer to the crisis than Defendants are and with far fewer resources than Defendants have. Dkt. 19-1 at 12–13, 15; *see also* 89 Fed. Reg. 48724 (explaining "significant challenges" that a "surge in encounters" can have on "local [Texas] border communities" including El Paso, Brownsville, and Laredo and how "community resources" of

those cities have been "quickly overwhelmed" in the past).

Just as these costs and associated burdens are "of course an injury" that confer standing, *U.S. v. Tex.*, 599 U.S. 670, 676 (2023), so too are they economic interests that confer a right to intervention. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (finding a "*threatened* loss of tourist dollars, and the consequent reduction in funding for Mongolia's conservation program" sufficient to support intervention) (emphasis added);*see also Wal-Mart Stores, Inc. v. Tex. Alco. Bev. Comm'n*, 834 F.3d 562, 568 (5th Cir. 2016) ("[E]conomic interests can justify intervention when they are directly related to the litigation."); *U.S. v. Albert Inv. Co.*, 585 F.3d 1386, 1398 (10th Cir. 2009) ("An interest in preventing an economic injury is certainly sufficient for intervention as of right."). As Texas has explained, it has substantial economic interests in ensuring the IFR stays in effect to mitigate the flow of unlawful crossings over its southern border.

Much of the parties' arguments to the contrary rely on the "narrow" standing analysis of *U.S. v. Tex.*, 599 U.S. 670, 686 (2023). But the parties place more weight in Texas than its limited holding can bear. Texas says nothing about a party's power to intervene as a defendant. *Texas* just held that states generally lack standing to *sue* the federal government to compel it "to alter its arrest policies so as to make more arrests." *Id.* at 686. While the monetary costs the states would incur because of the federal government's failure to arrest more noncitizens were "of course an injury," *id.* at 676, they were not "redressable by a federal court," *id.* at 678, because redressing them would require the federal judiciary to interfere with "the Executive Branch's traditional discretion over whether to take enforcement actions against violators of federal law." *Id.* at 684. Nor does *Texas* suggest that states have no cognizable interest in immigration policy. To the contrary, it acknowledged that they did. *Id.* at 676. Even so, the Court explained that it could not provide the relief the states sought without creating separation-of-powers concerns. *Id.* (explaining that "the alleged injury must be legally and judicially cognizable," meaning that it is "traditionally redressable in federal court"); *see also id.* at 680–81. No comparable concerns exist where, as here, the only relief Texas seeks is to uphold the IFR as a lawful exercise of Executive authority, which

would enhance not contract, that power.

Beyond that, the Court in *Texas* explicitly left open state standing to challenge a policy that "implicate[s] more than simply the Executive's traditional enforcement discretion," such as a policy for the "provision of *legal benefits* or legal status." *Id.* at 683 (emphasis added). Of course, here Texas does not have to satisfy Article III standing requirements at all because it seeks to intervene as a defendant.[2] But even if Texas had to show standing, it shows it for the same reasons it has argued it has a legally protected interest in ensuring the federal authority behind the current IFR is recognized and that the IFR is not vacated. Dkt. 19–1 at 12–15.

Similarly, 8 U.S.C. § 1252(a)(2)(A), Dkt. 34 at 16–17, says nothing about a party's ability to intervene as a defendant and says nothing about whether an interest is "legally protectable." Rather, as Defendants note, this statutory structure pertains to parties offensively litigating and bringing "suits." Dkt. 34 at 16. But Texas is not suing anyone. And it is not the party invoking this Court's jurisdiction.

For these reasons, this Court should decline the parties' invitation to hold Texas to the same standard as a party suing or as an intervenor seeking broader relief than the nominal parties. Rather, this Court should find "the disposition of [this] action *may* as a practical matter impair or impede [Texas's] ability to protect [its] interest." *Fund For Animals,* 322 F.3d at 735 (quoting Fed.

