**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, | : <br> : <br> : |
| Plaintiffs, | :    Civil Action No.:   24-1702 (RC) <br> : |
| v. | :    Re Document Nos.:   15, 57 <br> : |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | : <br> : <br> : |
| Defendants. | : |

**MEMORANDUM OPINION**

GRANTING PLAINTIFFS' UNOPPOSED MOTIONS FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND TO FILE SUPPORTING EXHIBITS UNDER SEAL

**I. INTRODUCTION**

The instant action challenges a Final Rule issued by the Department of Homeland Security and Department of Justice changing how the government processes asylum applications at the U.S.-Mexico border.[1] *See* Second Am. Compl. ¶¶ 2, 77, ECF No. 56. Plaintiffs have moved for the twenty-eight individual Plaintiffs to proceed under pseudonym and to seal the declarations accompanying their motions. *See id*. ¶¶ 11–33; Pls.' Mot. Proceed Under Pseudonym and File Supp. Exs. Under Seal ("Pls.' Mot."), ECF No. 15; Pls.' Am. Mot. Proceed Under Pseudonym and File Supp. Exs. Under Seal ("Pls.' Am. Mot."), ECF No. 57. Defendants do not oppose these motions. Pls.' Am. Mot. at 1. For the reasons set forth below, Plaintiffs' motions are granted.

---

[1] Initially Plaintiffs challenged the agencies' Interim Final Rule, *see* Am. Compl., ECF No. 14, but pursuant to the Court's October 16, 2024, Minute Order, the operative complaint challenges the Final Rule, *see* Pls.' Second Am. Compl., ECF No. 56.

## II.  FACTUAL BACKGROUND

The individual Plaintiffs are twenty-eight foreign nationals who allege that they were denied asylum pursuant to either the June 4, 2024, Interim Final Rule or the September 27, 2024, Final Rule.  *See* Second Am. Compl. ¶¶ 2, 10, 74–78.  In filing the complaint and amended complaints, the individual Plaintiffs have used pseudonyms.  *See generally id.*  The individual Plaintiffs subsequently filed two unopposed motions to proceed under pseudonym, alleging that they "have suffered past persecution" and "fear future persecution . . . in their countries of origin and/or in Mexico."  Pls.' Am. Mot. at 1.  Specifically, Plaintiffs fear that "because of the 'sensitive and highly personal' nature of their cases," "they will be in even greater danger if their identities and status as asylum applicants are publicly disclosed."  *Id*.  Both motions describe the harms the individual Plaintiffs faced in their home countries that caused them to seek asylum in the United States.  *Id*. at 4–7; Pls.' Mot. at 4–6.  In support of the motions, the individual Plaintiffs filed sealed declarations further detailing the harms they faced in their home countries or while traveling to the United States.  *See* Exs. 1–10 to Pls.' Mot. (sealed), ECF Nos. 15-1–15-10; Exs. 1–11 to Pls.' Am. Mot. (sealed), ECF. No. 57-1–57-11.  The Court summarizes those declarations below.

Individual Plaintiff D.G. is a Colombian woman who has been the target of a criminal organization.  Pls.' Mot. at 4.  The organization threatened her and her son at gunpoint and later attempted to kill her and her husband.  *Id*.  D.G. fled to the United States with her husband and adult son, from whom she was separated following her removal to Colombia.  *Id*.  She is currently in hiding and fearful for her life.  *Id*.

Individual Plaintiff E.R. is a Mexican woman who fled to the United States "seeking protection from domestic violence" and from threats made on her life by the leader of a criminal

organization because of her sexual orientation. *Id*. Since being deported to Mexico, she remains in hiding, but fears being killed as the criminal organization's search for her has not ceased. *Id*.

Individual Plaintiff P.S. is a Nicaraguan man who faced "harassment, death threats, and physical attacks" from the Sandinista National Liberation Front following his refusal to join. Pls.' Mot. at 4. He first fled to Mexico with his wife and then came to the United States seeking asylum. Ex. 3 to Pls.' Mot. at 2. He fears for his safety both in Mexico and in Nicaragua. *Id*.

Individual Plaintiff D.C. is a Mexican woman who fled to the United States with her two-year-old daughter, Individual Plaintiff L.R., "after increasing threats of violence from her former partner." Pls.' Mot. at 4. D.C. and her daughter remain in hiding and seek pseudonymity "to ensure her former partner and his criminal associates cannot locate her." *Id*. at 5. L.R. seeks pseudonymity both as a minor and "out of fear that she and her mother will be located and killed" if they are identified publicly. *Id*.

