**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) No. 1:24-cv-01702-RC |
| v. | ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | ) ) ) |
| *Defendants*. | ) ) ) |

## MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1, Plaintiffs hereby move the Court to issue a temporary restraining order requiring Defendants to promptly allow Plaintiffs S.O, W.O., and G.F.—whose CBP One appointment was scheduled for January 25, 2025, before Defendants cancelled it—to be paroled into the United States at the Paso Del Norte port of entry in El Paso, Texas, so that they can pursue their claims for asylum. *See* Exec. Order, *Securing Our Borders,* § 7(a) (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/securing-our-borders/.[1]

Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel hereby certify that they have conferred with Defendants about this motion. Defendants oppose the relief sought herein.

---

[1] In the interest of expeditiously seeking urgently-needed relief for S.O., W.O., and G.F., Plaintiffs limit this motion to relief concerning those named Individual Plaintiffs and do not at this time seek broader relief concerning the reinstatement or rescheduling of parole appointments for other noncitizens whose CBP One appointments were cancelled. Should the Court be inclined to consider whether such additional relief would be appropriate, Plaintiffs can file a separate motion on behalf of the Organizational Plaintiffs in this case.

# BACKGROUND

## A.    The Rule and the CBP One Appointment System

The Rule challenged in this action eliminated asylum for those who entered between ports of entry at the southern border, but contained an exception for noncitizens arriving at a port of entry with appointments scheduled through the CBP One application. *Securing the Border*, 89 Fed. Reg. 81156 (Oct. 7, 2024).

As set forth in Plaintiffs' initial and supplemental summary judgment briefs, the Rule's elimination of the right to seek asylum between ports of entry violates the clear text of 8 U.S.C. § 1158(a)(1), which guarantees the right to apply for asylum "whether or not" at a port of entry. *E.g.*, Pls. MSJ at 9–12, ECF No. 23; Pls. Supp. Br. at 3, ECF No. 59; *see also E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025, 1041 (N.D. Cal. 2023) ("a rule that conditions eligibility for asylum on presentment at a port of entry conflicts with Section 1158(a)"), *appeal held in abeyance*, 93 F.4th 1130 (9th Cir. 2024).   Defendants defended the prohibition on asylum between ports by noting the availability of appointments through CBP One. *E.g.*, Defs. MSJ Opp. at 48–49, ECF No. 45-1; Defs. Supp. Opp. at 9–10, ECF No. 62.   Indeed, Defendants justified the Rule by pointing to the existence of the CBP One application and the supposedly "orderly" method of entry it provides. *E.g.* 89 Fed. Reg. at 81161; Defs. MSJ Opp. at 30, 47.

No longer. Just after 12:00 p.m. EST on January 20, 2025, President Trump terminated the use of the application: CBP removed the scheduling functionality of the application and canceled all existing appointments, which had been scheduled into February 2025.[2] In an Executive Order issued the night of January 20, President Trump directed the Secretary of Homeland Security to

---

[2] AP News, *Migrants stranded when thousands of appointments to enter the US are canceled as Trump takes office* (Jan. 20, 2025), https://apnews.com/article/trump-immigration-cbp-one-border-app-652854b5f2a4e6ccd6ee2ccc729cbb55.

cease use of the CBP One application. *Securing Our Borders*, § 7(a) (Jan. 20, 2025). The abrupt termination left thousands of asylum seekers—many of whom had waited months for appointments, and who have survived kidnapping, violence, and other crimes in Mexico—stranded in dangerous conditions.[3] Some asylum seekers had been waiting for more than a year for their appointments;[4] others were turned away while waiting to cross the border for appointments scheduled the afternoon of January 20.[5]

**B.    Plaintiffs S.O, W.O, and G.F.'s Experience**

Plaintiff S.O. and her children fled Venezuela in April 2024 and then spent more than five months trying to secure a CBP One appointment. S.O. Decl., ECF No. 57-6 ¶¶ 13-16. While in Mexico trying to get a CBP One appointment, the family was kidnapped, robbed, and extorted, and S.O. was threatened with rape. *Id.* ¶¶ 14-15. After repeatedly trying and failing to get an appointment even after the kidnapping, and fearful for their lives, the family entered the United States on or about October 18, 2024, with the intention of seeking asylum. *Id.* ¶ 16.

