IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants.* | No. 1:24-cv-01702-RC |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE IMPACT OF
THE TERMINATION OF THE CBP ONE APPOINTMENT SYSTEM**

On January 20, 2025, President Trump terminated the CBP One application ("CBP One")—the only avenue under the challenged Rule for people arriving at the southern border to seek asylum.[1] Defendants have repeatedly defended the Rule based on the existence of the CBP One appointment system. With that system eliminated, the Rule is now unlawful even under Defendants' own rationales.

The Interim Final Rule and Rule have always been illegal. The elimination of CBP One makes their illegality all the more clear on both statutory and APA grounds. Accordingly, the Court should vacate the Rule as both contrary to law and arbitrary and capricious.

---

[1] *See* Executive Order, *Securing Our Borders,* § 7(a) (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/securing-our-borders/; *see also* U.S. Customs & Border Protection, CBP One™ Mobile Application, https://www.cbp.gov/about/mobile-apps-directory/cbpone (visited Jan. 20, 2025) ("Effective January 20, 2025, the functionalities of CBP One™ that previously allowed undocumented aliens to submit advance information and schedule appointments at eight southwest border ports of entry is no longer available, and existing appointments have been cancelled.").

1

## I. The Elimination of CBP One Dispels Any Question that the Rule Violates the Asylum Statute.

As set forth in Plaintiffs' earlier briefs, the Rule's elimination of the right to seek asylum between ports of entry violates the clear text of 8 U.S.C. § 1158(a)(1), which guarantees the right to apply for asylum "whether or not" one entered at a port of entry. *E.g.*, Pls. MSJ at 9-12, ECF No. 23; Pls. Supp. Br. at 3, ECF No. 59; *see also, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025, 1041 (N.D. Cal. 2023) ("a rule that conditions eligibility for asylum on presentment at a port of entry conflicts with Section 1158(a)"), *appeal held in abeyance*, 93 F.4th 1130 (9th Cir. 2024). Without CBP One, the Rule is even more draconian—and even more unmistakably contrary to § 1158(a)(1). Because there is now no authorized way for people to seek asylum at the southern border, the Rule renders effectively *everyone* ineligible for asylum. That is the exact opposite of what Congress intended when it mandated that "any" noncitizen present or arriving in the United States has the right to apply for asylum regardless of their manner of entry. Accordingly, the Rule is contrary to law. *See* Pls. MSJ at 10, ECF No. 23.

Defendants have repeatedly argued that the Rule does not violate § 1158(a)(1) because of the existence of the CBP One process. For example, Defendants quoted the Rule in arguing that "'[t]he [asylum-eligibility] limitation is not a sweeping categorical bar that would preclude a grant of asylum solely based on manner of entry[]" because application of the bar "'turns on whether . . . an individual has followed the lawful, safe, and orderly pathways that the United States Government has established'"—i.e., the CBP One system. Defs. Supp. Br. at 4-5, ECF No. 62 (some alterations in original) (quoting Final Rule, 89 Fed. Reg. 81156, 81170 (Oct. 7, 2024)); *see also, e.g.*, Defs. MSJ Opp. at 30, ECF No. 45-1 (arguing that the Rule does not violate § 1158(a)(1) because it "establish[es] a limitation on asylum eligibility premised on the need to disincentivize

2

irregular migration while encouraging use of alternative lawful pathways to enter the United States"); Defs. MSJ Reply at 5, ECF No. 52.

Even under Defendants' statutory theory, therefore, the termination of the CBP One scheduling system reinforces the conclusion that the Rule's asylum bar violates § 1158(a)(1).

## II.     The Elimination of CBP One Exacerbates the Rule's Arbitrariness.

The elimination of CBP One also eviscerates Defendants' position that the Rule is not arbitrary and capricious. Defendants argued that the Rule's onerous restrictions are not arbitrary in large part because of its exception "for those who enter with a CBP One appointment." Defs. Supp. Reply at 8, ECF No. 62. Defendants claimed that CBP One provided "a reasonable means that noncitizen may use to lawfully present themselves at a port of entry and thereby avoid application of the asylum-eligibility limitation." *Id.* at 4; *see also* Defs. Supp. Opp. at 7, ECF No. 62 (stressing importance of CBP One).

Time and again, Defendants represented that the Rule did not shut down the asylum system because it "channeled migration flows to lawful pathways and orderly methods of entry, including via prescheduled appointments to present at [ports of entry] using the CBP One app." Defs. Supp. Opp. at 6, ECF No. 62; *see also, e.g.*, *id.* at 11 ("it is reasonable for the Departments to rely on [the CBP One] app to assist in addressing the emergency border circumstances as well as to provide means for noncitizens to avoid limitations on asylum eligibility"). Indeed, Defendants trumpeted CBP One as a "*safer* lawful pathway," Defs. Supp. Reply at 3, ECF No. 67, and "a valuable tool that allows efficient processing of high numbers of noncitizens with minimal downsides," *id.* at 10; *see also, e.g.*, Defs. Supp. Opp. at 9, ECF No. 62 ("[T]he CBP One app is not a barrier to asylum access, but rather 'a tool that DHS has established to process the flow of noncitizens

3

seeking to enter the United States in a more orderly and efficient fashion.") (quoting 89 Fed. Reg. at 81219).

