BRETT A. SHUMATE
*Acting Assistant Attorney General*

EREZ REUVENI
*Assistant Director*

CHRISTINA P. GREER
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8770
Email: Christina.P.Greer@usdoj.gov

PATRICK GLEN
DAVID KIM
KATHERINE J. SHINNERS
BRIAN C. WARD
*Senior Litigation Counsel*

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Las Americas Immigration Advocacy Center, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>U.S. Department of Homeland Security, *et al.*, )<br><br>Defendants. ) | Civil Action No. 1:24-cv-01702 |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

## INTRODUCTION

On January 23, 2025, Plaintiffs moved for a temporary restraining order ("TRO") that would require Defendants to take the affirmative step of paroling Individual Plaintiffs S.O., W.O., and G.F. ("Individual Plaintiffs") into the United States at a specific port of entry, after the Department of Homeland Security ("DHS") cancelled their appointment to present to U.S. Customs and Border Protection ("CBP") at a port of entry for processing—called a "CBP One appointment." *See generally* TRO Mot., ECF 71.

This request is not for a TRO, but for a mandatory injunction that has no connection to the relief requested in the complaint, and this case in no way warrants such an extraordinary order. First, the Court has no authority to grant parole into the United States or to order the Government to grant such parole. Second, Individual Plaintiffs' claims in this litigation do not relate in any way to parole, and a judicial grant of parole would not be a proper remedy even were they to succeed on the merits. Third, the factors considered for issuing a mandatory injunction favor Defendants. These Individual Plaintiffs have no viable, timely challenges in this suit. And the equities sharply favor the Government as the judicially ordered parole these Individual Plaintiffs request "deeply intrudes into the core concerns of the executive branch." *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978).

For these reasons, as explained below, the Court should deny Plaintiffs' motion.

## BACKGROUND

### I.     The Securing the Border Rules and Proclamation

On June 4, 2024, former President Biden announced a Proclamation under 8 U.S.C. §§ 1182(f) and 1185(a), finding the entry of most categories of aliens during high levels of encounters to be detrimental to the interests of the United States. The Proclamation limited and suspended entry of such aliens unless encounters of aliens between ports of entry at the southern

border drop below a specified threshold, and provided that the suspension and limitation on entry would be reimposed should encounters again increase above a specified level. 89 Fed. Reg. 48,487 (June 7, 2024). The Proclamation provides that the "entry of any noncitizen into the United States across the southern border" is "suspended and limited," subject to multiple exceptions, including an exception for aliens who present at a port of entry at a pre-scheduled time and place. *Id.* at 48,491.

The same day, Defendants issued the interim final rule *Securing the Border*, 89 Fed. Reg. 48,710 (June 7, 2024) ("IFR"), which made certain changes to the expedited removal and credible fear process for aliens who entered in violation of the Proclamation. As relevant here, the IFR adopted: (1) a limitation on asylum eligibility under 8 U.S.C. § 1158(b)(2)(C), (d)(5)(B), rendering ineligible for asylum aliens who entered in violation of the Proclamation unless they establish exceptionally compelling circumstances, and (2) a manifestation of fear standard for determining who would be screened for potential asylum and protection eligibility rather than affirmatively asking all aliens whether they fear removal. *See* 8 C.F.R. §§ 208.13(g), 208.35(a), 1208.13(g), 1208.35(a) (asylum provisions), 235.15 (manifestation standard); Defs.' Mot. Summ. J., ECF 45-1 at 6–12.

On October 1, 2024, Defendants finalized the IFR. *Securing the Border*, 89 Fed. Reg. 81,156 (Oct. 7, 2024) ("Final Rule"); *see* Defs.' Suppl. Br., ECF 62 at 1.

