IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAS AMERICAS IMMIGRANT ADVOCACY CENTER**, *et al.*, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 1:24-cv-01702-RC |
| v. | ) ) ) | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

This TRO request is narrow. It does not involve all asylum seekers who had their CBP One appointments unexpectedly cancelled, but only a single mother and her two young children who followed the direction of the U.S. government and waited for months in Mexico for an appointment. While in Mexico, they have depleted their life savings and survived kidnapping, robbery, and threats of sexual abuse.

Defendants nonetheless claim implausibly that the balance of harms tips in their favor. Yet they offer no basis for believing that this mother and her children would pose a threat to public safety if allowed into the country to apply for asylum. And if given that opportunity, they almost assuredly will be granted asylum because they have a straightforward claim based on political persecution: S.O. fled Venezuela with her children after being attacked and threatened with death because of her family's opposition to the Maduro regime. Instead, Defendants focus on broad policy interests at the border. But that is not what's at issue in this limited TRO for a single family.

1

Apparently recognizing that the equities tip against them, Defendants devote most of their opposition to the merits. But as Plaintiffs explained in their recent supplemental brief, ECF No. 74, there is no longer any real question that the Rule is unlawful. Defendants repeatedly defended the Rule specifically on the ground that it does not impose a categorical ban on asylum in light of the availability of CBP One appointments. That defense is now gone.

Defendants' assertion that this Court is powerless to grant even this limited TRO is likewise meritless. This Court plainly has the power to preserve the status quo for a family that relied on the U.S. government's assurance that they could seek asylum by waiting for an appointment. The Court should grant the TRO and order the government to allow her into the country to seek asylum without being detained.

## ARGUMENT

### I. The Court Has Authority to Grant the Motion.

#### A. Nothing Bars the Relief Plaintiffs Seek.

Defendants argue that the Court lacks authority to order Defendants to parole S.O. and her children into the country to pursue asylum without being detained. TRO Opp. at 5-6, ECF No. 75. But that is precisely the treatment the family would have received had their CBP One appointment gone ahead as scheduled—at least absent any reason to think this mother and her children pose a danger, which Defendants have not asserted. *See, e.g.*, U.S. Dep't of Homeland Security, Office of Immigration Statistics, Glossary ("Most CBP One arrivals are issued Notice to Appear (NTA)s and paroled into the country[]. . . .").[1] Plaintiffs simply ask the Court to preserve that status quo until a decision on the merits, and a TRO is a proper mechanism for ordering such relief. *See* TRO Mot. at 5, ECF No. 71.

---

[1] *Available at* https://ohss.dhs.gov/glossary; *permanent link* at https://perma.cc/AJA9-T4UV.

2

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) bars the Court from ordering them to parole S.O. and her children into the United States and release them to pursue their asylum claims. TRO Opp. at 6-8, ECF No. 75. As Plaintiffs previously explained, however, "[t]he D.C. Circuit has held that Section 1252(a)(2)(B)(ii) does not apply to [8 U.S.C. §] 1252(e)(3) cases [like this one] at all." Pls. MSJ Reply at 45, ECF No. 48 (citing *Grace v. Barr*, 965 F.3d 883, 894 (D.C. Cir. 2020)). Indeed, "numerous cases confirm that courts have authority to order the return of noncitizens unlawfully removed." *Id.* (citing cases). That is certainly true where, as here, jurisdiction is founded on § 1252(e)(3). *See, e.g.*, *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 57–59 (D.D.C. 2020) (K.B. Jackson, J.) (ordering that plaintiffs be returned to the United States and receive credible fear interviews); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144-45 (D.D.C. 2018) (ordering return), *aff'd in relevant part,* 965 F.3d 883. Because there is no bar to this Court ordering that ultimate relief at summary judgment, there is likewise no bar to doing so now to maintain the status quo that existed before Defendants cancelled the family's CBP One appointment.

Notably, moreover, the present motion seeks *less* burdensome relief than has repeatedly been ordered in similar cases. If the Court grants the TRO, S.O. will make her own arrangements for her and her children's travel to the port of entry for processing—as she planned to do before the CBP One appointment was cancelled. The government would therefore not be required to undertake any additional measures or expense to facilitate their return, as has been ordered in other cases. *Cf. Kiakombua*, 498 F. Supp. 3d at 58 (ordering the government "to facilitate the return of [two plaintiffs who were previously removed] back to the United States, at no cost to [the plaintiffs]"); Order at 3, *Grace*, No. 18-cv-1853 (D.D.C. Dec. 19, 2018), ECF No. 105 (ordering,

inter alia, that the government "bring back into the United States, at no expense to plaintiffs, any plaintiff who has been removed pursuant to an expedited removal order").[2]

