BRETT A. SHUMATE
*Acting Assistant Attorney General*
EREZ REUVENI
*Assistant Director*
CHRISTINA P. GREER
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8770
Email: Christina.P.Greer@usdoj.gov
PATRICK GLEN
DAVID KIM
KATHERINE J. SHINNERS
BRIAN C. WARD
*Senior Litigation Counsel*

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| _____ ) | Civil Action No. 1:24-cv-01702 |
| Las Americas Immigration Advocacy ) | |
| Center, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. Department of Homeland Security, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this suit, Plaintiffs challenge as unlawful the interim final rule *Securing the Border*, 89 Fed. Reg. 48,710 (June 7, 2024) (the "IFR"), a subsequent final rule *Securing the Border*, 89 Fed. Reg. 81,156 (Oct. 7, 2024) (the "Final Rule"), and guidance relating to the timing of credible fear screening interviews. *See generally* 2d Am. Compl., ECF 56. The IFR and Final Rule (collectively, "the Rule") adopted a bar to asylum eligibility for those who enter the United States during times when encounters between ports of entry are above thresholds specified by two Proclamations: *Securing the Border*, 89 Fed. Reg. 48,487 (June 7, 2024), and *Amending Proclamation 10773*, 89 Fed. Reg. 80,351 (Oct. 2, 2024). Under the Proclamations, during such "emergency border circumstances," the "entry of any noncitizen into the United States across the southern border" is "suspended and limited," subject to exceptions, including an exception for aliens who present at a port of entry at a pre-scheduled time and place, which were previously scheduled through the CBP One mobile application.[1] *Id.* at 48,491. Those who enter during such temporary periods and do not meet one of the exceptions in the Rule or Proclamation are ineligible for asylum. *See* 8 C.F.R. §§ 208.35(a), 1208.35(a). The goal of this asylum-eligibility bar is to "disincentivize irregular migration," especially during periods of high encounters, 89 Fed. Reg. at 48,754, and encourage aliens to wait to approach the border until such circumstances have abated, 89 Fed. Reg. at 81,172.

On January 20, 2025, to address this nation's broken immigration system and the ongoing crisis at the southern border, President Trump issued an Executive Order entitled "Securing Our Borders" that instructs the Secretary of Homeland Security to "[c]ease using the 'CBP One' application as a method of paroling or facilitating the entry of otherwise inadmissible aliens into

---

[1] Plaintiffs do not challenge the Proclamation's temporary suspension of entry—only the Rule and related guidance. *See generally* 2d Am. Compl., ECF 56.

the United States." Executive Order, *Securing Our Borders*, Sec. 7(a) (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/securing-our-borders/ ("Border EO"). The same day, the Department of Homeland Security ("DHS") announced: "Effective January 20, 2025, the functionalities of CBP One™ that previously allowed undocumented aliens to submit advance information and schedule appointments at eight southwest border ports of entry is no longer available, and existing appointments have been cancelled." CBP, *CBP One™ Mobile Application* (last modified Jan. 21, 2025), https://www.cbp.gov/about/mobile-apps-directory/cbpone.

Plaintiffs claim that, "[t]he elimination of CBP One makes the[] illegality" of the Rule's asylum-eligibility bar "all the more clear on both statutory and APA grounds." Plfs.' 2d Suppl. Br., ECF 74 at 1. Plaintiffs are wrong. The Rule's bar as adopted and justified is lawful and sufficiently reasoned.

## ARGUMENT

As set forth below and in Defendants' prior briefing, the asylum-eligibility bar is lawful and withstands arbitrary-and-capricious review. *See, e.g.*, Defs.' Mot. Summ. J., ECF 45-1 at 24–32, 47–48; Defs.' Reply Supp. Mot. Summ. J., ECF 52 at 4–6, 12–14; Defs.' Suppl. Br., ECF 62 at 4–11; Defs.' Suppl. Reply, ECF 67 at 2–5. Importantly, that review is based on the administrative record "before the [agency] *at the time [it] made [its] decision*," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (emphasis added). It is not based on subsequent events. To the extent Plaintiffs challenge the termination of the CBP One appointment system as unlawful,

such a challenge is outside the scope of this lawsuit; Plaintiffs cannot smuggle a challenge to that new agency action into a suit over provisions adopted by an older rule.[2]

I.      **The Asylum-Eligibility Bar Is Lawful.**

As explained in Defendants' prior briefs, the bar on asylum eligibility is lawful, *see, e.g.*, Defs.' Mot. Summ. J., ECF 45-1 at 24–32, and Plaintiffs are wrong (Plfs.' 2d Suppl. Br., ECF 74 at 2) to assert that the legality of the bar rests on the Proclamation's CBP One appointment exception. Instead, the Rule's asylum-eligibility bar is lawful, regardless of such appointment availability.

