IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | No. 1:24-cv-01702-RC |

**PLAINTIFFS' REPLY BRIEF ON THE IMPACT OF
THE TERMINATION OF THE CBP ONE APPOINTMENT SYSTEM**

The Rule's asylum bar contravenes the plain text of the INA, even more so after CBP One's elimination. And given that CBP One was a keystone of both the Rule's justification and Defendants' prior briefing to this Court, Defendants' attempt to show the Rule is not arbitrary and capricious collapses. Defendants' latest brief thus does an about face and tries to argue that the Rule did not mean what it said about the importance of CBP One. Yet even as Defendants make that claim they simultaneous quote the Rule's own recognition that it was intended to "disincentivize" crossings between ports of entry by channeling people to seek asylum using appointments. Defs. Supp. Br. 1, ECF No. 77. The Rule was illegal from the beginning and is more so now.

**I.    The Elimination of CBP One Dispels Any Question that the Rule Violates the Asylum Statute.**

As Plaintiffs have previously explained, the right to seek asylum cannot turn on where or how one enters the country; instead, the statute guarantees the right to apply for asylum "whether or not" one arrives at a port of entry. 8 U.S.C. § 1158(a)(1); *E. Bay Sanctuary Covenant v. Biden*,

994 F.3d 640, 669–70 (9th Cir. 2021) (seeking asylum after crossing between ports is "a method of entry explicitly authorized by Congress."); Pls. MSJ 11, ECF No. 23. Defendants remarkably claim that the elimination of CBP One strengthens their argument because the right to apply no longer turns on how or where one enters: Asylum is now equally barred at and between ports. But eliminating all avenues to apply obviously does not satisfy the statutory command that one be permitted to apply whether or not at a port. Defendants' respond that all avenues have not been eliminated because noncitizens can still apply if they satisfy the vague and exceedingly narrow "exceptionally compelling circumstances" exception. Defs. Supp. Br. 4, ECF No. 77. But the statutory right to apply between or at a port cannot turn on the unilateral discretion of Defendants, especially when the standard is vague and incredibly narrow. Defendants "cannot make [asylum seekers] show 'extraordinary circumstances' to avoid such a bar." Pls. MSJ 47, ECF No. 23 (some internal quotation marks omitted) (quoting *Gall v. United States*, 552 U.S. 38, 46–47 (2007)); *see also* Pls. MSJ Reply 11–12, ECF No. 48 (discussing narrowness of exception); *Am. Petrol. Inst. v. EPA*, 862 F.3d 50, 60–61 (D.C. Cir. 2017) (per curiam) (small or hard-to-access exception "falls short of saving" otherwise invalid rule).

Defendants' scattershot attempts to resist that conclusion fail. Defendants trot out their shopworn argument that a rule does not bar people from seeking asylum if it is a "bar to eligibility" rather than a bar to filing an application. Defs. Supp. Br. 3, ECF No. 77. That argument has been repeatedly rejected, and it defies common sense: "Explicitly authorizing a refugee to file an asylum application and then summarily denying the application for the same reason borders on absurdity." *E. Bay v. Biden*, 993 F.3d at 670; *see also O.A. v. Trump*, 404 F. Supp. 3d 109, 148–49 (D.D.C. 2019).

Defendants also argue that they may "tak[e] systemic considerations into account" in imposing new asylum rules, and that they may make rules that do not "further the purpose" of the asylum statute. Defs. Supp. Br. 5, ECF No. 77 (cleaned up). But what matters is whether the Rule is substantively *consistent* with § 1158(a)(1). It is not. In any event, a Rule that eliminates all but a narrow discretionary path for asylum is certainly inconsistent with congressional purpose.

## II. The Elimination of CBP One Appointments Underscores That the Rule is Arbitrary and Capricious.

Defendants do not contest that they repeatedly relied on the availability of CBP One appointments to justify the Rule. *See* Defs. Supp. Br. 6–7; Pls. Supp. Br. 3–5, ECF No. 74. Instead, they first argue that it was reasonable for the agencies to rely on the existence of CBP One at the time the Rule was issued. Defs. Supp. Br. 6, ECF No. 77. As Plaintiffs have explained, however, it was *always* arbitrary and capricious that the Rule's asylum bar "depends upon the CBP One app." Pls. MSJ 18, ECF No. 23; *see also, e.g.*, Pls. Supp. Br. 10–13, ECF No. 59. Plaintiffs simply point out that this stated rationale now falls apart completely.[1]

The remainder of Defendants' argument constitutes an attempt to wish their own statements about CBP One out of existence. Defendants claim that the appointment system the Rule calls "significant," "important," "key," "critical," and "especially critical during emergency border situations," 89 Fed. Reg. 81,156, 81,184, 81,192, 81,213, 81,215 (Oct. 7, 2024)—and that Defendants repeatedly cited to justify the Rule in this Court, *see* Pls. Supp. Br. 3–4, ECF No. 74—is actually ancillary to the Rule's rationale. That beggars belief.

