UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, | : : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 24-1702 (RC) |
| v. | : : | Re Document No.: | 71 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | : : : : : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

**I.  INTRODUCTION**

In September 2024, the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ") issued a Final Rule restricting asylum applications at the U.S.-Mexico border. Securing the Border, 89 Fed. Reg. 81156 (Oct. 7, 2024) ("Final Rule"); *see also* Securing the Border, 89 Fed. Reg. 48487 (June 3, 2024) ("Interim Final Rule").  Under the Final Rule, noncitizens who arrived at the southern border between ports of entry were, with limited exceptions, categorically ineligible for asylum.  The Final Rule also provided the opportunity for noncitizens to make asylum appointments at ports of entry using a smartphone application, CBP One.  Two immigrant advocacy groups and twenty-eight individual asylum-seekers sued DHS, DOJ, and other government entities alleging that the Final Rule, its predecessor Interim Final Rule, and its implementing guidance are unlawful.

Upon taking office on January 20, 2025, President Donald Trump issued an executive order that effectively closed the southern border. *Securing Our Borders*, available at https://perma.cc/L9D3-URKZ (Jan. 20, 2025). The order also shut down the CBP One mobile application. *See id.* §§ 2, 7(a). As a result, thousands of noncitizens' asylum appointments were abruptly canceled. Among that group are Plaintiff S.O. and her two minor children, Plaintiffs W.O. and G.F.,[1] Venezuelan nationals who fled political violence last spring. S.O. planned to seek asylum through a CBP One appointment scheduled for January 25, 2025. Plaintiffs have moved for a temporary restraining order requiring the government to parole S.O. and her children into the United States so that they can pursue their claims of asylum. For the reasons discussed below, the motion is denied.

## II.  BACKGROUND

### A.  Statutory and Regulatory Background

Asylum relief is a discretionary protection that the Secretary of Homeland Security "may grant" to noncitizens physically present in the United States or at the border who cannot return to their home countries "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[2] 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A); *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013). A grant of asylum generally allows a noncitizen to live and work in the United States, creates a path to lawful permanent residency and U.S. citizenship, and enables some of the noncitizen's family members to seek derivative asylum. 8 U.S.C. §§ 1158–59. Under the Immigration and

---

[1] Pursuant to the Court's November 18, 2024 order, the individual Plaintiffs are proceeding under pseudonyms. *See* Order Grant. Pls.' Unopposed Mots. For Leave to Proceed Under Pseudonym & to File Supporting Exs. Under Seal, ECF No. 61.

[2] Applicants must meet additional eligibility criteria. *See* 8 U.S.C. § 1158(a)(2), (b)(2), (b)(1)(A).

Nationality Act ("INA"), "[a]ny alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . .), irrespective of such alien's status, may apply for asylum" within one year of arrival.[3] *Id.* § 1158(a)(1), (a)(2)(B).

Generally, noncitizens without authorization to enter the United States are subject to removal. *See Make the Rd. New York v. Wolf*, 962 F.3d 612, 618 (D.C. Cir. 2020). But if a noncitizen expresses a fear of removal or an intent to seek asylum, she is referred to a "credible fear" interview.[4] 8 U.S.C. § 1225(b)(1)(B), (b)(1)(A)(ii). If she passes the credible fear interview, she is placed in full removal proceedings, which encompass the right to counsel, the right to present and examine evidence, and the right to appeal. *Id.* §§ 1229, 1229a, 1252(a), (b). If not, she is placed in expedited removal, or removal without further hearing or review. *Id.* § 1225(b)(1)(B)(iii).

Over the past several years, the United States has experienced a surge of asylum claims by noncitizens arriving at the southern land border. Securing the Border, 89 Fed. Reg. 48712 n.5, 48722 (June 7, 2024); *see also* J.A. 1, ECF No. 53. In response, President Biden issued a "Proclamation Securing the Border" on June 3, 2024, invoking his authority under sections 212(f) and 215(a) of the INA. 89 Fed. Reg. 48487; J.A. 1–14; *see also* 8 U.S.C. §§ 1182(f), 1185(a). After describing the strain asylum applications posed on the nation's immigration

---

[3] Because the parties use the term "noncitizen" instead of the term "alien," the Court does the same except when quoting statutes or regulations. *See, e.g.*, Second Am. Compl. ¶ 52; Defs.' Cross-Mot. Summ. J. at 4, ECF No. 45.

