UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 24-1702 (RC) |
| v. | : : | Re Document Nos.: | 19, 47 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | : : : : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

**DENYING THE STATE OF TEXAS'S MOTION TO INTERVENE; DENYING IN PART AND GRANTING IN PART TEXAS'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, AMICUS BRIEF IN SUPPORT OF DEFENDANTS**

### I. INTRODUCTION

In September 2024, the Department of Homeland Security ("DHS") and the Department of Justice ("DOJ") jointly issued a Final Rule restricting asylum applications at the U.S.-Mexico border. Two immigrant advocacy groups and twenty-eight individual asylum-seekers sued DHS, DOJ, and other government entities alleging that the Final Rule, its predecessor Interim Rule, and its implementing guidance are unlawful. The State of Texas has moved to intervene as defendant under Federal Rule of Civil Procedure 24. Texas argues that it is entitled to intervention as a matter of right and, in the alternative, that the Court should allow permissive intervention. The parties oppose the motion. For the reasons stated below, Texas's motion is denied, and its motion for summary judgment or, in the alternative, amicus brief in support of defendants is denied in part and granted in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Over the past several years, immigration levels at the southern border reached an all-time high. Texas's Opposed Mot. Intervene as Def. ("Mot. Intervene") at 2–3, ECF No. 19; J.A. at 3. Hundreds of thousands of noncitizens have come seeking asylum, a discretionary protection that the Secretary of Homeland Security "may grant" to noncitizens physically present in the United States or at the border who qualify as refugees. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A); *see also id.* § 1158(a)(2), (b)(2) (laying out additional eligibility criteria). Because of what it characterizes as the federal government's "failure to control illegal immigration," Texas has invested over $11 billion to "decrease illegal crossings and crack down on human and drug trafficking" at the border. Mot. Intervene at 8 n.24.

On June 2, 2024, President Biden issued a "Proclamation on Securing the Border" that suspended asylum at the U.S.-Mexico border outside designated ports of entry whenever immigrant "encounters" exceeded a certain level.[1] J.A. 9–13. DHS and DOJ jointly issued an Interim Final Rule incorporating the proclamation. 89 Fed. Reg. 48710. Among other things, the rule increased the threshold for noncitizens to qualify for a credible fear interview, the first step in obtaining asylum and two other types of protection from removal. *Id.* at 48744–45. It also required noncitizens seeking asylum to use a smartphone application, CBP One, to schedule a "time to appear" at a specific port of entry. *Id.* at 48737. With extremely limited exceptions,

---

[1] The proclamation defined "encounters" to mean "a noncitizen who:

(i) is physically apprehended by CBP immigration officers within 100 miles of the United States southwest land border during the 14-day period immediately after entry between ports of entry;

(ii) is physically apprehended by DHS personnel at the southern coastal borders during the 14-day period after entry between ports of entry; or

(iii) is determined to be inadmissible at a southwest border port of entry." J.A. 13.

2

noncitizens arriving outside a port of entry or without an appointment became categorically ineligible for asylum. *Id.* at 48730–31; *see also* Am. Compl. ¶ 2.

Las Americas Immigrant Advocacy Center ("Las Americas") and Refugee and Immigrant Center for Education and Legal Services ("RAICES"), both immigrant advocacy organizations, filed a complaint in this Court challenging the Interim Final Rule and its accompanying guidance. Compl., ECF No. 1. Shortly after they filed an amended complaint adding as plaintiffs eleven individual asylum-seekers. First Am. Compl., ECF No. 14. Named as defendants were DHS; DOJ; U.S. Citizenship and Immigration Services; U.S. Customs and Border Protection; U.S. Immigration and Customs Enforcement; the Executive Office for Immigration Review; Kristi Noem, Secretary of Homeland Security; Kika Scott, Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services; Pete R. Flores, Acting Commissioner for U.S. Customs and Border Protection; Caleb Vitello, Acting Director of Immigration and Customs Enforcement; Pamela Bondi, Attorney General; and Sirce E. Owen, Acting Director of the Executive Office for Immigration Review (collectively, "Defendants").[2] First Am. Compl. ¶¶ 26–37.