_____

[2] Courts require plaintiffs to show standing because plaintiffs are the ones who invoke the court's jurisdiction. It would seem odd to require a showing of standing from a defendant, the one hauled into court. This is particularly true when a proposed intervenor-defendant is not seeking any relief at all (such as a counterclaim) but simply seeking to maintain the status quo by ensuring an administrative rule is not vacated. Other circuits have noted this as well, and do not require intervenor-defendants to demonstrate standing. *See Melone v. Coit*, 100 F.4th 21, 28–29 (1st Cir. 2024) (rejecting argument that intervenor needed to establish independent standing when the intervenor "simply seeks to defend the agency's position"); *Kane Cnty., Utah v. U.S.*, 928 F.3d 877, 887 n.12 (10th Cir. 2019) (applying *Town of Chester* to defendant-side intervenors in finding that they could rely on the United States' standing); *Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) (holding that intervenors need not show Article III standing to defend a challenged federal law they because they "moved to intervene as defendants and seek the same relief as the federal government"—the upholding of the law).

R. Civ. P. 24(a)(2) (emphasis added)). And the practical fallout of Texas being denied intervention here is that it has no means to stop a collusive settlement or press any issues with such a settlement on appeal.[3] Yet "[r]ule 24(a)(2). . . does not require [Texas] to run [that] risk." *Mandan, Hidatsa and Arikara Nation v. U.S. Dept. of the Int.*, 66 F.4th 282, 286 (D.C. Cir. 2023) (citing Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 HARV. L. REV. 356, 405 (1967)).

### C. Texas's interests are not adequately represented by the federal government.

The burden of showing inadequate representation is a "minimal" one. *Crossroads*, 788 F.3d at 321; *see also Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010) ("Significantly, the putative intervenor's burden here is *de minimis*, and extends only to showing that there is a possibility that its interests may not be adequately represented absent intervention."). This *de minimis* standard prevails even in cases where there would be some overlap in interests and representation. *See Fund For Animals*, 322 F.3d at 736 (allowing intervention where party took intervenor's interests "into account," holding it was not tantamount to "giving them the kind of primacy that the [intervenor] would give them.").

To say that Defendants and Texas have had divergent interests when it comes to immigration is an understatement. Simply put, until the IFR, Defendants have shown little want in using their authority to enforce immigration laws. Indeed, time and again rather than defend valid and effective immigration rules, they have collapsed in their defense of such policies. *See generally* Dkt. 19–1 at 17–21. This is true, even if the federal government claims to be "vigorously

---

[3] For these same reasons, relegation to the status of amicus curiae also would not adequately protect Texas's interests. The role of an amicus curiae is inferior to that of an intervenor. *See Int'l Union v. Scofield*, 382 U.S. 205, 208-09 (1965) (noting that a party was "denied intervention and *relegated* to the status of an amicus curiae"); *id.* at 214–16. For Texas, status as only an amicus curiae would be insufficient for it to adequately participate in the full course of the case and to ensure its interests are protected. To be sure, as an amicus curiae, Texas would be allowed to file a brief. But it would not be allowed to participate in discovery, pretrial hearings, motion practice, oral arguments, offer evidence, file appeals, designate the record, or exercise other rights afforded to intervenors. *Id.* at 215–16.

defending" the IFR now. Dkt. 34 at 17; *see E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1005 (9th Cir. 2024) (VanDyke, J., dissenting) (federal government "vigorously defended the intervenor's interests until changing course at the last minute. . ."). Defendants should not be able to fight off an interested intervenor by claiming they can provide adequate representation, only to then "snatch defeat from the jaws of victory" once they are the only defendants standing. *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d 742, 749 (9th Cir. 2021) (VanDyke, J., dissenting).