Individual Plaintiff A.E. is "an indigenous woman from Mexico" who fled to the United States with her minor son, Individual Plaintiff E.D., after a criminal organization physically harmed her, threatened her life, and killed members of her extended family. *Id*. A.E. is concerned about retaliation from the criminal organization were her and her son's names to be made public. *Id*. E.D. seeks pseudonymity both as a minor and out of fear for his and his mother's lives. *Id*.

Individual Plaintiff T.R. is "a Cuban woman of African descent" who fled Cuba after being "attacked for speaking out against injustices in her workplace" and after being attacked and raped because of her sexual orientation. *Id*. She sought protection in the United States but was deported to Mexico. *Id*. She seeks pseudonymity for fear that "those who have harmed her could continue to do so, as well as cause harm to her family and friends." *Id*.

Individual Plaintiff S.G. is a Colombian man who fled to the United States after surviving an attempt made on his life by a guerrilla group that had previously killed his father. *Id.* S.G. seeks pseudonymity because he is concerned that were his identity to be made public, the man who killed his father or his associates would find him and kill him. *Id*.

Individual Plaintiff J.C. is a Mexican man who was "shot in the head by suspected members of a criminal organization." *Id.* The attack "left him comatose for 15 days and with only one eye." *Id*. Since the attack, he was severely beaten by the Mexican police because they mistakenly believed his disability to be evidence that he was involved in organized crime. *Id*. at 5–6. He seeks pseudonymity to protect him from similar harm in the future. *Id.* at 6.

Individual Plaintiff J.R. is a Colombian woman who fled to the United States with her partner after a criminal organization in Colombia tried to extort and kill them. *Id.* She is concerned that if her name is publicized, the same criminal organization will threaten her life or her family members' lives. *Id*.

Individual Plaintiff L.B. is a Colombian woman who has been raped, assaulted, and had her life threatened by a "criminal paramilitary organization." Pls.' Am. Mot. at 4. She sought asylum in the United States with her husband, Individual Plaintiff J.G., but was removed to Colombia where she lives in hiding and fears for her life. *Id.*

Individual Plaintiff J.G. is a Colombian man who was brutally assaulted and held at gunpoint by the same criminal paramilitary organization that raped his wife. *Id.* After seeking asylum in the United States with L.B., he was also removed to Colombia where he, too, remains in hiding and fears for his life. *Id.*

Individual Plaintiff E.M. is a Mexican man who was assaulted and threatened by members of a drug cartel. *Id.* The cartel ransacked his and his mother's home, prompting them

4

to flee to the United States for safety. *Id*. E.M. was denied asylum and removed to Mexico, where he "immediately received death threats" upon arrival and "remains in fear for his life." *Id*. at 4–5.

Individual Plaintiff R.R. is a Mexican woman who sought asylum in the United States with her two young children, Individual Plaintiffs A.L. and J.L., "after members of a cartel . . . threatened physical and sexual violence against [her] and . . . her children." *Id*. at 5. R.R. and her children were all removed to Mexico, "where [she] fears for her life and her children's lives." *Id*. Individual Plaintiffs A.L. and J.L. seek pseudonymity both because they are minors and out of fear for their own safety and their mother's life if their names were made public. *Id*.

Individual Plaintiff L.Q. is an indigenous man from Ecuador who was targeted by a racist criminal organization that "extorted, threatened to kill, and severely beat him." *Id*. En route to the United States, L.Q. "faced threats in Guatemala and was robbed at gunpoint in Mexico." *Id*. Although he is currently in an immigration detention center in Texas, L.Q. has been deemed ineligible for asylum under the Final Rule and is fearful that the criminal organization will kill him if he is deported to Ecuador. *Id*.

Individual Plaintiff S.O. is a "Venezuelan woman and political dissident." *Id*. She fled to the United States with her two minor children, Individual Plaintiffs W.O. and G.F., after she and her family were threatened and physically attacked by an armed group allied with the Maduro regime in Venezuela. *Id*. En route to the United States, S.O. and her family were "kidnapped, extorted, and threatened by a cartel." *Id*. Upon arriving in the United States, S.O. and her children were denied asylum and removed to Mexico, where they remain in hiding and fearful for their lives. *Id*. Individual Plaintiffs W.O. and G.F. seek pseudonymity both because

5

they are minors and out of fear for their own safety and their mother's life if their names were made public. *Id*. at 6.