But S.O. and her children never got that chance. The family was removed to Mexico under the Rule without a credible fear interview. *Id.* ¶¶ 17-22. Defendants claim that S.O. failed to manifest a fear even though she repeatedly professed that she "could not go back." *Id.* ¶ 19. S.O. was so terrified that, without prompting, she approached an immigration officer and explained why

---

[3] Reuters, *Tears and shock as Trump dashes dreams of migrants in Mexico scheduled to enter US* (Jan. 20, 2025), https://www.reuters.com/world/us/tears-shock-trump-dashes-dreams-migrants-mexico-scheduled-enter-us-2025-01-20/.
[4] NBC News, *Trump shuts down immigration app, dashing migrants' hopes of entering U.S.* (Jan. 20, 2025), https://www.nbcnews.com/news/latino/trump-shuts-cbp-one-immigration-app-dashing-migrants-hopes-entering-us-rcna188448.
[5] AP News, *Migrants stranded when thousands of appointments to enter the US are canceled as Trump takes office* (Jan. 20, 2025), https://apnews.com/article/trump-immigration-cbp-one-border-app-652854b5f2a4e6ccd6ee2ccc729cbb55.

she fears returning to Venezuela. *Id.* ¶ 18. That officer told S.O. that she did not have an asylum claim and that none of what she said mattered. *Id.*

In addition to ignoring S.O.'s express statements of fear, DHS officers deceived her into signing a removal order. Officers instructed her to sign a form on a tablet that was in English only, to confirm that she was the biological mother of her children. *Id.* ¶ 17. Wanting to confirm that fact but unable to read the form, S.O. signed what turned out to be a removal order to Mexico. *Id.*

S.O. likewise never had a chance to assert her claim of fear regarding removal *to Mexico*. If she had been given that opportunity, she would have explained that during her time in Mexico trying to get a CBP One appointment, she and her children were kidnapped and she was threatened with rape. *Id.* ¶¶ 14-15.

In October 2024, Defendants removed S.O. to Mexico, where she was detained by Mexican immigration and threatened with removal to Venezuela. *Id.* ¶ 20. In early January 2025, S.O. finally succeeded in getting a CBP One appointment for January 25, 2025 at the Paso Del Norte port of entry in El Paso. She borrowed money from family so that she could purchase plane tickets for herself and her children to travel from Mexico City to Ciudad Juárez for their appointment. But on January 20, S.O. received word that their appointment has been cancelled.

Without this appointment, S.O. must remain in Mexico where she continues to live in fear. And she remains at risk that the Mexican government will remove her to Venezuela, as Mexican authorities have already threatened to do. In Venezuela, S.O.'s life is in danger as a political dissident. She fled Venezuela with her children "after an armed group allied with the Maduro regime ransacked her home, threatened her, and physically attacked her and her family." 2nd Am. Compl., ECF No. 56 ¶ 27.

S.O. stayed behind and fled only after she too faced harm. Maduro supporters invaded her home, kidnapped her brother with whom she was living, broke into her grandmother's home, and

sent her threats to her life and those of her children. ECF No. 57-6 ¶¶ 9-11. She now lives in limbo: afraid for her life in Mexico, unable to return to Venezuela, and fearful for the lives of her children. And because her CBP One appointment was cancelled, she has lost her ability to seek protection for herself and her children and to reunite with family members who are already in the United States seeking asylum. *Id.* ¶¶ 5, 7.

## ARGUMENT

**The Court Should Order Defendants to Promptly Parole Plaintiffs S.O, W.O., and G.F. into the United States at the Juarez Paso Del Norte Port of Entry.**

On a motion for a temporary restraining order, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Chef Time 1520 LLC v. SBA*, 646 F. Supp. 3d 101, 109 (D.D.C. 2022) (tests for TRO and preliminary injunction are the same).