Defendants also relied on the existence of CBP One to discount concerns for the safety of Mexican asylum seekers forced to wait in their country of persecution. Defendants asserted that "the ability of Mexican nationals to schedule a CBP One appointment from anywhere in Mexico means that 'Mexican nationals facing imminent danger in a specific area of Mexico [may] internally relocate while waiting for their CBP One appointment.'" Defs. Supp. Opp. at 8, ECF No. 62 (quoting 89 Fed. Reg. at 81251). Defendants assured the Court that, "[a]lthough this may be less convenient, the ability to safely relocate *and schedule an appointment* remains a possibility for those at risk of harm in specific areas of Mexico." *Id* (emphasis added).

These justifications rang hollow even while CBP One existed, but the elimination of the scheduling system now renders them irrelevant. The Rule now affords no "pathway" to asylum at all, including for Mexican nationals fleeing persecution in Mexico itself.

The end of CBP One appointments also completely undermines other core justifications in the Rule's preamble. The Rule asserts that it is intended to "substantially improve the Departments' ability to deliver timely decisions and consequences," 89 Fed. Reg. at 81230 (citing 89 Fed. Reg. at 48715); and to "encourage migrants with meritorious asylum claims to use the lawful, safe, and orderly pathways that the United States Government has provided," *id.* at 81182. The Rule claimed this was needed to "address the very high levels of irregular migration … without discouraging those with valid claims from applying for asylum," *id.* at 81188; and to "better manage already strained resources," while "ensur[ing] that the processing of migrants seeking protection in the United States is done in an effective, humane, and efficient manner," *id.* at 81209. It was highly dubious at best whether the Rule was reasonably designed to serve any of these objectives even

4

with the CBP One system in place. And *without* CBP One, the Rule furthers none of them. The Rule now provides no way at all to "deliver timely decisions" and no "lawful, safe, and orderly pathway[]" to seek asylum. It bars "those with valid claims from applying for asylum," and entirely eliminates any notion of "effective, humane, and efficient" processing.

To be clear, the Rule could never and did never achieve its purported aims. There was nothing reasonable or humane about conditioning asylum eligibility on waiting months on end in dangerous circumstances for appointments only available through a resource-intensive smartphone application that was unusable by many asylum seekers—and that many did not even know about. But without the CBP One process in place, the Rule's arbitrariness is all the more obvious.

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' previous briefing, the Court should grant summary judgment to Plaintiffs and vacate the Rule, the Interim Final Rule, and the Guidance.

Dated: January 24, 2025

Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

Morgan Russell*
Katrina Eiland*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700

Respectfully submitted,

/s/ Lindsay C. Harrison
Lindsay C. Harrison (D.C. Bar #977407)
Mary E. Marshall (D.C. Bar #1739058)
Maura E. Smyles (D.C. Bar #90006775)*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
T: 202-639-6000
*lharrison@jenner.com*
*mmarshall@jenner.com*
*msmyles@jenner.com*

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654

San Francisco, CA 94104  
T: 415-343-0770  
*mrussell@aclu.org*  
*keiland@aclu.org*  
*cwofsy@aclu.org*  
*samdur@aclu.org*  

Melissa Crow (D.C. Bar. No. 453487)  
Center for Gender & Refugee Studies  
1121 14th Street, NW, Suite 200  
Washington, D.C. 20005  
T: 202-355-4471  
*crowmelissa@uclawsf.edu*  

Blaine Bookey*  
Center for Gender & Refugee Studies  
200 McAllister Street  
San Francisco, CA 94102  
T: 415-581-8825  
*bbookey@uclawsf.edu*  

Arthur B. Spitzer (D.C. Bar No. 235960)  
Scott Michelman (D.C. Bar No. 1006945)  
American Civil Liberties Union Foundation  
of the District of Columbia  
529 14th Street, NW, Suite 722  
Washington, D.C. 20045  
T: 202-457-0800  
*aspitzer@acludc.org*  
*smichelman@acludc.org*  

Ashley Alcantara Harris*  
David A. Donatti*  
ACLU Foundation of Texas  
P.O. Box 8306  
Houston, TX 77288  
TEL: (713) 942-8146  
FAX: (713) 942-8966  
*aharris@aclutx.org*  
*ddonatti@aclutx.org*  

353 N Clark St, Chicago, IL 60654  
T: 312-222-9350  
*mroot@jenner.com*  
*aosborne@jenner.com*  

Keren Zwick (D.D.C. Bar. No. IL0055)  
Richard Caldarone (D.C. Bar No. 989575)*  
Mary Georgevich*  
National Immigrant Justice Center  
111 W. Jackson Blvd., Suite 800  
Chicago, IL 60604  
T: 312-660-1370  
*kzwick@immigrantjustice.org*  
*rcaldarone@immigrantjustice.org*  
mgeorgevich@immigrantjustice.org  

Tamara Goodlette (D.C. Bar. No. TX24117561)  
Texas Civil Rights Project  
P.O. Box 219  
Alamo, Texas 78516  
T: 512-474-5073, ext. 207  
*tami@texascivilrightsproject.org*  

Edith Sangueza*  
Center for Gender and Refugee Studies  
26 Broadway, 3rd Floor  
New York, NY 10004  
T: 415-581-8835  
*sanguezaedith@uclawsf.edu*  

Robert Pauw*  
Center for Gender and Refugee Studies  
c/o Gibbs Houston Pauw  
1000 Second Avenue, Suite 1600  
Seattle, WA 98104  
T: 206-682-1080  
*rpauw@ghp-law.net*  

*Attorneys for Plaintiffs*

*\*Admitted via certificate of pro bono representation or pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lindsay C. Harrison
Lindsay C. Harrison