## II.    This Lawsuit

Plaintiffs initially challenged the IFR, *see* Compl., ECF 1; 1st Am. Compl., ECF 14, and then amended their complaint to challenge the Final Rule after it was issued, *see* 2d Am. Compl., ECF 56. In their prayer for relief, Plaintiffs primarily seek to invalidate the Final Rule and related guidance governing the timing of credible fear screening interviews. 2d Am. Compl., ECF 56, Prayer for Relief ¶¶(a)–(c). They also ask the Court to order the parole of individual Plaintiffs

removed prior to the Court's decision on the merits "into the United States for the duration of their removal proceedings so that they may apply for asylum, withholding of removal, and/or CAT protection in the United States." *Id.*, Prayer for Relief ¶ d.

## III.    Executive Actions on January 20, 2025

On January 20, 2025, President Trump issued an Executive Order entitled "Securing Our Borders" that instructs the Secretary of Homeland Security to "[c]ease using the 'CBP One' application as a method of paroling or facilitating the entry of otherwise inadmissible aliens into the United States." Executive order, *Securing Our Borders*, Sec. 7(a) (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/securing-our-borders/ ("Border EO"). The same day, the DHS announced: "Effective January 20, 2025, the functionalities of CBP One™ that previously allowed undocumented aliens to submit advance information and schedule appointments at eight southwest border ports of entry is no longer available, and existing appointments have been cancelled." CBP, *CBP One™ Mobile Application* (last modified Jan. 21, 2025), https://www.cbp.gov/about/mobile-apps-directory/cbpone.

The cancellation of CBP One appointments is an integral part of President Trump's recent efforts, pursuant to the Executive's significant authority in the immigration field, to address this nation's broken immigration system and the ongoing crisis at the southern border. *See, e.g.*, Border EO; Executive Order, *Declaring a National Emergency at the Southern Border of the United States* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/declaring-a-national-emergency-at-the-southern-border-of-the-united-states/; Executive Order, *Protecting the American People Against Invasion* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-american-people-against-invasion/. As the President explained, "[m]illions of illegal aliens from nations and regions all around the world successfully entered the United States where they are now residing," and polices that release aliens into the country

3

"undermine the rule of law and our sovereignty, create substantial risks to public safety and security, and divert critical resources away from stopping the entry of contraband and fugitives into the United States. Border EO, Sec. 1. The President has responded to the urgent situation at the border by directing a full panoply of immigration measures, including ending the use of the CBP One appointment system. *See* Border EO, Sec. 7(a).

## IV.    Plaintiffs' Motion for TRO

According to their TRO motion, Individual Plaintiffs S.O., W.O., and G.F.—who were removed from the United States in October 2024 through expedited removal after failing to manifest a fear—had an appointment to present at a port of entry scheduled for January 25, 2025, which was cancelled. TRO Mot., ECF 71 at 1; *see* Border E.O., Sec. 7(a). Plaintiffs now move the Court to order Defendants to "allow Plaintiffs S.O., W.O., and G.F. to be paroled into the United States at the Paso Del Norte port of entry in El Paso, Texas, so that they may pursue their asylum claims, at their originally scheduled CBP One appointment time on January 25, 2025, or within 72 hours of this Court's order." TRO Mot. Proposed Order, ECF 71-2; *see also generally* TRO Mot., ECF 71 at 8.

## LEGAL STANDARD

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011). "'The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high, and by now very well established." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 197 (D.D.C. 2020) (internal quotations and citations omitted). "The court considers the same factors in ruling on a motion for a temporary restraining order and a motion for a preliminary injunction." *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 72 (D.D.C. 2001). The movant must demonstrate (1) that he is likely

to succeed on the merits of his claims; (2) that he is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in his favor; and (4) that the proposed injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the movant seeks mandatory, rather than prohibitory, injunctive relief, the movant "must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (quotations and citation omitted), *aff'd*, 159 F.3d 636 (D.C. Cir 1998). A mandatory preliminary injunction "should not issue . . . unless the facts and the law clearly favor the moving party." *Nat'l Conf. on Ministry to Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (internal quotations omitted).