Finally, Plaintiffs acknowledge that the decision to allow S.O. and her children to enter the United States is distinct from the decision whether to detain them at the outset of their asylum process. This Court can issue a decision requiring Defendants to allow S.O. and her children to present at the border so that they can seek asylum without reaching the issue of detention. That said, Plaintiffs urge the Court to order Defendants to refrain from detaining the family. Plaintiffs' expectation that S.O. and her children will not be detained after processing at the port of entry is in keeping with past practice under CBP One. For the entirety of the time that S.O. and her children tried to get an appointment—and for the entire time that both the Rule and IFR have existed—it was agency practice to *not* detain families who entered the United States seeking asylum. Indeed, Defendants launched a "Family Expedited Removal Management" policy in May 2023 specifically to provide asylum-seeking family units with a credible fear screening without detaining them.[3]

### B. Plaintiffs' TRO Motion Seeks Relief Directly Related to the Relief They Seek at Summary Judgment.

Defendants also argue that there is "no relationship" between the relief that Plaintiffs seek here and the relief they seek at summary judgment, and that Plaintiffs are simply seeking a "windfall." TRO Opp. at 9-12, ECF No. 75. That is incorrect.

Plaintiffs' summary judgment motion seeks, inter alia, an "order that Defendants return Plaintiffs who are abroad to the United States so that their claims can be processed in accordance

---

[2] Plaintiffs have requested entry at the Paso Del Norte port of entry because that is where S.O.'s CBP One appointment was originally scheduled. If the Court orders return, Plaintiffs are amenable to coordinating with the government if a different port is necessary.

[3] DHS, Immigration & Customs Enforcement, *ICE Announces New Process For Placing Family Units in Expedited Removal* (May 10, 2023), https://www.ice.gov/news/releases/ice-announces-new-process-placing-family-units-expedited-removal.

with the law." Pls. MSJ at 44, ECF No. 23; *see also* Proposed Order, ECF No. 23-3 (proposing that the Court order "Defendants to bring back into the United States any Plaintiff who is outside the United States at no expense to the plaintiff, and parole them into the United States for the duration of their removal proceeding so that they may apply for asylum, withholding of removal, and/or protection under the Convention Against Torture."). As explained above and in Plaintiffs' prior briefs, the Court would have authority to grant that relief at summary judgment to remedy S.O. and her children's unlawful removal under the Rule. *See, e.g.*, Pls. MSJ at 44, ECF No. 23; Pls. MSJ Reply at 44–45, ECF No. 48.

The present motion similarly requests an order that Defendants let the family be processed into the United States at a port of entry so they may seek asylum. The TRO therefore plainly seeks "intermediate relief of the same character as that which may be granted finally." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (cited by Defendants); *see also, e.g.*, *Pac. Radiation Oncology, LLC, v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) ("A preliminary injunction is appropriate when it grants relief of the same nature as that to be finally granted.") (cited by Defendants).

And the interim relief Plaintiffs seek is directly related to their claims that the Rule is unlawful. S.O. and her children were removed after their fear claims were ignored under the Rule's manifestation standard. *See* S.O. Decl., ECF No. 57-6 ¶ 19. Among other reasons, that standard is unlawful because the Rule disregarded extensive evidence that officers enforcing earlier iterations of the policy routinely ignored fear claims. *See, e.g.*, Pls. Supp. Br. at 16–19, ECF No. 59. And after that wrongful removal, the family's only option to seek protection in the United States was to wait in Mexico for a CBP One appointment—because the Rule unlawfully eliminates the right to seek asylum by other means. Pls. MSJ at 9–12, ECF No. 23; Pls. Supp. Br. at 3, ECF No. 59.

5

## II. Plaintiffs Have Satisfied the Criteria for a TRO.

### A. Plaintiffs are Likely to Succeed on the Merits.

Defendants argue that S.O. and her children failed to timely challenge "any part of the IFR, Final Rule, or guidance." TRO Opp. at 12, ECF No. 75. That argument misreads 8 U.S.C. § 1252(e)(3)(B), which provides that an action "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." Under the plain terms of that provision, S.O. and her children's challenge to the Final Rule was timely. The Final Rule became effective on October 1, 2024, and so could not have been "first implemented" before that date. 89 Fed. Reg. at 81156. S.O. and her children challenged the Final Rule through Plaintiffs' Second Amended Complaint just a month later on November 1, 2024, well within the 60-day period.[4]

Defendants also fall back on their summary judgment arguments in defense of the Rule's manifestation standard and asylum bar. *See* TRO Opp. at 13–14, ECF No. 75. As Plaintiffs have already explained in their earlier briefs, those contentions are wrong and the Rule is unlawful. *E.g.*, Pls. Supp. Br. at 3, 13, ECF No. 59; Pls. Supp. Br. on Termination of CBP One, ECF No. 74.