The "text, structure, and history" of the INA make clear that the bar "reflects a lawful exercise of the Executive's discretion to promulgate conditions on asylum eligibility." Defs' Mot. Summ. J., ECF 52 at 24, 24–33; Defs' Reply, ECF 52 at 4-7; *see* 8 U.S.C. § 1158(b)(2)(C); *see generally* 89 Fed. Reg. at 81,168-77 (addressing and rejecting comments that the Rule exceeds the authority of the Departments or otherwise conflicts with domestic or international law). Those conditions can properly rest on the burdens at the border caused by large numbers of undocumented arrivals. And, as also explained multiple times, the asylum-eligibility bar does not "eliminat[e] the right to seek asylum between ports of entry." Plfs.' 2d Suppl. Br., ECF 74 at 2. It does not bar any alien from *seeking* asylum as it is only a bar to eligibility. *See* 8 U.S.C. § 1158(b)(2)(C) (allowing for additional bars to eligibility but not to applying). Moreover, the asylum-eligibility bar does not categorically bar aliens from asylum eligibility based on their entry

---

[2] In their supplemental brief, Plaintiffs discuss only perceived impacts of the end of the CBP One appointment system on Defendants' arguments about the lawfulness and reasonableness of the asylum-eligibility bar. *See generally*, Pls.' 2d Suppl. Br., ECF 74. They have thus waived any argument that the termination of the CBP One appointment system has any impact on Defendants' arguments about the lawfulness or reasonableness of the manifestation standard, the "reasonable probability" standard, or the guidance regarding the timing of credible fear interviews and cannot raise any new arguments in their reply brief on this score.

between ports of entry. Instead, it attaches ineligibility based on the timing of one's entry—that is, if entry is during the "emergency border circumstances" marked by encounter levels triggering the Proclamation's suspension and limitation on entry. *See* 8 C.F.R. §§ 208.35(a)(1), 1208.35(a)(1). It also includes exceptions for those who establish exceptionally compelling circumstances or certain family circumstances, regardless of where they enter. *See id.* §§ 208.35(a)(2)(i) and (c), 1208.35(a)(2)(i) and (c).

Plaintiffs correctly note, Plfs.' 2d Suppl. Br., ECF 74 at 2–3, that Defendants pointed to the availability of CBP One appointments at ports of entry when arguing that the asylum-eligibility bar does not categorically apply based on manner of entry. But they are wrong that the termination of the CBP One appointment system undermines Defendants' arguments on this score. Instead, it illustrates the soundness of Defendants' arguments—without CBP One appointments, the primary exceptions likely available are the Final Rule's exceptions for exceptionally compelling circumstances and family unity, both of which are available to aliens regardless of where they enter along the southern border. *See* 8 C.F.R. §§ 208.35(a)(2)(i), (e), 1208.35(a)(2)(i), (e). Accordingly, Plaintiffs are wrong to claim that the termination of the CBP One appointment system "reinforces the conclusion that the Rule's asylum bar violates" the statute. Plfs.' 2d Suppl. Br., ECF 74 at 3.

Regardless, as explained in prior briefing, even if the Rule's temporally based asylum-eligibility bar were based on manner of entry or included no exceptions at all, it would be lawful. The INA allows the Attorney General and Secretary to "by regulation establish additional limitations and conditions, consistent with [the asylum statute], under which an alien shall be ineligible for asylum." 8 U.S.C. § 1158(b)(2)(C); *see also id.* § 1158(d)(5)(B) ("The Attorney General may provide by regulation for any other conditions or limitations on the consideration of

an application for asylum not inconsistent with this chapter."). A time-limited measure to ensure the continued functioning of the immigration system that encourages aliens to wait until the crisis abates is consistent with the asylum statute (and is not inconsistent with the chapter it is in). Indeed, as explained in Defendants' motion for summary judgment, Defs.' Mot. Summ. J., ECF 45-1 at 27–31, several provisions of § 1158 underscore the permissibility of the Rule's focus on relieving the overburdened immigration system—e.g., the one-year deadline for applying for asylum, 8 U.S.C. § 1158(a)(2)(B), and bar to successive applications, *id.* § 1158(a)(2)(C). Nothing in the statute suggests that Congress intended to foreclose the Departments from likewise taking systemic considerations into account when exercising their discretion to add additional limitations on eligibility. Indeed, the "ultimate consideration" when determining whether someone warrants a grant of relief as a matter of discretion is whether granting relief "appears to be in the best interests of the United States," *Matter of D-A-C-*, 27 I. & N. Dec. 575, 578 (BIA 2019), a point Congress was aware of when it amended the INA to add the ability to create additional limitations in 1996. *See id.* (best interests standard preceded 1996 amendments by 20 years); 89 Fed. Reg. at 48,734 (discussing the history of § 1158(b)(2)(C).