---

[1] Defendants implausibly assert, Defs. Supp. Br. 2, 6, ECF No. 77, that the Rule should be assessed on the record at the time it was issued. But Defendants cannot dramatically alter the regulatory regime after the fact and then claim the agency's rationale should be assessed before the change. That would allow Defendants to continually revise a regulatory scheme without engaging in APA notice or issuing a new record.

3

And unsurprisingly, the few snippets of the Rule Defendants cite mostly assume the availability of CBP One appointments. The Rule's claim that its asylum bar is consistent with § 1158(a)(1) because it also allows people a choice between making CBP One appointments and waiting in places they fear persecution assumes the existence of CBP One. *See* 89 Fed. Reg. at 81,172 (cited at Defs. Supp. Br. 7). So does the Rule's justification, first articulated in the IFR, that people from Mexico should either "schedul[e] an appointment" via CBP One, "establish an exception" to the bar, or accept that they are barred from asylum and seek other, lesser relief. 89 Fed. Reg. 48,710, 48,738–39 (June 7, 2024) (quoted at Defs. Supp. Br. 7); *see* 89 Fed. Reg. at 81,251 (similar statement in Rule). Even the Rule's discussions of the "exceptionally compelling circumstances" exception presupposes that the exception will become relevant only when a person fails to make an appointment using CBP One. *See* 89 Fed. Reg. at 81,206 (stating that people with disabilities that prevent them from using CBP One can instead try to satisfy the exceptionally compelling circumstances exception) (cited at Defs. Supp. Br. 8); *id.* at 81,215 (IFR "does not provide an exception for those who present at a [port of entry] but are unable to access or use the CBP One app") (same). And the existence of CBP One is likewise integral to the footnote in the IFR claiming that it is "key" to narrow the number of people who can seek asylum without "an appointment." *See* 89 Fed. Reg. at 48,733 n.171 (cited at Defs. Supp. Br. 8); *see also* 89 Fed. Reg. at 81,216 (Final Rule citing the same IFR footnote for the proposition that noncitizens who cannot establish an exception "should wait for a CBP One appointment").

That leaves the Rule's statement that its asylum bar is meant to be severable from its manifestation of fear and reasonable probability standards. *See* Defs. Supp. Br. 8 (citing 89 Fed. Reg. at 81,168). But that does nothing to change the Rule's repeated reliance on the existence of CBP One. And the manifestation and reasonable probability standards are themselves unlawful for

the reasons Plaintiffs have explained. *See, e.g.*, Pls. MSJ 22–35, ECF No. 23; Pls. Supp. Br. 13–23, ECF No. 59.

The Rule was always arbitrary and capricious, with or without the CBP One appointment system. "There was nothing reasonable or humane about conditioning asylum eligibility on waiting months on end in dangerous circumstances for appointments only available through a resource-intensive smartphone application that was unusable by many asylum seekers—and that many did not even know about." Pls.' Supp. Br. 5, ECF No. 74. But without CBP One, the Rule is unquestionably arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, and those stated in Plaintiffs' previous briefing, the Court should grant summary judgment to Plaintiffs and vacate the Rule, the Interim Final Rule, and the Guidance.

Dated: February 3, 2025

Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

Morgan Russell*
Katrina Eiland*
Cody Wofsy (D.D.C. Bar No. CA00103)
Spencer Amdur*
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770

Respectfully submitted,

/s/ Lindsay C. Harrison
Lindsay C. Harrison (D.C. Bar #977407)
Mary E. Marshall (D.C. Bar #1739058)
Maura E. Smyles (D.C. Bar #90006775)*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
T: 202-639-6000
*lharrison@jenner.com*
*mmarshall@jenner.com*
*msmyles@jenner.com*

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
353 N Clark St, Chicago, IL 60654
T: 312-222-9350

*mrussell@aclu.org*
*keiland@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*

Melissa Crow (D.C. Bar No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: 202-355-4471
*crowmelissa@uclawsf.edu*


Blaine Bookey*
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
T: 415-581-8825
*bbookey@uclawsf.edu*


Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
*aspitzer@acludc.org*
*smichelman@acludc.org*

Ashley Alcantara Harris*
David A. Donatti*
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
TEL: (713) 942-8146
FAX: (713) 942-8966
*aharris@aclutx.org*
*ddonatti@aclutx.org*

*mroot@jenner.com*
*aosborne@jenner.com*

Keren Zwick (D.D.C. Bar. No. IL0055)
Richard Caldarone (D.C. Bar No. 989575)*
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370
*kzwick@immigrantjustice.org*
*rcaldarone@immigrantjustice.org*
mgeorgevich@immigrantjustice.org

Tamara Goodlette (D.C. Bar. No. TX24117561)
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 207
*tami@texascivilrightsproject.org*

Edith Sangueza*
Center for Gender and Refugee Studies
26 Broadway, 3rd Floor
New York, NY 10004
T: 415-581-8835
*sanguezaedith@uclawsf.edu*

Robert Pauw*
Center for Gender and Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080
*rpauw@ghp-law.net*

*Attorneys for Plaintiffs*

*\*Admitted via certificate of pro bono representation or pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lindsay C. Harrison
Lindsay C. Harrison