[4] A credible fear interview is also the first step for a noncitizen to establish her eligibility for two other types of protection from removal: withholding of removal and protection under the Convention Against Torture. 8 U.S.C. § 1231(b)(3) (withholding of removal); 8 C.F.R. §§ 208.16-.18, 1208.16-.18 (protection under the Convention Against Torture); *see also Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 724–25 (D.C. Cir. 2022) (describing each form of protection).

system, the proclamation generally suspended the entry of noncitizens outside eight designated "ports of entry" unless the seven-day average of noncitizen "encounters" fell below a certain threshold.[5]  89 Fed. Reg. 48491; J.A. 10.  Because that threshold has been continuously exceeded since July 2020, the proclamation effectively established a categorical ban on asylum outside of official ports of entry.[6]  Pls.' Mot. Summ. J. at 1, ECF No. 23.

On June 4, 2024, DHS and DOJ jointly published an Interim Final Rule and related guidance incorporating the proclamation.  89 Fed. Reg. 48710; *Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, Securing the Border, and Interim Final Rule, Securing the Border*, available at https://bit.ly/3WDYeZ8 ("Guidance").  The Interim Final Rule required noncitizens to use a smartphone application, CBP One, to schedule a "time to appear" for asylum processing at a specific port of entry.  89 Fed. Reg. 48737.  Without a scheduled appointment, noncitizens were categorically ineligible for asylum unless they could demonstrate certain "exceptionally compelling circumstances."  *Id.* at 48710, 48718.  The Interim Final Rule also raised the threshold for a noncitizen to qualify for a credible fear interview.  *Id.* at 48744–45; *see also* 8 U.S.C. § 1225(b)(1)(B)(v).  DHS officials would no longer ask noncitizens if they had a fear of repatriation or intended to seek asylum.  89 Fed. Reg. 48741–44.  Instead, noncitizens must affirmatively "manifest" such a fear or intent in order to

---

[5] The proclamation defined "encounters" to mean "a noncitizen who:

(i)  is physically apprehended by CBP immigration officers within 100 miles of the United States southwest land border during the 14-day period immediately after entry between ports of entry;
(ii) is physically apprehended by DHS personnel at the southern coastal borders during the 14-day period after entry between ports of entry; or
(iii) is determined to be inadmissible at a southwest border port of entry."  J.A. 13.

[6] The proclamation outlined certain exceptions.  *See* J.A. 11.

get a credible fear interview. *Id.* at 48741. DHS's Guidance also established a four-hour window for asylum-seekers to consult with an attorney or other person before their credible fear interviews. *Implementation Guidance for Noncitizens Described in Presidential Proclamation of June 3, 2024, Securing the Border, and Interim Final Rule, Securing the Border*.

On September 27, 2024, President Biden issued an amended proclamation that altered the June proclamation in two ways. Supp. J.A. 208–13, ECF No. 69. First, it increased the length of time that the encounter-based asylum ban would remain in place. *Id.* Second, it announced that unaccompanied children from non-contiguous countries would, for the first time, be counted among the total number of daily encounters. *Id.* DHS and DOJ then jointly published a Final Rule incorporating the changes. 89 Fed. Reg. 81156.

The Final Rule governed asylum applications at the U.S.-Mexico border until January 20, 2025, when President Trump issued an executive order shutting down the CBP One mobile application. *Securing Our Borders* § 7(a). DHS canceled all existing CBP One appointments. Pls.' Mot. TRO and Mem. Law in Supp. at 3 ("Mot. TRO") at 2, ECF No. 71. Since then, noncitizens have been unable to seek asylum at the southern border. *Id.*

### B. Factual Background

In April 2024, Plaintiff S.O., a Venezuelan national, fled to Mexico with her two minor children, W.O. and G.F., after an armed group allied with the Venezuelan government ransacked their home, threatened S.O., and physically attacked the family. Second Am. Compl. ¶¶ 27–28, ECF No. 56; Mot. TRO. Once in Mexico, the family was kidnapped, extorted, and robbed, and S.O. was threatened with rape. Second Am. Compl. ¶ 27; Mot. TRO at 3. S.O. tried to get a CBP One appointment for five months before crossing the U.S. border without an appointment in October 2024. *Id.*