In September 2024, President Biden promulgated an amended proclamation that altered the June proclamation in two ways. Supp. J.A. at 208–13. First, it increased the length of time that the encounter-based ban would remain in place. *Id.* Second, it announced that unaccompanied children from non-contiguous states would, for the first time, be counted among the total number of daily encounters. *Id.* DHS and DOJ then jointly published a Final Rule incorporating the changes. 89 Fed. Reg. 81156. In response, Las Americas, RAICES, and

---

[2] Initially the complaints named Biden officials as defendants, but pursuant to Federal Rule of Civil Procedure 25(d) those officials have been substituted by their successors.

twenty-eight individual asylum-seekers (collectively, "Plaintiffs") filed a second amended complaint challenging the Final Rule. Second Am. Compl., ECF No. 56. The parties also filed cross-motions for summary judgment. Pls.' Mot. Summ. J., ECF No. 23; Defs.' Cross-Mot. Summ. J., ECF No. 45.

Shortly after the original complaint was filed, the State of Texas moved to intervene as a defendant. Mot. Intervene. Both parties oppose the motion. Defs.' Opp'n to Mot. Intervene ("Defs.' Opp'n"), ECF No. 34; Pls.' Opp'n to Texas's Mot. Intervene ("Pls.' Opp'n"), ECF No. 35. Texas filed a reply and a motion for summary judgment or, in the alternative, an amicus brief in support of Defendants. Texas's Reply in Supp. Mot. Intervene ("Texas's Reply"), ECF No. 40; Texas's Mot. Summ. J. or In the Alternative, Amicus Brief in Supp. of Defs., ECF No. 47. Texas's motion to intervene is thus ripe for review.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 24 establishes two paths to intervention: intervention as a matter of right and permissive intervention.

#### A. Intervention of Right

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972). Rule 24(a) provides that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The D.C. Circuit has established that the right to intervene under Rule 24(a) depends on the applicant's ability to satisfy four factors: (1) whether the motion to intervene was timely; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted); *see also Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation"). A putative intervenor must satisfy all four factors. *Jones*, 348 F.3d at 1018. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).

### B. Permissive Intervention

A court has discretion to allow intervention when an applicant demonstrates "on timely motion" that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When exercising discretion to allow permissive intervention, district courts also "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3). "The D.C. Circuit has adopted a flexible reading of Rule 24(b)'s 'claim or defense' language,' allowing intervention even in 'situations where the existence of any nominate claim or defense is difficult to find.'" *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 312 (D.D.C. 2011) (internal quotation

5

marks omitted) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). "[P]ermissive intervention is an inherently discretionary enterprise." *Nat'l Children's Ctr., Inc.*, 146 F.3d at 1046 (citing *Hodgson*, 473 F.2d at 125 n.36). "In deciding how to exercise its discretion, the Court may [] consider such factors as the nature and extent of the applicant's interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quotations omitted).

## IV. ANALYSIS

Texas's stake in this litigation is, in its own words, "straightforward: Texas does not seek extra relief but merely aims to keep the [Interim Final Rule] intact."[3] Texas's Reply at 2–3. In opposing Texas's motion to intervene, the parties raise the same two arguments. First, they argue that Texas has no cognizable legal interest in the litigation and that it lacks standing. Defs.' Opp'n at 4–12; Pls.' Opp'n at 2–6, 3 n.1. Second, they assert that Texas's interests are adequately represented by Defendants. Defs.' Opp'n at 12–13; Pls.' Opp'n at 6–7. The Court agrees.

At the outset, binding D.C. Circuit precedent requires Texas to establish that it has Article III standing. In *Deustche Bank National Trust Company v. FDIC*, the Circuit affirmed that all intervenors, including putative *defendant*-intervenors, "must demonstrate Article III standing." 717 F.3d 189, 193 (D.C. Cir. 2013); *see also Crossroads Grassroots Pol'y Strategies v. FEC* ("*Crossroads*"), 788 F.3d 312, 316 (D.C. Cir. 2015) (same). The Supreme Court has

---

[3] Texas's motion was filed before the Final Rule issued. The Court assumes that Texas's interest in maintaining the Final Rule is the same as its interest in maintaining the Interim Final Rule, which is materially identical to the Final Rule for purposes of this litigation.