And there is no better time for Texas to intervene in this matter than right now. Summary judgment briefing has just started and Texas plans to fully comply with the scheduling order. Plaintiffs offer that this Court can always deny Texas's motion to intervene "without prejudice to allow Texas to re-file should Defendants cease to defend their own Rule." Dkt. 35 at 11. But if Texas's intervention is denied and settlement discussions happen later in this case, it is likely that Plaintiffs will argue that Texas's intervention is *too late*.[4]

So beyond having a protected interest that "may as a practical matter" be impaired by the outcome of this litigation, Texas has met the "minimal" burden of showing inadequate representation. Fed. R. Civ. P. 24(a)(2); *Crossroads*, 788 F.3d at 321. Indeed, it is far from "clear" that Defendants will provide adequate representation of Texas—a sovereign border state feeling the brunt of the immigration crisis. *U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980). Thus, this Court should grant Texas's motion to intervene as of right. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).

---

[4] *See* Appellees' Opposition to Motion to Intervene, Dkt. 91 at 10, *East Bay Sanctuary Covenant*, 102 F.4th 996, No. 23-16032 (9th Cir. 2024) (claiming the proposed intervenor states should have moved to intervene before the government engaged in settlement discussions with plaintiffs, in part, because the intervenor states had previously claimed "they did not believe they could trust the current administration to protect their interests in immigration litigation"); *see also id*. at 14 (arguing state intervention untimely because their "divergent interests have existed since before the start" of the case and they "have consistently clashed with Defendants on immigration policy").

**II.    In the Alternative, this Court Should Grant Permissive Intervention.[5]**

Neither party has presented a credible argument as to why this Court should not exercise its "wide latitude" and permit Texas to intervene in this action even if Texas does not qualify for intervention as of right. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C. 2019). Texas, as explained in its initial motion, satisfies all the requisites for permissive intervention. *See generally* Dkt. 19-1. Texas also offers a unique, important perspective that is currently absent from the proceedings but is directly relevant to Plaintiffs' assertions that the IFR is arbitrary and capricious and not based on reasoned analysis. *See Humane Soc. of U.S. v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985) (judging it appropriate "[i]n light of the 'scope and complexity of plaintiffs' challenge,'" to have absent interests "directly represented").

Texas is a border state. It suffers immediate and severe harm when the federal government allows uncontrolled migration across the southern border. Texas's motion describes this fallout in great detail, Dkt. 19-1 at 2–8, but the long and short of it is, high level of border crossings has overwhelmed state and local infrastructure; inflicted serious financial costs in the form of government benefits; and created additional public safety risks, such as increased gang violence, drug smuggling, and human trafficking. Defendants justify the promulgation of the IFR on the "border emergency circumstances discussed in the [President's June 3, 2024] Proclamation." 89 Fed. Reg. 48711. Texas is at the epicenter of that emergency. It therefore can "supplement the position" taken by Defendants and substantiate the assertions that Defendants' actions were both necessary and reasonable given conditions at the border. *See Env't. Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 244 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978); *Clark*, 109 F.R.D. at 521.

---

[5] The parties do not challenge whether Texas an independent ground for subject matter jurisdiction or whether Texas's position involves common questions of law and fact. Texas therefore does not address either in its reply, except to reassert that it has met both requirements. *See Bernhardt*, 331 F.R.D. at 14 (noting that "because the Court has federal question jurisdiction over this case, it has independent jurisdiction"); *See Weinberg v. Barry*, 604 F. Supp. 390, 392 n.1 (D.D.C. 1985) (finding common question of law and fact when intervenor sought to defend validity of challenged application).

In their opposition, the Parties do not challenge Texas's assertion that Texas, as a border state, bears the consequences of illegal crossings. Their argument instead is that these harms are indirect and therefore: (1) do not confer standing and (2) do not constitute a substantial interest for purposes of intervention. *See* Dkt. 34 at 13–14; Dkt. 35 at 7–8. This mischaracterizes the law. Texas does not seek any additional relief from this Court. It merely wishes to defend the IFR and maintain the status quo. It therefore is not obliged to demonstrate standing under existing precedent. *See supra* Part I.A. However, should this Court hold otherwise, Texas has standing for the same reasons it has a legally protected interest in ensuring the IFR is not vacated: namely, Texas benefits from the challenged agency action, which was designed to alleviate "the strains on resources already experienced by the Departments and communities across the United States." 89 Fed. Reg. 48726; *see Crossroads*, 788 F.3d at 317.