Individual Plaintiffs J.N. and E.C. are a Mexican couple "who fled to the United States with . . . their minor children, [Individual] Plaintiffs J.S. and K.C." *Id*. A drug cartel fired bullets into their home after E.C. refused to work for them. *Id*. Their family was denied asylum in the United States and removed to Mexico where they are actively trying to avoid the cartel. *Id*. Individual Plaintiffs J.S. and K.C. seek pseudonymity both because they are minors and out of fear for their own safety and their parents' lives if their names were made public. *Id*.

Individual Plaintiff J.E. is a Mexican man who sought asylum in the United States after "a drug cartel . . . kidnapped, relentlessly beat, and threatened to kill [him] and his family after [he] refused to work for [them]." *Id*. After J.E. arrived in the United States, the cartel did in fact "kill[] members of his family." *Id*. Nonetheless, J.E. was removed to Mexico, where he remains fearful for his life. *Id* at 7.

Individual Plaintiffs R.C. and M.F. are "Venezuelan dissident[s] who fled the country out of fear of being harmed or killed by the Maduro regime for participating in political organizing and opposition to the administration." *Id*. R.C. and M.F. fled to Mexico, "where they were threatened with deportation, robbed, and physically assaulted by government officials." *Id*. Upon arriving in the United States, R.C. and M.F. were deported to Mexico, where they are experiencing homelessness and fear for their safety. *Id*.; *see also* Ex. 10 to Pls.' Am. Mot. (sealed) at 2.

### III.  LEGAL STANDARD

In general, a complaint must state the names of the parties and the addresses of the plaintiffs. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); LCvR

5.1(c)(1) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party[,]" and "[f]ailure to provide the address information within 30 days of filing may result in the dismissal of the case against the defendant."); LCvR 11.1 (same requirement as LCvR 5.1(c)(1)).  Thus, the Federal and Local Rules promote a "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' . . . and, more specifically, from the tradition of open judicial proceedings."  *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (internal citations omitted) (quoting *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 899 (D.C. Cir. 1996)).  Accordingly, "parties to a lawsuit must typically openly identify themselves in their pleadings," with "[b]asic fairness dictat[ing] that those among the defendants' accusers who wish to participate as individual party plaintiffs must do so under their real names."  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463–64 (D.C. Cir. 1995) (per curiam) (internal quotation marks omitted).

Despite the presumption in favor of disclosure, the Federal Rules of Civil Procedure describe circumstances in which filings may be redacted and where access to public filings may be limited.  Fed. R. Civ. P. 5.2.  Minors, for example, must be referred to using only their initials.  Fed. R. Civ. P. 5.2(a)(3).  The Court may also, for good cause, "require redaction of additional information."  Fed. R. Civ. P. 5.2(e)(1).

Courts have also, in special circumstances, permitted parties to proceed pseudonymously.  A party seeking to do so, however, "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name."  *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020).  Once that showing has been made, the Court must then "balance the litigant's legitimate interest in

anonymity against countervailing interests in full disclosure." *In re Sealed Case*, 931 F.3d at 96.  When balancing these general concerns, five factors, initially drawn from *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993), serve as "guideposts from which a court ought to begin its analysis." *In re Sealed Case*, 931 F.3d at 97.  These five factors are:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and relatedly, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id*. (citing *James*, 6 F.3d at 238).

Nevertheless, a court must not simply "engage in a wooden exercise of ticking the five boxes." *Id*.  Rather, "district courts should take into account other factors relevant to the particular case under consideration." *Id*. (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008)) (internal quotation marks omitted).  In exercising discretion "to grant the 'rare dispensation' of anonymity . . . the court has 'a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted' . . . tak[ing] into account the risk of unfairness to the opposing party, as well the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James*, 6 F.3d at 238) (other internal citations and quotation marks omitted).