### A. This Court Has Authority to Grant the Relief Sought.

This Court may enter a temporary restraining order requiring CBP to honor S.O. and her children's parole appointment "to preserve the status quo for a limited period of time" until a decision on the merits. *Barrow v. Graham*, 124 F. Supp. 2d 714, 715–16 (D.D.C. 2000); *see also M.G.U. v. Nielsen*, 316 F. Supp. 518, 520–21 (D.D.C. 2018); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) ("The status quo is the last *uncontested* status which preceded the pending controversy.") (quotation omitted). And this Court has granted similar injunctive relief in the past, requiring Defendants to consider requests for parole under existing agency practice. *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 157–58 (D.D.C. 2018) (Contreras, J.).

**B.  Plaintiffs are Likely to Succeed on the Merits.**

To satisfy the likelihood of success prong of the analysis, a plaintiff must raise at least a "serious legal question on the merits." *Padgett v. Vilsack*, 2024 WL 4006050, at *2 (D.D.C. Aug. 30, 2024) (internal quotation marks and citations omitted).  For all the reasons set forth in Plaintiffs' summary judgment briefing, they satisfy that standard here. Moreover, S.O. and her children illustrate the fundamental flaws in the Rule.  They were subjected both to the Rule's manifestation requirement, which resulted in their initial removal from the United States without the opportunity for a credible fear interview, and the Rule's asylum ban, under which they were required to wait in Mexico for the CBP One appointment that has now been revoked.  *See* Pls. MSJ at 21–26, ECF No. 23 (explaining that the Rule eliminated the decades-long process of advising migrants that they could obtain a screening to seek protection and substituted a requirement that they now spontaneously on their own "manifest" a fear in order to obtain a screening).

Absent the application of those two portions of the Rule, S.O. and her young children would already be in the United States pursuing their asylum claims, not stranded in Mexico in fear of the kind of horrific violence that has been inflicted on so many other asylum seekers. And as Plaintiffs have explained repeatedly and at length, those portions of the Rule are illegal. *E.g.*, Pls. MSJ at 10–17, 22–31, ECF No. 23; Pls. Supp. Br. at 3–21, ECF No. 59.

Furthermore, S.O. and her children have "'serious reliance interests'" in Defendants' use of CBP One. *DHS v Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)). S.O. and her children waited months in conditions of extreme danger in Mexico, a country where they had already been kidnapped and extorted. Second Am. Compl., ECF No. 56, ¶¶ 27–28, 91. S.O. and her children did so believing that, after finally securing a CBP One appointment, they would have a chance to apply for asylum in the United States. And once she received the appointment, S.O. purchased plane tickets that she

6

could not afford with borrowed money so that she and her children could be at the correct port of entry at the date and time of the appointment.

### C. S.O. and her family face irreparable harm if a TRO is not granted.

Irreparable harm must be both "irretrievable" and "serious in terms of its effect on the plaintiff." *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 56 (D.D.C. 2020). There is no doubt that S.O. and her children will suffer such harm absent a TRO. If she is not promptly paroled, S.O. will lose the chance to seek protection in the United States for herself and her children, given that—under both the Rule and current circumstances—there is no other way to seek asylum at the southern border. *See Huisha-Huisha v. Mayorkas*, 560 F. Supp. 3d 146, 172 (D.D.C. 2021) ("expulsion without any opportunity to apply for asylum or withholding of removal" is an irreparable injury), *aff'd in relevant part*, 27 F.4th 718 (D.C. Cir. 2022); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 146 (D.D.C. 2018) (irreparable injury results when "unlawful policies … caused plaintiffs" to lose their right to apply for asylum), *rev'd in part on other grounds*, 965 F.3d 883 (D.C. Cir. 2020). Further, absent a TRO, S.O. and her children will be forced either to remain in violent conditions in Mexico or return to Venezuela—a country where S.O. was persecuted because of her political beliefs and resistance to the Maduro regime. ECF No. 56 ¶ 27; ECF No. 57-6 ¶¶ 9–13. Finally, S.O. has suffered the unrecoverable economic loss of the cost of her tickets to come to the border—a cost that is extremely significant to S.O. and her family given their limited means. *See Whitman-Walker*, 485 F. Supp. 3d at 58–59 (holding that unrecoverable economic loss can constitute an irreparable injury).