## ARGUMENT

### I.      The Court Lacks the Authority to Issue the Requested Injunctive Relief.

The extraordinary relief Plaintiffs request—an order compelling Defendants to allow the Individual Plaintiffs to enter the United States by paroling them into the country—is unavailable. The order essentially seeks to compel the United States to allow Plaintiffs physical entry, regardless of what other limitations on entry may exist, and to release them, undetained, into the country pending a determination on their asylum or protection claims. As the Supreme Court has held, the "exclusion of aliens is 'a fundamental act of sovereignty' by the political branches [and] review of an exclusion decision 'is not within the province of any court, unless expressly authorized by law.'" *Trump v. Hawaii*, 585 U.S. 667, 682 (2018) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542–543 (1950)); *see Dep't of State v. Munoz*, 602 U.S. 899, 915 (2024) ("the United States can, as a matter of public policy . . . forbid aliens or classes of aliens from coming within their borders," and "[n]o limits can be put by the courts upon" that power.").

The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). As part of the political branches' plenary authority over entry to this country, Congress has committed the decision whether to grant parole to the Executive's sole discretion and has insulated such discretionary decisions from judicial review. The Immigration and Nationality Act ("INA") thus precludes the injunctive remedy that these Individual Plaintiffs seek. Further, even assuming the court could order Defendants to parole the Individual Plaintiffs into the country, that relief has no connection to the claims pleaded in the complaint, which challenge the lawfulness of an asylum-eligibility bar and expedited removal procedures. Parole of Individual Plaintiffs is thus not a proper preliminary or final remedy in this matter.

      A.    *The INA Precludes Judicial Compulsion of Discretionary Parole.*

Parole is a temporary and limited means of authorized entry (or release) into the United States, and the INA assigns its use to the sole discretion of the Executive Branch. The parole statute provides that the Secretary of Homeland Security "*may*, . . . in [her] *discretion* parole into the United States temporarily *under such conditions as* [*she*] *may prescribe* only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphases added). The INA also precludes judicial review of decisions made discretionary by statute. Specifically, § 1252(a)(2)(B)(ii) provides that, "notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review . . . any decision or action . . . the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii); *Kucana v. Holder*, 558 U.S. 233, 239 (2010). Because the INA specifies that the decision whether to grant parole rests "in [the] discretion" of the Secretary, 8 U.S.C.

§ 1182(d)(5)(A), parole decisions are not judicially reviewable. Likewise, courts may not direct the Executive's exercise of discretion by either compelling or prohibiting the discretionary grant of parole. *See Giammarco v. Kerlikowske*, 665 F. App'x 24, 25–26 (2d Cir. 2016) (given § 1252(a)(2)(B)(ii), court may not order government to parole alien); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003) (similar); *Dugdale v. CBP*, No. 14-cv-01175 (CRC), 2015 WL 2124937, at *1 (D.D.C. May 6, 2015) ("The Court lacks the power, moreover, to order Dugdale to be paroled into the country as such decisions are committed to the exclusive discretion of the [Executive]."). Additionally, aliens who arrive in the United States and are not clearly admissible are subject to detention pending a determination on any claims to relief or protection from removal. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) (providing that an alien who demonstrates a credible fear "shall be detained for further consideration of the application for asylum"), (iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."), (b)(2)(A) ("in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). The relief Plaintiffs seek thus would not only violate well-established law precluding an alien outside the United States to obtain court-ordered relief to enter the country, it would compel discretionary parole in contravention of § 1252(a)(2)(B)(ii)'s judicial-review bar. By compelling parole, moreover, the requested relief is in clear tension with Congress's direction in § 1225(b) that, generally, individuals like the Plaintiffs be detained rather than released into the United States unless the Executive exercises its discretion to parole. *See generally Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009), *reinstated after vacatur by* 605 F.3d 1046 (D.C. Cir. 2010) (courts

may not "compel[] the Executive to release [aliens] into the United States outside the framework of the immigration laws").