### B. The Equities Decidedly Favor Plaintiffs.

Contrary to Defendants' assertions, TRO Opp. 15–16, ECF No. 75, the equities overwhelmingly favor Plaintiffs. As discussed above, S.O. and her children simply seek to be allowed to present at a port of entry at a scheduled time and pursue their claims for asylum—as

---

[4] *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021), does not suggest otherwise. There, the court held that the plaintiffs' suit (filed September 16, 2019) challenging a written CBP policy (first implemented July 15, 2019) was untimely because "the statutory time limit begins to run when a 'written policy directive' is 'first implemented,' not when it is first applied to specific facilities or aliens." *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021). The case does not override the statutory text permitting a plaintiff to challenge a "regulation" within 60 days of implementation, as S.O. and her children did here.

they were previously scheduled to do on January 25, 2025. Far from the "severe intrusion into [ ] core executive authority" that Defendants portray, *id.* at 17, this limited relief is "relatively minor" for Defendants, *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 156 (Contreras, J.), yet may have "life-or-death consequences" for S.O. and her children, *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 222 (D.D.C. 2020). Because of the Rule, this family has already suffered wrongful removal to Mexico—a country where they were previously kidnapped. TRO Mot. at 3–4, ECF No. 71. They have now waited months on end for a chance to finally pursue their asylum claims in accordance with the statutory framework that the Rule violates. Indeed, it is the Rule—and not the relief Plaintiffs seek—that "impinges" on the asylum system that Congress enacted. TRO Opp. at 16, ECF No. 75; *see, e.g.*, 8 U.S.C. § 1158(a)(1) (guaranteeing the right to apply for asylum "whether or not" at a port of entry); *id.* § 1225(b)(1)(A)(ii) (requiring that noncitizens who indicate fear of removal must be referred for credible fear screening interviews).

## CONCLUSION

For the reasons stated above and in Plaintiffs' motion, this Court should grant a temporary restraining order requiring Defendants to honor the CBP One appointment for S.O. and her family within 72 hours of the Court's decision on this motion and, in keeping with past practice, that they not be detained after being processed at the port of entry.

| | |
|---|---|
| Dated: January 29, 2025 | Respectfully submitted, |
| | /s/ Lindsay C. Harrison |
| Lee Gelernt (D.D.C. Bar No. NY0408) | Lindsay C. Harrison (D.C. Bar #977407) |
| Omar C. Jadwat* | Mary E. Marshall (D.C. Bar #1739058) |
| American Civil Liberties Union Foundation | Maura E. Smyles (D.C. Bar #90006775)* |
| Immigrants' Rights Project | JENNER & BLOCK LLP |
| 125 Broad Street, 18th Floor | 1099 New York Avenue, NW |
| New York, NY 10004 | Suite 900 |
| T: 212-549-2660 | Washington, DC 20001 |
| lgelernt@aclu.org | T: 202-639-6000 |

ojadwat@aclu.org

Morgan Russell*
Katrina Eiland*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
mrussell@aclu.org
keiland@aclu.org
cwofsy@aclu.org
samdur@aclu.org

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: 202-355-4471
crowmelissa@uclawsf.edu


Blaine Bookey*
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
T: 415-581-8825
bbookey@uclawsf.edu


Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
aspitzer@acludc.org
smichelman@acludc.org

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas

lharrison@jenner.com
mmarshall@jenner.com
msmyles@jenner.com

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
353 N Clark St, Chicago, IL 60654
T: 312-222-9350
mroot@jenner.com
aosborne@jenner.com

Keren Zwick (D.D.C. Bar. No. IL0055)
Richard Caldarone (D.C. Bar No. 989575)*
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370
kzwick@immigrantjustice.org
rcaldarone@immigrantjustice.org
mgeorgevich@immigrantjustice.org

Tamara Goodlette (D.C. Bar. No. TX24117561)
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 207
tami@texascivilrightsproject.org

Edith Sangueza*
Center for Gender and Refugee Studies
26 Broadway, 3rd Floor
New York, NY 10004
T: 415-581-8835
sanguezaedith@uclawsf.edu

Robert Pauw*
Center for Gender and Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080

P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
aharris@aclutx.org
ddonatti@aclutx.org

rpauw@ghp-law.net

*Attorneys for Plaintiffs*

*\*Admitted via certificate of pro bono representation or pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/*s*/ Lindsay C. Harrison
Lindsay C. Harrison