To the extent Plaintiffs respond that the Ninth Circuit's *East Bay* decisions should persuade the Court to hold otherwise, *East Bay* was wrongly decided. The Ninth Circuit's holding that additional asylum limitations must "further[] the purpose" of the existing exceptions by either targeting threats to the nation or promoting the purpose of the statute's safe-third-country or firm-resettlement bars, *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 977 (9th Cir. 2020), is irreconcilable with the statute's meaning and conflicts with its history. Not only has Congress adopted bars to applying or eligibility that do not further the purposes the Ninth Circuit identified—e.g., the one-year filing deadline and various criminal bars—but it has recognized the

broad discretion to add more such bars. *See* 8 U.S.C. § 1158(b)(2)(C). That approach is also inconsistent with *Trump v. Hawaii*, 138 S. Ct. 2392, 2411–12 (2018) (INA's express provisions governing entry "did not implicitly foreclose the Executive from imposing tighter restrictions," even if restrictions addressed a subject that is "similar" to one that Congress "already touch[ed] on"). The enumerated asylum bars also do not foreclose imposing further conditions, even if those conditions address subjects similar to those already in the asylum statute. Indeed, it is notable that the Supreme Court allowed the rule under consideration in that *East Bay* decision to go into effect. *See Barr v. East Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019) (mem).

## II.    The Asylum-Eligibility Bar Withstands Arbitrary-and-Capricious Review.

At the outset, whether the Rule is arbitrary or capricious is judged not by events that occur after the agency decision but based on the administrative record "before the [agency] *at the time [it] made [its] decision*." *Overton Park*, 401 U.S. at 420 (emphasis added). As Defendants explained in their prior briefing, the Rule is reasonable and withstands arbitrary and capricious review based on the administrative record. *See* Defs.' Mot. Summ. J., ECF 45-1 at 47–48; Defs.' Reply Supp. Mot. Summ. J., ECF 52 at 12–14; Defs.' Suppl. Br., ECF 62 at 5–11; Defs.' Suppl. Reply, ECF 67 at 2–5.

Plaintiffs are wrong that the termination of the CBP One appointment system "eviscerates Defendants' position that the Rule is not arbitrary and capricious." Plfs.' 2d Suppl. Br., ECF 74 at 3. In so arguing, Plaintiffs cite portions of Defendants' arguments in an apparent attempt to show that the CBP One appointment exception to the Proclamation's suspension and limitation on entry was the Rule's keystone and that without it, the Rule falls. *See id.* at 3–5. Not so. Although the Rule did characterize the CBP One appointment exception as "significant" in the scope of its application, 89 Fed. Reg. at 81,213, and referred to the appointment system as "critical for promoting efficient border processing" during emergency border circumstances, including during

times of historic encounter levels like what took place in 2023 and the first half of 2024, *id.* at 81,184, the Departments' reasoning as provided in the Rule does not depend upon its continued existence and, since it was not part of the Rule, it was always subject to change or elimination as a matter of discretion, *contra* Plfs.' 2d Suppl. Br., ECF 74 at 4–5.

Rather, the Departments' rationales for the asylum-eligibility bar rely on (1) the fact that the bar attaches based on entry during specific emergency periods; (2) the availability of the exceptions contained in the Rule itself for those able to establish exceptionally compelling circumstances or specific family circumstances; and (3) the continuing availability of other protections against removal to persecution and torture. Indeed, the Final Rule explicitly states that it is "designed to encourage noncitizens to use lawful, safe, and orderly pathways to the United States during emergency border circumstances *or to wait until such circumstances have abated*, to the extent possible." 89 Fed. Reg. at 81,172 (emphasis added); *see also, e.g.*, 89 Fed. Reg. at 48,733 (similar statement in the IFR). And in the IFR, when discussing the reasonableness of applying the bar to Mexican nationals because they would have to wait for months for a CBP One appointment in the country where they are afraid of harm, the Departments reasoned that

> if they are unable to wait in Mexico while scheduling an appointment, they may be able to establish an exception to the Proclamation or exceptionally compelling circumstances under the rule. Even if they are not able to do so, the rule does not preclude eligibility for statutory withholding of removal and CAT protection, and they will be able to seek such protection.