Despite being so terrified that she willingly approached an immigration officer to explain her fear of returning to Venezuela, S.O. was denied a credible fear interview under the Final Rule. Mot. TRO at 3–4. DHS officials also allegedly tricked S.O. into signing a removal order by telling her that the form, written in English, was to confirm that she was the biological mother of her children. *Id.* at 4. S.O. was never given the opportunity to assert her fear of removal to Mexico, where she and her children continue to live in fear and under the threat of removal to Venezuela. *Id.*

S.O. finally succeeded at getting a CPB One appointment for January 25, 2025 at the Paso Del Norte port of entry in El Paso, Texas. *Id.* She borrowed money from family members to purchase plane tickets to travel for the appointment. *Id.* But on January 20, S.O. received word that her family's appointment—like all other outstanding CPB One appointments—had been canceled. *Id.* She now lives "in limbo" in Mexico: unable to return to Venezuela; unable to seek asylum in the United States. *Id.* at 4–5.

### C. Procedural Background

On June 12, 2024, two immigrant advocacy groups, Las Americas Immigrant Advocacy Center ("Las Americas") and Refugee and Immigrant Center for Education and Legal Services ("RAICES") filed a complaint challenging the Interim Final Rule. Compl., ECF No. 1. One month later, they filed an amended complaint, adding as plaintiffs eleven individual asylum-seekers. First Am. Compl., ECF No. 14. The amended complaint alleges that the Interim Final Rule and the related Guidance violate the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*[7] *Id.*

---

[7] Named as defendants are DHS; DOJ; U.S. Citizenship and Immigration Services; U.S. Customs and Border Protection; U.S. Immigration and Customs Enforcement; the Executive Office for Immigration Review; Alejandro Mayorkas, Secretary of Homeland Security; Ur

6

Plaintiffs then moved for summary judgment. Pls.' Mot. Summ. J. Several advocacy groups filed briefs as amici curiae in support of Plaintiffs. *See* Brief Off. United Nations High Commissioner for Refugees as Amicus Curiae in Support of Pls.' Mot. Summ. J., ECF No. 25-1; Brief of Amicus Curiae Public Counsel in Support of Pls., ECF No. 26-1, Brief Amicus Curiae Human Rights First, Hope Border Institute, Immigrant Defenders Law Center, Kino Border Initiative, and Refugees International in Support of Pls., ECF No. 27-1, Brief of Amicus Curiae National Citizenship and Immigration Services Council 119 in Support of Pls.' Mot. Summ. J., ECF No. 28-1.

The State of Texas moved to intervene as a defendant, which both parties opposed. Texas' Opposed Mot. Intervene as Def., ECF No. 19; Defs.' Opp'n to Mot. Intervene, ECF No. 34; Pls.' Opp'n to Texas's Mot. Intervene, ECF No. 35. Texas filed a reply, ECF No. 40, and a motion for summary judgment or, in the alternative, an amicus brief in support of Defendants, ECF No. 47.[8] Defendants filed a cross-motion for summary judgment and a memorandum in opposition to Plaintiffs' motion for summary judgment. Defs.' Cross-Mot. Summ. J., ECF No. 45.

After summary judgment briefing concluded, President Biden issued the amended proclamation and DHS and DOJ promulgated the Final Rule. The Court granted Plaintiffs leave to amend the complaint to address the Final Rule, *see* Second Am. Compl., and both parties submitted supplemental briefing. Pls.' Supp. Opp'n to Defs.' Cross-Mot. Summ. J. and

---

Jaddou, Director of U.S. Citizenship and Immigration Services; Troy A. Miller, Senior Official Performing the Duties of Commissioner for U.S. Customs and Border Protection; Patrick J. Lechleitner, Acting Director of Immigration and Customs Enforcement; Merrick Garland, Attorney General; and Mary Cheng, Acting Director of the Executive Office for Immigration Review (collectively, "Defendants"). First Am. Compl. ¶¶ 26–37. Each individual defendant was sued in his or her official capacity.