6

since held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017); *see also Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania* ("*Little Sisters*"), 591 U.S. 657, 674 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction."). Texas essentially argues that the Supreme Court has, in *Town of Chester* and *Little Sisters*, overturned *Deustche Bank*. Texas's Reply at 3–4.

But this Court is bound by D.C. Circuit precedent unless intervening Supreme Court authority "eviscerate[s]" the law of the circuit. *Alpine Secs. Corp. v. FINRA*, 121 F.4th 1314, 1334 (D.C. Cir. 2024) (quoting *Bahlul v. United States*, 77 F. 4th 918, 926 (D.C. Cir. 2023)). *Town of Chester* and *Little Sisters* show that a putative *plaintiff*-intervenor must affirmatively demonstrate standing when seeking relief different than that sought by "the party invoking a court's jurisdiction." *Little Sisters*, 591 U.S. at 674 n.6; *see also Town of Chester*, 581 U.S. at 435. Neither case addressed whether a putative *defendant*-intervenor must possess standing. The D.C. Circuit has already concluded that *Town of Chester* "does not cast doubt upon, let alone eviscerate, our settled precedent that all intervenors must demonstrate Article III standing." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 n.2 (D.C. Cir. 2018). Nor does *Little Sisters*, which addressed intervenor standing only in a footnote. *See Little Sisters*, 591 U.S. at 674 n.6. This Court must therefore follow the D.C. Circuit's holding that "when a party tries to intervene as another defendant," it is "required to demonstrate Article III standing."[4]

---

[4] Texas points out that other circuits have come out the other way, *see* Texas's Reply at 6 n.2, but those cases are immaterial in the face of binding D.C. Circuit precedent.

7

*Crossroads*, 788 F.3d at 316.  Otherwise, as the Circuit has explained, "'any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation.'" *Id.* (quoting *Deutsche Bank Nat'l Trust Co.*, 717 F.3d at 195 (Silberman, J., concurring)); *see also Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 4 (D.D.C. 2021) (concluding that the court was required to evaluate putative defendant-intervenor's standing under *Deutsche Bank* despite *Town of Chester* and *Little Sisters*).

So Texas must show an injury-in-fact to a legally protected interest, causation, and redressability.[5]  *Crossroads*, 788 F.3d at 316.  When standing is premised on a potential future injury, the party asserting standing "must demonstrate a realistic danger of sustaining a direct injury."  *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989) (internal quotation omitted).  The leading case on state standing in the immigration context is *United States v. Texas*, 599 U.S. 670 (2023), where two States (including Texas) sought to challenge DHS immigration enforcement guidelines that prioritized the arrest and removal of suspected terrorists and dangerous criminals.  The thrust of the States' argument was that DHS was statutorily obligated to arrest more noncitizens than it would under the guidelines.  *Texas*, 599 U.S. at 673–74.  For standing, the States claimed that the guidelines imposed costs on them by obligating

---

[5] Texas did not attempt to establish standing in its motion to intervene.  *See generally* Mot. Intervene.  Defendants claim that this means Texas forfeited any argument that it has standing.  Defs.' Opp'n at 5–6.  But a party may "in a reply brief, respond to arguments raised for the first time in [the opposing party's] brief."  *United States v. Powers*, 885 F.3d 728, 732 (D.C. Cir. 2018) (internal quotation omitted).  Texas therefore did not forfeit its standing arguments by raising them for the first time in reply.  *See id.*  Because the D.C. Circuit has characterized Rule 24(a)'s interest factor and Article III's standing requirements as "similar," *see Deutsche Bank*, 717 F.3d at 191, the Court construes Texas's arguments about its interest in the litigation as essentially arguments on standing.

8

them to "incarcerate or supply social services such as healthcare and education to noncitizens who should be (but [were not]) arrested." *Id.* at 674.