Turning to the Parties other arguments, Plaintiffs claim that Texas failed to show that Defendants will not adequately represent Texas's interests. *See* Dkt. 35 at 8. But Defendants' own response in opposition puts that question to rest. After all, how are Defendants to advance Texas's interests when they refuse to acknowledge that Texas has distinct and substantial interests in the outcome of this litigation? *See, e.g.*, Dkt. 34 at 15 (characterizing Texas's interests as "marginal"). In any event, Texas's "interests need not be wholly adverse" for representation to be inadequate; what matters is that the Texas has different interests than the federal government, and that the federal government will not give these interests the same "kind of primacy" as Texas. *Fund For Animals*, 322 F.3d at 736–37 (emphasizing that intervenor's interests were "more narrow and parochial" than federal defendants).

Next, Plaintiffs argue that Texas's intervention would open a floodgate of state-led interventions, but this Court has permitted such interventions in the past, and Plaintiffs' fears have not borne out. *See, e.g.*, Minute Order, *Commonwealth of Pennsylvania v. Devos*, No. 1:20-cv-01468 (D.D.C. Feb. 4, 2021). This is because states tend not to waste taxpayer money by joining litigation for a regulation that the federal government is likely to defend.  It is only when, as here, the federal government has expressed mixed feelings about its own policy that states step in. Plaintiffs also

suggest that Texas will "distract from the legal issues." Dkt. 35 at 9. But this claim is baseless. All Texas did in its motion was describe the severity of the border crisis and the ramifications uncontrolled border crossings have on Texas and its communities. Indeed, many of the facts Texas cited came from the Department of Homeland Security and other government agencies. *See generally* Dkt. 19-1 at 2–8. That Plaintiffs view this as "political statements" demonstrates their bias. It does not detract from the merits of Texas's motion.

Finally, Defendants contend that intervention would undermine the Executive Branch's authority to conduct litigation. This, however, contradicts existing practice in this circuit and elsewhere. *See* Dkt. 34 at 14–15. Third parties regularly intervene to defend federal regulations when they have a substantial interest in the agency action as well as important insights into the facts and arguments of the case that the federal government is either unwilling or unable to pursue. *See* Minute Order, *Commonwealth of Pennsylvania v. Devos*, No. 1:20-cv-01468 (D.D.C. Feb. 4, 2021) (permitting Texas to defendant Title IX rule); Mem. Op. and Order, *Defenders of Wildlife v. Jewell*, No. 1:13-Cv-00919 (D.D.C. Oct. 24, 2013) (granting Texas Comptroller intervention); *see also Am. Rivers v. Wheeler*, No. C 20-04636 WHA, 2020 WL 5993229, at *2 (N.D. Cal. Oct. 9, 2020) (granting multi-state coalition intervention). There is no basis to conclude that these interventions have somehow thwarted congressional policy by ensuring that federal agencies do not deliberately abandon defensible regulations so as to bind successor administrations via a legal judgment or settlement.

## CONCLUSION

The State of Texas respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a) or, in the alterative, for permissive intervention under Rule 24(b).

Date: August 9, 2024.                              Respectfully submitted.

**KEN PAXTON**                                     */s/Kathleen T. Hunker*
Attorney General of Texas                          **KATHLEEN T. HUNKER**
                                                   Special Counsel
                                                   Texas Bar No. 24118415
**BRENT WEBSTER**                                  Kathleen.Hunker@oag.texas.gov
First Assistant Attorney General

                                                   Office of the Attorney General of Texas
**RYAN D. WALTERS**                                Special Litigation Division
Chief, Special Litigation Division                 P.O. Box 12548, Capitol Station
                                                   Austin, Texas 78711-2548
                                                   Telephone: 512-463-2100
                                                   Fax: 512-457-4410


                                                   **COUNSEL FOR PROPOSED**
                                                   **DEFENDANT-INTERVENOR**
                                                   **STATE OF TEXAS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically

(via CM/ECF) on August 9, 2024 and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
Kathleen T. Hunker