## IV.  ANALYSIS

The Court is persuaded that Plaintiffs have met their burden of showing that their privacy interests outweigh the public's presumptive and substantial interest in knowing their identities.  For the minor Plaintiffs—L.R., E.D., A.L., J.L., W.O., G.F., J.S., and K.C.—pseudonymity is

required because they are minors. *See* Fed. R. Civ. P. 5.2(a)(3). For the adult Plaintiffs, the public's interest in knowing their identities is *de minimis* compared to the Plaintiffs' significant privacy interests, given they each "face a significant risk of persecution—including physical harm or death—if their identities are publicly revealed through this lawsuit." Pls.' Mot. at 3. For the same reasons, the Court will also grant Plaintiffs' motions to file their supporting declarations under seal.

First, as the earlier descriptions of the Plaintiffs make clear, Plaintiffs do not seek to proceed under pseudonym "merely to avoid . . . annoyance and criticism," but to "preserve privacy in a matter of sensitive and highly personal nature." *See In re Sealed Case*, 931 F.3d at 97. Plaintiffs have filed declarations under seal detailing the abuse, harassment, and threats they suffered that prompted their claims of asylum in the first place. *See* Exs. 1–10 to Pls.' Mot. (sealed); *see* Exs. 1–11 to Pls.' Am. Mot. (sealed). The underlying asylum claims are highly relevant to this action. Pls.' Mot. at 4–6; Pls.' Am. Mot. at 4–7.

Second, Plaintiffs persuasively argue that they and their families "would likely become victims of retributive violence in their countries of origin and/or in Mexico" if their identities were made public because "some Individual Plaintiffs face imminent removal . . . or have [already] been deported and are in hiding." Pls.' Mot. at 2. While the risks faced by Plaintiffs differ in kind and degree, each has alleged a risk of retaliatory harm given that they fled their countries of origin because they fear persecution or harm there. *Id.* at 6. Federal regulations recognize the sensitivity of asylum applications and make that information confidential, *see* 8 C.F.R. §§ 208.6, 1208.6, precisely because the information, "if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who

9

may still be residing in the country of origin," *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (quoting U.S. Customs & Immigr. Servs. Asylum Div., U.S. Dep't of Homeland Sec., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (2005)). Publicly associating Plaintiffs with the details of their asylum claims puts them at risk considering they all "have been or imminently will be sent to places where they fear for their safety." *See* Pls.' Mot. at 9. "[I]dentification poses a risk of retaliatory physical . . . harm to" Plaintiffs. *In re Sealed Case*, 931 F.3d at 97. This factor weighs heavily in favor of allowing Plaintiffs to proceed pseudonymously.

Third, the pseudonymity of Plaintiffs D.C., A.E., R.R., S.O., and J.N. implicate the privacy and pseudonymity of their minor children. Pls.' Mot. at 4–5; Pls.' Am. Mot. at 5–6. This is an additional factor weighing in their favor. It does not detract from the other adult Plaintiffs' arguments in favor of pseudonymity.

Fourth, the fact that this suit is against the government only slightly weighs in favor of denying Plaintiffs' motion. Although "[t]here is a heightened public interest when an individual or entity files a suit against the government," *In re Sealed Case*, 971 F.3d. at 329, there is nothing about these proceedings in particular that creates any need for transparency with respect to the individual Plaintiffs' identities, *cf. id.* (describing an increase in public interest where a regulated entity chose to sue a government agency regarding "special exemptions" from statutory obligations). Here, the individual Plaintiffs seek primarily to vindicate their own rights, and pseudonymity appears to be necessary to provide them the opportunity to do so.

Fifth, allowing Plaintiffs to proceed under pseudonym will not prejudice Defendants in any way, as evidenced by Defendants' choice not to oppose these motions. Pls.' Mot. at 1; Pls.' Am. Mot. at 1. Defendants will know Plaintiffs' true identities, Pls.' Mot. at 8, so allowing them

to proceed under pseudonym will not compromise Defendants' ability to defend this action and therefore poses no "risk of unfairness to the opposing party." *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008); *see also Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20, 2017) (explaining that "[b]ecause the Defendants know the Individual Plaintiffs' names, they have the information needed to defend against [their] claims").

When weighed against the minimal apparent interest in disclosure, Plaintiffs' significant interest in maintaining their pseudonymity is more than sufficient to overcome the general presumption in favor of open proceedings. *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'") (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motions to Proceed Under Pseudonyms and to File Supporting Exhibits Under Seal (ECF Nos. 15 and 57) are **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 18, 2024                                    RUDOLPH CONTRERAS
                                                             United States District Judge