### D. The balance of the equities and the public interest favor S.O. and her family.

"The balance of the equities weighs the harm to the Plaintiff absent a TRO against the harm to the agenc[ies] if the Court grants the motion." *Chef Time*, 646 F. Supp. 3d at 116; *see Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). Here, because "the government

is the non-movant," the public interest factor merges with the balance of the equities. *Chef Time*, 646 F. Supp. 3d at 116.

The "life-or-death consequences" for S.O. and her children "weigh heavily in favor of" a TRO. *See A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 222 (D.D.C. 2020); *accord Huisha-Huisha*, 560 F. Supp. 3d at 174. Furthermore, "[t]here is generally no public interest in the perpetuation of unlawful agency action" like that here. *Id.* at 222 (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); *accord Huisha-Huisha*, 560 F. Supp. 3d at 174; *J.B.B.C. v. Wolf*, No. 1:20-CV-01509-CJN, 2020 WL 6041870, at *3 (D.D.C. June 26, 2020).

To the contrary, the public interest favors enforcing the plain text of § 1158(a)(1) permitting people who arrive in the United States to apply for asylum rather than forcing them to return to a "'significant risk of physical harm.'" *Huisha-Huisha*, 560 F. Supp. 3d at 175 (quoting *A.B.-B.*, 548 F. Supp. 3d at 222); *see Nken v. Holder*, 556 U.S. 418, 436 (2009) (noting public interest in preventing wrongful removals). And finally, "[i]t is unclear" how "the relief requested" for S.O. and her family "will negatively impact Defendants, because it is relatively minor." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 156 (Contreras, J.). Defendants need not grant S.O. asylum. Rather, they must do no more than parole her at a port of entry and give her the opportunity to seek that protection.

## CONCLUSION

For the reasons stated above, this Court should grant a temporary restraining order requiring Defendants to honor the CBP One appointment for S.O. and her family, scheduled for January 25, 2025 or within 72 hours of the Court's decision on this motion.

Dated: January 23, 2025

Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

Morgan Russell*
Katrina Eiland*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
*mrussell@aclu.org*
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: 202-355-4471
*crowmelissa@uclawsf.edu*

Blaine Bookey*
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
T: 415-581-8825
*bbookey@uclawsf.edu*

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation

Respectfully submitted,

/s/ Lindsay C. Harrison
Lindsay C. Harrison (D.C. Bar #977407)
Mary E. Marshall (D.C. Bar #1739058)
Maura E. Smyles (D.C. Bar #90006775)*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
T: 202-639-6000
*lharrison@jenner.com*
*mmarshall@jenner.com*
*msmyles@jenner.com*

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
353 N Clark St, Chicago, IL 60654
T: 312-222-9350
*mroot@jenner.com*
*aosborne@jenner.com*

Keren Zwick (D.D.C. Bar. No. IL0055)
Richard Caldarone (D.C. Bar No. 989575)*
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370
*kzwick@immigrantjustice.org*
*rcaldarone@immigrantjustice.org*
*mgeorgevich@immigrantjustice.org*
Tamara Goodlette (D.C. Bar. No.
TX24117561)
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 207
*tami@texascivilrightsproject.org*

Edith Sangueza*
Center for Gender & Refugee Studies
26 Broadway, 3rd Floor

of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
aspitzer@acludc.org
smichelman@acludc.org

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
aharris@aclutx.org
ddonatti@aclutx.org

New York, NY 10004
T: 415-581-8835
sanguezaedith@uclawsf.edu

Robert Pauw*
Center for Gender & Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080
rpauw@ghp-law.net


Attorneys for Plaintiffs

*Admitted via certificate of pro bono
representation or pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Lindsay C. Harrison</u>

Lindsay C. Harrison