 This Court's decision in *Aracely, R.* is not to the contrary. *See* TRO Mot., ECF 71 at 5 (citing *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018)). In that case, the Court did not view § 1252(a)(2)(B)(ii) as a bar to its review of claims challenging the process used by U.S. Immigration and Customs Enforcement ("ICE") in making parole determinations. The Court recognized, however, that claims seeking to dictate the ultimate parole determination or compel parole were subject to the judicial-review bar, and "the ultimate decision regarding parole . . . would plainly fall outside [the] Court's jurisdiction." *Aracely, R.*, 319 F. Supp. 3d at 135–36 (quoting *Abdi v. Duke*, 280 F. Supp. 3d 373, 384 (W.D.N.Y. 2017), and explaining that plaintiffs were not seeking relief in the form of release through parole or challenging individual parole decisions). Here, Plaintiffs do not challenge parole-related procedures and are seeking to compel individual grants of parole, a form of relief that this Court indicated was "undoubtedly" barred by § 1252(a)(2)(B)(ii). *Aracely, R.*, 319 F. Supp. 3d at 135.

 The fact that the ability to schedule appointments to present at a port of entry through the CBP One application no longer exists does not alter this analysis because the grant of parole at the border is exercised in the sole discretion of DHS. The CBP One scheduling system allowed aliens to make an appointment to present at ports of entry in an orderly fashion,[1] but, contrary to

---

[1] *See* STB_AR1_001488 ("CBP One is a mobile application that serves as a single portal to a variety of CBP services. Through a series of guided questions, the application directs each type of user to the appropriate services based on their needs. Among the options available, CBP One allows certain noncitizens, including those who lack documents sufficient for admission to the United States, to submit certain biographical information to CBP in advance of their arrival at a Southwest Border (SWB) Port of Entry (POE). The application also permits such noncitizen to schedule a date and time to present themselves for inspection at certain SWB POEs.").

Plaintiffs' implication, a CBP One appointment was merely a scheduled appointment to present at a port of entry for processing and did not guarantee parole. *See* TRO Mot., ECF 71 at 5. Parole is a separate discretionary decision that may be made by CBP immigration officers at the time of inspection and processing, after the alien has already arrived at the port of entry, with or without an appointment. *See* STB_AR1_000429 (CBP One website stating that "[u]pon arriving at a [port of entry], CBP officers inspect and evaluate all individuals to determine the appropriate processing disposition" and discussing potential processing dispositions, including expedited removal and issuance of a notice to appear in immigration court). But the grant of parole is not dictated by the appointment, and Plaintiffs point to no regulation or any source stating otherwise. Plaintiffs likewise do not assert that Defendants have failed to follow stated procedures concerning the grant of parole. Moreover, as discussed below, unlike in *Aracely R.*, Plaintiffs' complaint does not challenge parole procedures or even touch on legal issues related to parole.

      B.      *The Relief Sought is Improper for Lack of Nexus to the Conduct Challenged in the Complaint.*

Relatedly, even if the relief Plaintiffs seek were not barred by § 1252(a)(2)(B)(ii), it bears no relationship to their claims and cannot serve as a preliminary or final remedy. For injunctive relief to be proper, "there must be a relationship between the injury claimed in the motion for injunctive relief and the *conduct asserted in the underlying complaint*." *Pac. Radiation Oncology, LLC, v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (emphasis added). A preliminary injunction is only "appropriate to grant intermediate relief *of the same character* as that which may be granted finally." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (emphasis added). "A proper motion for a preliminary injunction seeks to enjoin *the action that the complaint alleges is unlawful* prior to the completion of the litigation, and without such a connection between the claim and requested injunction, there is simply no jurisdictional basis for the Court to grant

preliminary relief." *Bird v. Barr*, No. 19-CV-1581 (KBJ), 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (emphasis in the original). It is not a "generic means by which a plaintiff can obtain ancillary forms of relief that may be helpful to them while they litigate unrelated claims." *Id.*