89 Fed. Reg. 48,738–39[3]; *see* 89 Fed. Reg. at 81,251 (similar statement in the Final Rule). And other parts of the Rule similarly focus on the Rule's exceptionally compelling circumstances and

---

[3] Plaintiffs selectively quote an earlier part of this paragraph discussing CBP One appointment availability to Mexican nationals but fail to acknowledge the rest of the discussion. *See* Plfs.' 2d Suppl. Br., ECF 74 at 4.

family unity exceptions and the continuing availability of protection. *See id.* at 81,206–07 (explaining that for those with disabilities who cannot use the CBP One application, they may satisfy the exceptionally compelling circumstances exception); *id.* at 81,215 (explaining reasons for not including exception for inability to use the CBP One application); *id.* at 81,214 (discussing the family unity provisions).

Notably, the Departments explicitly stated that they "intend[ed] for the limitation on asylum eligibility to be severable from . . . the Proclamation because the limitation on asylum eligibility operates independently of th[e] Proclamation, and in the absence of [that] tool[] would likewise continue to be an important tool for addressing emergency border circumstances at the southern border." 89 Fed. Reg. at 81,168; *see* 8 C.F.R. §§ 208.35(e), 1208.35(e). Additionally, contrary to Plaintiffs' selective quotations, *see* Plfs.' 2d Suppl. Br. at 4–5, the focus of the Rule, as Defendants have noted, is on "reducing 'the number of daily entrants' and deterring irregular immigration, rather than encouraging the use of lawful pathways." Defs.' Mot. Summ. J., ECF 45-1 at 51 (quoting 89 Fed. Reg. at 48,732 n.171). That rationale is not undermined by the termination of the CBP One appointment system.

Plaintiffs also highlight arguments Defendants made in their supplemental briefs regarding the Rule's effect of channeling aliens to lawful pathways and the CBP One appointment system being a valuable tool that is not a barrier to asylum access, apparently suggesting that these statements represent the Departments' rationale for the Rule. *See* Plfs.' 2d Suppl. Br., ECF 74 at 3–4 (quoting Defs.' Suppl. Br., ECF 62 at 6, 9, 11, and Defs.' Suppl. Reply, ECF 67 at 3, 10). But as explained above, in the Rule itself the Departments clearly premised its rationale on the need to decrease encounters along the southern border during emergency border circumstances when resources are overwhelmed. *See, e.g.*, 89 Fed. Reg. at 48,714 ("The Departments' ability to refer

and process noncitizens through expedited removal thus continues to be overwhelmed, creating a vicious cycle in which the border security and immigration systems cannot deliver timely decisions and consequences to all the people who are encountered at the [southwest border] and lack a lawful basis to remain in the United States."); 89 Fed. Reg. at 81,168 (when explaining the need for the provisions of the Final Rule to be severable from each other and from provisions of the Proclamation, stating that "[d]uring emergency border circumstances, the Departments' abilities to refer and safely process noncitizens through expedited removal is overwhelmed and prevents the border security and immigration systems from delivering timely decisions and consequences to noncitizens arriving at the southern border"). Plaintiffs' arguments fail to undermine Defendants' defense of the Rule or reveal that the Rule's rationale is arbitrary or capricious.

## CONCLUSION

For the foregoing reasons, Plaintiffs arguments in their supplemental brief are unavailing, and the Court should grant summary judgment to Defendants on all claims.

//

//

//

//

//

//

//

//

//

//

//

Dated: January 30, 2025          Respectfully submitted,

                                           BRETT A. SHUMATE
*Acting Assistant Attorney General*

EREZ REUVENI
*Assistant Director*

By: <u>/s/ *Christina P. Greer*</u>
      CHRISTINA P. GREER
      *Senior Litigation Counsel*
      U.S. Department of Justice, Civil Division
      Office of Immigration Litigation
      P.O. Box 868, Ben Franklin Station
      Washington, DC 20044
      Tel: (202) 598-8770
      Email: Christina.P.Greer@usdoj.gov

      PATRICK GLEN
      DAVID KIM
      KATHERINE J. SHINNERS
      BRIAN C. WARD
      *Senior Litigation Counsel*

      *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 30, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.


By: <u>*/s/ Christina P. Greer*</u>
CHRISTINA P. GREER
Senior Litigation Counsel
U.S. Department of Justice