[8] The Court has not yet ruled on Texas's motion to intervene.

7

Supplemental Reply in Support of Their Mot. Summ. J., ECF No. 65; Defs.' Supp. Reply Brief in Support of Defs.' Mot. Summ. J., ECF No. 67.  The parties also submitted a supplemental joint appendix, *see* Supp. J.A.

On January 23, 2025, Plaintiffs filed a motion for a temporary restraining order that would require the government to parole S.O. and her children "into the United States at the Paso Del Norte port of entry . . . so that they can pursue their claims for asylum."  Mot. TRO at 1.  Defendants submitted an opposition and Plaintiffs filed a reply.  Defs.' Opp'n Pls.' Mot. TRO ("Defs.' TRO Opp'n"), ECF No. 75; Pls.' Reply in Support of Mot. TRO ("Pls.' TRO Reply"), ECF No. 76.  Plaintiffs' motion for a temporary restraining order is thus fully briefed.

### III.  LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  "The last two factors 'merge when the Government is the opposing party.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  "Of course, the movant carries the burden of persua[ding]" the Court that these factors merit preliminary relief, *Fla. EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 11 (D.D.C. 2020) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)), and must do so by making a "clear showing," *Cobell*, 391 F.3d at 258.  "An application for a TRO is analyzed using the same

factors applicable to a request for preliminary injunctive relief." *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Regul. Auth., Inc.*, 678 F. Supp. 3d 88, 99 (D.D.C. 2023) (citing *Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011)).

## IV. ANALYSIS

To show entitlement to a temporary restraining order, Plaintiffs must meet the four requirements outlined in *Winter*, 555 U.S. at 22. But before reaching the *Winter* elements, the Court must address a threshold issue: whether it has the authority to order the relief requested.

In their TRO motion, Plaintiffs ask that S.O., W.O., and G.F. "be paroled into the United States at the Paso Del Norte port of entry in El Paso, Texas, so that they can pursue their claims for asylum." [9] Mot. TRO at 1. Parole, which does not constitute admission into the United States, allows a noncitizen to temporarily remain in the country while her application for admission is pending. 8 U.S.C. § 1182(d)(5)(A). Although a parolee "has 'liberty to roam the country,' the law considers him legally detained at the border within the government's custody until his immigration status is determined." *Samirah v. O'Connell*, 335 F.3d 545, 547 (7th Cir. 2003). The Secretary of Homeland Security has the discretion to decide whether to grant parole to any noncitizen.[10] *See* 8 U.S.C. § 1182(d)(5)(A).

---

[9] The operative complaint also requests that the Court enter an order paroling individual plaintiffs into the United States "for the duration of their removal proceedings so that they may apply for asylum, withholding of removal, and/or CAT protection in the United States." Second Am. Compl. at 38.

[10] By its terms, 8 U.SC. § 1182(d)(5)(A) gives the Attorney General the discretion to grant parole to noncitizens. But "[e]ffective March 1, 2003, the Immigration and Naturalization Service (INS), under the direction of the Attorney General, ceased to exist," and its functions were transferred to the Department of Homeland Security. *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005) (citing the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002)). Parole authority under 8 U.S.C. § 1182(d)(5)(A) was thus transferred to the Secretary of Homeland Security. *See Cruz-Miguel v. Holder*, 650 F.3d 189, 195 n.10 (2d Cir. 2011).

Courts are precluded from reviewing most decisions made discretionary by the INA. *Id.* § 1252(a)(2)(B)(ii). One exception is the granting of asylum under section 1158(a). *Id.*; *see also id.* § 1252(b)(4)(D) (providing that "the [Secretary of Homeland Security's] discretionary judgment whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to law and an abuse of discretion"). Parole is a remedy (1) distinct from asylum and (2) committed by law to the discretion of the Secretary of Homeland Security. *Id.* § 1182(d)(5)(A).