The Supreme Court held that the States lacked standing because, for one thing, "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." *Id.* at 680. But the Court also cautioned that "in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *Id.* at 680 n.3. The Court rejected the States' position that "those kinds of indirect effects" "overcome[] the fundamental Article III problem[s] with this lawsuit." *Id.*

Texas's proffered injuries here are of that indirect character. Texas claims that "[a]s the border towns become overrun, it impacts all levels of Texas' infrastructure, including housing, education, health care, criminal justice system costs, welfare expenditures, and more." Mot. Intervene at 12–13. Texas also insists that it "has financial interests at stake based on the outcome of this litigation . . ., including (1) having to provide certain benefits to those unlawfully present and (2) encountering administrative burdens to comply with federal law by ensuring it is not providing state and local public benefits to ineligible migrants." *Id.* at 13; *see also* Texas's Reply at 5 (describing Texas's "substantial economic interests in ensuring the [Rule] stays in effect to mitigate the flow of unlawful crossings over its southern border").

Texas's theory of injury is too attenuated to support Article III standing, which requires an injury that is "actual or imminent, not conjectural or hypothetical." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation omitted); *see also Texas v. Mayorkas*, 743 F. Supp. 3d. 900, 909–10 (W.D. Texas 2024) (holding that Texas had no injury-in-fact "based on indirect, downstream monetary costs" in another instance where Texas challenged federal

immigration policy); *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015) (holding that "a state official has not suffered an injury in fact because a federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources"). For the same reason, the Court finds that Texas has not asserted a legal interest sufficient to satisfy the interest element of Rule 24(a). *Cf. Deutsche Bank Nat'l Trust Co.*, 717 F.3d at 191 (D.C. Cir. 2013) (characterizing Article III standing and Rule 24(a)'s interest element as "similar").

Nor is the Court convinced that Defendants will inadequately represent Texas's interest in keeping the challenged Rule intact. True, Texas and the federal government do not consistently align on immigration policy. *See* Mot. Intervene at 16 (describing discord). But Texas has not shown that Defendants have failed or will fail to vigorously defend the Final Rule. *See* Defs.' Opp'n at 12–13; Pls.' Opp'n at 6–7. That Texas might make different arguments than Defendants is immaterial, *contra* Mot. Intervene at 21, because the relevant inquiry under Rule 24 is whether Texas's interest is adequately represented, not whether its preferred arguments are articulated. And while it is true that the D.C. Circuit "look[s] skeptically on government entities serving as adequate advocates for private parties," Texas is not a private party—it is one of fifty States that could claim some interest in enforcing or challenging federal immigration policies. *See Crossroads*, 788 F.3d at 321.

The Court also declines to exercise its discretion to allow Texas to intervene permissibly. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 278–79 (2022) ("Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought."). The floodgates concern raised by the Supreme Court in *Texas* cautions against granting permissive intervention to States in cases like this. *Texas*, 599 U.S. at 680 n.3

(describing how federal policies "frequently generate indirect effects on state revenues or state spending"); *see also Arpaio*, 27 F. Supp. 3d at 202 (expressing concern about adopting a holding that would allow "nearly all state officials to challenge a host of Federal laws simply because they disagree with how many—or how few—Federal resources are brought to bear on local interests"); *Cooper v. Newsom*, 13 F.4th 857, 868–69 (9th Cir. 2021) (holding that a district court did not abuse its discretion in denying permissive intervention to three District Attorneys when it found that "some or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted to the[se] three").  The downstream effects of federal immigration policy may be concentrated in border states like Texas, but ultimately all fifty states could claim to suffer the kind of collateral injuries Texas articulates here.  And, as discussed above, Texas has not shown that Defendants will fail to adequately defend the Rule.

      The Court will, however, grant Texas leave to file a brief as amicus curiae.  *See* Loc. Civil Rule 7(o); Texas's Mot. Summ. J. or In the Alternative, Amicus Brief in Supp. of Defs. The Court believes that Texas "'has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'"  *See Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (quoting *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997)).  Texas's proposed motion for summary judgment will therefore be docketed as an amicus brief.  *See* Texas's Mot. Summ. J. or In the Alternative, Amicus Brief in Supp. of Defs. at 1 n.1; *see also Friends of Earth v. Haaland*, 2022 WL 136763 (D.D.C. Jan. 15, 2022) (denying motion to intervene but granting leave to file proposed motion for summary judgment as an amicus brief).

## V.  CONCLUSION

For the foregoing reasons, Texas's motion to intervene is denied.  Texas's motion for summary judgment or in the alternative, amicus brief in support of defendants, is denied in part and granted in part.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 26, 2025                                                                RUDOLPH CONTRERAS
                                                                                                               United States District Judge