Plaintiffs' TRO motion does not pass this test because the parole they seek is not directed at the conduct alleged to be unlawful. Plaintiffs' second amended complaint does not challenge parole procedures or practices at ports of entry, such as the Proclamation's suspension and limitation on entry. Instead, the complaint challenges an IFR and Final Rule barring asylum eligibility and making changes to the expedited removal and credible fear processes, as well as guidance concerning the timing of credible fear interviews. 2d Am. Compl., ECF 56 at ¶ 2. Their claims assert that the IFR, Final Rule, and guidance are unlawful under the INA and the Administrative Procedure Act ("APA"). *Id.* ¶¶ 106–129. There is no relationship between the conduct challenged—asylum and expedited removal regulations and credible fear procedures— and the requested relief of parole to Individual Plaintiffs who were previously removed after application of the IFR or Final Rule. Parole is a temporary, limited release mechanism for otherwise inadmissible aliens that is separate from asylum eligibility and the application of expedited removal procedures. *Compare* 8 U.S.C. § 1182(d)(5)(A) *with* 8 U.S.C. §§ 1158, 1225(b)(1) (concerning inspection of aliens who have not been admitted or paroled). Indeed, neither the IFR and Final Rule's provisions nor the challenged guidance govern or even discuss parole determinations. *See* 89 Fed. Reg. at 81,270 ("this rule does not provide for, prohibit, or otherwise set any policy regarding DHS's discretionary authority to make parole determinations"). Even assuming Plaintiffs were likely to succeed on their claims (as discussed below, *see infra* pp. 12–14, they are not), and even assuming this Court were to ultimately grant Plaintiffs judgment on the merits, parole would not be a proper remedy for the claimed unlawfulness of the IFR, the Final

Rule, or the guidance. *See* Defs.' Mot. Summ. J., ECF 45-1 at 59–60. It would merely grant a windfall to Plaintiffs in the form of unrelated relief from the mandatory detention to which all aliens who are applying for admission at a port of entry are subject under statutory detention and removal provisions that are likewise not challenged in this case. *See generally* 8 U.S.C. § 1225(b)(1)(B) (providing for detention); *id* § 1225(b)(2)(A).[2]

Nor do Plaintiffs identify any legal provision that would affirmatively authorize the relief they seek or point to any statute or other provision of law that even suggests that parole is a proper remedy for their claims. In order to compel an agency to take a specific action—whether under the APA, 5 U.S.C. § 706(1), or under traditional equitable principles—a court must first conclude that "an agency failed to take a discrete agency action that it is required to take." *Norton v. Sw. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Under traditional mandamus principles that have been carried forward into the APA, such an affirmative injunction remedy is "normally limited to enforcement of a specific, unequivocal command"—that is, "the ordering of a precise, definite act about which an official has no discretion whatever." *Id.* at 53 (quotation and alterations omitted). Plaintiffs do not identify any such statute mandating parole. Indeed, they seek to subvert the default mandatory detention requirement applicable to all aliens similarly situated.

Plaintiffs' claims challenging the IFR, Final Rule, or guidance thus do not authorize injunctive relief in the form of parole. There is no "nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself," *Pac. Radiation Oncology*, 810 F.3d at 636, and no showing that parole would be an appropriate final remedy,

---

[2] Even if Plaintiffs sought only to compel Defendants to allow Plaintiffs S.O., W.O., and G.F., to return to the United States (rather than also compelling parole upon arrival in the United States), this relief is likewise not authorized by any of their claims. *See* Defs.' Reply Supp. Mot. Summ. J., ECF 52 at 19–20; *see also* Defs.' Mot. Summ. J., ECF 45-1 at 59–60.

*see De Beers Consol. Mines*, 325 U.S. at 219 (the issuance of preliminary relief "presupposes or assumes . . . that a decree may be entered after a trial on the merits enjoining and restraining the defendants from certain future conduct"). For these reasons, there is no jurisdiction for the Court to enter the requested extraordinary relief.

## II. These Individual Plaintiffs Are Not Entitled to a TRO.

Even were the requested relief available, Plaintiffs have not clearly carried their burden of persuasion that their requested "extraordinary remedy" should be granted, *Sibley*, 810 F. Supp. 2d at 310, because (1) they have not demonstrated that they are likely to succeed on the merits of their specific claims, and (2) the balance of equities favors the Government. *See Winter*, 555 U.S. at 20.