Defendants invoke this discretion to argue that the Court lacks the authority to order S.O. and her children be paroled into the United States. They emphasize that the exclusion of noncitizens is a "fundamental act of sovereignty by the political branches." Defs.' TRO Opp'n at 6 (quoting *Trump v. Hawaii*, 585 U.S. 667, 682 (2018) (internal quotation omitted)). True, it "is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of Government to exclude a given alien." *U. S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543–44 (1950). Given those principles, courts have held that they lack the power to order individual noncitizens be paroled into the United States. *Gimmarco v. Kerlikowske*, 665 F. App'x 24, 25–26 (2d Cir. 2016), *Samirah*, 335 F.3d at 549, and *Dugdale v. Customs & Border Patrol*, No. 14-cv-1175, 2015 WL 2124937, at *1 (D.D.C. May 6, 2025)).

In response, Plaintiffs draw a distinction between individual immigration challenges and systemic challenges, like theirs, brought under 8 U.S.C. § 1252(e)(3). They point out that the D.C. Circuit has held that the INA's judicial review bar applies only to "direct review of individual [noncitizens'] negative credible-fear determinations, not to facial challenges to the written policies that govern those determinations." *Grace v. Barr*, 965 F.3d 883, 893, 894 (D.C.

Cir. 2020); Pls.' TRO Reply at 2–4.  But that establishes the Court's jurisdiction over Plaintiffs' underlying claims, which challenge the facial legality of the Interim Final Rule, Final Rule, and Guidance.  The question of remedy is different.

There is no doubt that the Court can hold unlawful and set aside the Final Rule and Guidance.  5 U.S.C. § 706(2)(A); *see also Bridgeport Hospital v. Becerra*, 108 F.4th 882, 890–91 (D.C. Cir. 2024) (describing that when an agency rule is unlawful, the rule generally must be vacated under the APA); 8 U.S.C. § 1252(e)(3) (establishing this Court's jurisdiction over Plaintiffs' complaint).  But "[t]he Judiciary only possesses the power Congress gives it." *Kiyemba v. Obama*, 555 F.3d 1022, 1028 n.12 (D.C. Cir. 2009) ("*Kiyemba I*"), *vacated*, 559 U.S. 131 (2010), *reinstated after vacatur*, 605 F.3d 1046 (D.C. Cir. 2010).  Plaintiffs have not pointed to any law authorizing federal courts to order the government to parole noncitizens into the United States.

Instead, Plaintiffs' position is essentially this: the remedy of judicially-mandated parole is only unavailable in challenges to individualized parole denials.  This is so, they claim, because the INA's "limitations on relief" provision does not apply to systemic challenges.  Pls.' TRO Reply at 2; Pls.' Opp'n to Defs.' Cross-Mot. Summ. J. at 45.  Two courts in this district have apparently agreed.  *See Grace v. Barr*, 344 F. Supp. 3d. 96, 141–42 (D.D.C. 2018), *rev'd in part and aff'd in part*, *Grace*, 965 F.3d 883; *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 57–59 (D.D.C. 2020).  One of those courts held that "[b]ecause this case was brought under the [INA's] systemic challenge provision, the limit imposed on the relief available to a court under 1252(e)(1)(a) does not apply." *Grace*, 344 F. Supp. 3d at 143.  The other held that "nothing in the INA prevents this Court from enjoining the agency to take certain actions to remedy prior unlawful agency conduct." *Kiakombua*, 498 F. Supp. 3d. at 58.

11

The problem with that position is that it elicits no limiting principle. If the Court can order that Plaintiffs be paroled into the United States, what stops it from ordering asylum directly? In *Grace*, which dealt with a systemic challenge to an immigration policy, the D.C. Circuit held that no part of the INA prohibited the district court from issuing a nationwide injunction.[11] That suggests that Plaintiffs' position is correct: without express *de*authorization, any equitable relief is implicitly authorized in cases brought under the INA's systemic challenge provision.