### A. These Individual Plaintiffs are not likely to succeed on the merits of their claims.

At the outset, these Individual Plaintiffs cannot succeed on their claims because they have no timely, viable challenge to any part of the IFR, Final Rule, or guidance. As noted in prior briefing, the only part of the Rule to which these Individual Plaintiffs were ever subject was the manifestation standard. *See* Defs.' Supp. Br., ECF 62 at 2–4 (explaining that not all Individual Plaintiffs may challenge all aspects of the IFR, Final Rule, and guidance and identifying the procedures applied to S.O., W.O., and G.F.). This is because, as asserted in their second amended complaint, these Individual Plaintiffs entered the United States illegally and did not manifest a fear. 2d Am. Compl., ECF 56 ¶ 27. They were thereafter removed and had no other aspect of the IFR, Final Rule, or guidance applied to them. *See id.* Accordingly, they cannot allege injury from any aspect of the IFR, Final Rule, or guidance other than the manifestation standard. But these Individual Plaintiffs' challenge to the manifestation standard, first asserted in the second amended complaint on November 1, 2024, *see id.*, is untimely and outside the Court's jurisdiction to consider. Expedited removal policies may only be challenged "no later than 60 days after" the date of "first implement[ation]", 8 U.S.C. § 1252(e)(3)(B), and the manifestation standard was "first

implemented" by the IFR on June 5, 2024, 89 Fed. Reg. at 48,710, more than 60 days before these Individual Plaintiffs entered this case. The D.C. Circuit has held that this 60-day deadline is jurisdictional, and that plaintiffs, like these Individual Plaintiffs, who seek relief under § 1252(e)(3) more than 60 days after a policy is first implemented are not entitled to any relief. *M.M.V. v. Garland*, 1 F.4th 1100, 1110–11 (D.C. Cir. 2021). This is true even if the Plaintiffs were later added to a case that was timely filed. *Id.*

Even if these Individual Plaintiffs could challenge the Rule's manifestation standard, for the reasons explained in Defendants' prior briefing, Plaintiffs are not likely to succeed on that challenge. *See* Defs.' Mot. Summ. J., ECF 45-1 at 33–36, 51–54; Defs.' Reply Supp. Mot. Summ. J., ECF 52 at 7–8, 14–15; Defs.' Supp. Br., ECF 62 at 11–18; Defs.' Supp. Reply, ECF 67 at 5–11. At the outset, the manifestation standard—that is, requiring aliens to manifest or express a fear of return or intention to apply for asylum or protection without prompting or questioning by an immigration officer—follows the plain text of the INA, which directs an officer processing an alien for expedited removal to refer such an alien to an asylum officer for a credible fear interview only where the alien "indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(ii); *accord id.* § 1225(b)(1)(A)(i). And adopting the manifestation standard was neither arbitrary nor capricious. As explained in Defendants' prior briefing, the Departments took care to lay out a clear rationale for the standard, explaining that this particular change to credible fear referrals was necessary "to address the emergency circumstances at the southern border discussed in the Proclamation . . . in a manner consistent with [their] legal obligations." 89 Fed. Reg. at 48,740. Additionally, the Departments considered the comments received on the standard and provided thoughtful responses to those comments. 89 Fed. Reg. at 81,232–45. Plaintiffs' arguments in their TRO motion add nothing that could show they are likely

to succeed on a challenge to the manifestation standard. *See* TRO Mot., ECF 71 at 6–7.

Instead of explaining why they are likely to succeed on the merits of their challenge to the manifestation standard, Plaintiffs attempt to tie their predicament to the Rule's asylum-eligibility bar. Plaintiffs incorrectly assert that but for the Rule's bar they would be in the United States pursuing their asylum claim. *See* TRO Mot., ECF 71 at 6. Not so. This appears to be a thinly veiled challenge to the decision to cancel CBP One appointments, which they have not amended their complaint to challenge. Regardless, Plaintiffs' claim is wrong on its face—it is the Proclamation's suspension and limitation on entry that suspended their entry unless they met an exception, including presenting pursuant to a CBP One appointment, not the Final Rule. But they do not challenge the Proclamation in this suit. *See generally* 2d Am. Compl., ECF 56; *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (to establish standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)); *Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007) ("There might be some circumstances in which governmental action is a substantial contributing factor in bringing about a specific harm, but the undoing of the governmental action will not undo the harm, because the new status quo is held in place by other forces.").