There are other cases that lend support to Plaintiffs' position. The Supreme Court has "order[ed] aliens paroled into the country": *Zadyvdas v. Davis*, 533 U.S. 678 (2001), for one, and *Clark v. Martinez*, 543 U.S. 371 (2005), for another. But both *Zadyvdas* and *Clark* involved the constitutional rights of noncitizens who were detained in the United States, not the statutory rights of noncitizens abroad. *See Kiyemba I*, 555 F.3d at 1027–28 (drawing this distinction). The Supreme Court has also stated in dicta that noncitizens pursuing immigration claims from abroad "who prevail can be afforded effective relief by facilitation of their return." *Nken*, 556 U.S. at 435. And the Ninth Circuit has held that district courts can order the government to grant parole to noncitizens on a case-by-case basis to remedy constitutional violations. *Walters v. Reno*, 145 F.3d 1032, 1050–51 (9th Cir. 1998). This Court, too, has ordered the government to "consider[]" noncitizens' parole requests when those noncitizens brought a facial challenge to parole procedures and "made explicitly clear that they [we]re not seeking review of their

---

[11] In *Grace*, the district court had ordered the government to "provide new credible-fear interviews to the twelve asylum seekers who brought this case." *See Grace*, 965 F.3d 883, 906 (citing Order at 3, No. 18-cv-1853 (D.D.C. June 3, 2019)). But on appeal, the only remedy at issue was whether the district court was authorized to enjoin the application of certain policies. *Id.* at 906–07. At that point the plaintiffs had already had their credible fear interviews, so the issue was moot. *Id.* at 906.

individual parole determinations." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d. 110, 136 (D.D.C. 2018).

But in *Kiyemba I*, the D.C. Circuit described "parole under 8 U.S.C. § 1182(d)(5)(A) [as] a remedy that can be granted . . . only in the exclusive discretion of the Secretary of Homeland Security." *Kiyemba I*, 555 F.3d at 1029 n.14. That is the law of the Circuit.

Even if the Court could generally order noncitizens be paroled into the United States, the Court doubts it could do so here. The reason why Plaintiffs have no asylum appointment has nothing to do with the Final Rule or its Guidance. S.O.'s appointment was canceled pursuant to President Trump's January 20, 2025 executive order—an order not challenged in the operative complaint or in Plaintiffs' motion for summary judgment. Even if the Court ultimately vacates the Final Rule, Plaintiffs will nonetheless be unable to apply for asylum unless the January 20, 2025 executive order is also set aside or withdrawn. That issue falls outside the scope of this litigation.

Because the Court holds that it lacks the authority to grant the remedy requested in the TRO, the Court does not consider the *Winter* factors. *See Lindsey v. United States*, 448 F. Supp. 2d 37, 58 (D.D.C. 2006) (skipping the *Winter* factors when the court held that it lacked jurisdiction over the TRO). Accordingly, Plaintiffs' motion for a TRO is denied.[12]

---

[12] It is unclear whether the status quo of a scheduled asylum interview could be restored short of parole. The parties agree that a CBP One appointment did not automatically encompass parole and, instead, only allowed a noncitizen to present at the border for processing. Defs.' TRO Opp'n at ("The CBP One scheduling system allowed aliens to make an appointment to present at ports of entry in an orderly fashion, but, contrary to Plaintiffs' implication, a CBP One appointment was merely a scheduled appointment to present at a port of entry for processing and did not guarantee parole.") (footnote omitted); Pls.' TRO Reply at 4 ("Plaintiffs acknowledge that the decision to allow S.O. and her children to enter the United States is distinct from the decision whether to detain them at the outset of their asylum process."). Plaintiffs assert that "[t]his Court can issue a decision requiring Defendants to present at the border so that they can seek asylum without reaching the issue of detention." Pls.' TRO Reply at 4. But Plaintiffs'

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 6, 2025                                              RUDOLPH CONTRERAS
                                                                                         United States District Judge

---

papers are based on obtaining parole as a remedy, so the Court does not reach that issue.  *See* Mot. TRO at 1 ("Plaintiffs hereby move the Court to issue a temporary restraining order requiring Defendants to promptly allow Plaintiffs S.O., W.O., and G.F—whose CBP One appointment was scheduled for January 25, 2025, before Defendants cancelled it—to be paroled into the United States at the Paso Del Norte port of entry in El Paso, Texas, so that they can pursue their claims for asylum."); Mot. TRO Proposed Order at 1, ECF No. 71-2; *see also* Second Am. Compl. at 38 (requesting the following in the prayer for relief: "For any Individual Plaintiffs who have been removed prior to the Court's Order, an order paroling those Individual Plaintiffs into the United States for the duration of their removal proceedings so that they may apply for asylum, withholding of removal, and/or CAT protection in the United States[.]").