Finally, Individual Plaintiffs' alleged reliance interests, which they suggest are relevant to the likelihood of success on their claims, *see* TRO Mot., ECF 71 at 6 (citing *DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30 (2020)), are also irrelevant to the merits of the claims brought in this litigation. Unlike in *Regents*, the case at issue here does not challenge the DHS decision ending

the object of the claimed reliance—that is, DHS's decision to cancel CBP One appointments. *See Regents*, 591 U.S. at 9, 30 (noting that the case stemmed from a challenge to the termination of a DHS program and holding that the absence of a consideration of reliance interests on the program rendered the termination arbitrary and capricious). Additionally, one cannot have a reliance interest in the possibility of a grant of something that is entirely discretionary—here, a CBP One appointment system, parole into the United States, and release from detention after presenting at a port of entry pursuant to a CBP One appointment. *See supra* pp. 6–8; *cf. Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("a benefit is not a protected entitlement if government officials may grant or deny it in their discretion"). Thus, whether the three Individual Plaintiffs had reliance interests in their cancelled CBP One appointment is of no moment.

       B.       *The balance of the equities tips in the Government's favor.*

It is well-settled that the public interest in enforcement of U.S. immigration laws is significant. *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant."); *see also Nken v. Holder*, 556 U.S. 418, 435–36 (2009). And, as the Supreme Court has recognized, Executive officials must have "broad discretion" to manage the immigration system. *Arizona v. United States*, 567 U.S. 387, 395-96 (2012). The relief these Individual Plaintiffs seek—a judicial grant of parole—would intrude upon a core concern of the Executive Branch. *See Adams*, 570 F.2d at 954 ("[W]hen requested immediate injunctive relief deeply intrudes into the core concerns of the executive branch, a court is 'quite wrong in routinely applying to this case the traditional standards governing more orthodox stays.'" (quoting *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974))). It is the Executive, not these Individual Plaintiffs or the Court, that has "broad, undoubted power over the subject of immigration and the status of aliens," *Arizona*, 567 U.S. at 394, and providing these

Individual Plaintiffs with their requested relief would mark a severe intrusion into this core executive authority, *see INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government").

Moreover, mandating a grant of parole into the United States impinges on a core Congressional determination of what happens to inadmissible aliens who arrive in the United States. As noted above, *see supra* p. 11, Congress has mandated that such aliens be detained throughout any proceedings to determine whether they will be granted relief or protection or ordered removed. The Court should not intrude upon this Congressionally mandated process and Congressional determination regarding the proper treatment of inadmissible aliens at our borders. *Cf. Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 212 (1997) ("We are not at liberty to substitute our judgment for the reasonable conclusion of a legislative body.").

Given the issues involved, in these circumstances, the balance of the equities favors the Government. *See Nken*, 556 U.S. at 435 (noting that the balancing of harms and public interest requirement for emergency injunctive relief merge when "the Government is the opposing party").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' TRO motion.

//

//

//

//

//

//

16

Dated: January 27, 2025                    Respectfully submitted,

                                           BRETT A. SHUMATE
                                           *Acting Assistant Attorney General*

                                           EREZ REUVENI
                                           *Assistant Director*

                                       By: /s/ *Christina P. Greer*
                                           CHRISTINA P. GREER
                                           *Senior Litigation Counsel*
                                           U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation
                                           P.O. Box 868, Ben Franklin Station
                                           Washington, DC 20044
                                           Tel: (202) 598-8770
                                           Email: Christina.P.Greer@usdoj.gov

                                           PATRICK GLEN
                                           DAVID KIM
                                           KATHERINE J. SHINNERS
                                           BRIAN C. WARD
                                           *Senior Litigation Counsel*

                                           *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 27, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: <u>*/s/ Christina P. Greer*</u>
CHRISTINA P. GREER
Senior Litigation Counsel
U.S. Department of Justice