**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAS AMERICAS IMMIGRATION ADVOCACY CENTER, et al., ) ) ) *Plaintiffs*, ) v. ) ) U.S. DEPARTMENT OF HOMELAND SECURITY, ) et al., ) ) *Defendants*. ) | No. 1:24-cv-1702-RC |

**PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD.............................................................................................................2

ARGUMENT..........................................................................................................................2

CONCLUSION.......................................................................................................................9

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs respectfully move the Court to amend its May 9, 2025, Summary Judgment Order, ECF No. 91, to further order Defendants to return the removed Individual Plaintiffs to the United States.

Neither the Court's Order nor its Memorandum Opinion addressed that request for relief, which was set out in Plaintiffs' summary judgment filings. Instead, the Court addressed only Plaintiffs' request that the Court order Defendants to grant parole to the removed Individual Plaintiffs, a distinct remedy. *See* ECF No. 92 at 48-52. Plaintiffs do not seek to relitigate the Court's denial of that parole relief. They ask only that the Court address for the first time their request for an order requiring Defendants to return the removed Plaintiffs to the United States. That is a standard remedy for unlawful removals, which Defendants have established protocols for effectuating—and which they may accomplish with or without also granting parole.

Notably, on April 10, 2025, following the completion of all supplemental summary judgment briefing in this case, the Supreme Court unanimously confirmed district courts' authority to order the government to return unlawfully removed noncitizens to the United States. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). In that case, moreover, the plaintiff was imprisoned in El Salvador and the Supreme Court still required the government to facilitate his return. Here, many of the Individual Plaintiffs who seek return are currently in danger in the very countries that they sought to flee; and many others are in precarious circumstances in Mexico after being removed there as a third country. But unlike in *Abrego Garcia*, the Plaintiffs here are not imprisoned in a foreign country and thus do not present any of the same obstacles raised by the government in that case. The Court can and should correct a manifest injustice by amending its judgment to order Defendants to return the Individual Plaintiffs who were unlawfully removed.

1

**LEGAL STANDARD**

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Among other things, amendment of a judgment under Rule 59(e) is proper "to correct manifest errors" or "to prevent manifest injustice." 11 Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.). A "motion under Rule 59(e) also is appropriate if the court in the original judgment has failed to give relief" to which a party is entitled. *Id.*; *see, e.g.*, *Flynn v. Masonry*, 444 F. Supp. 2d 221, 222-23 (D.D.C. 2006). By contrast, Rule 59(e) "'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2810.1, pp. 127-28 (2d ed. 1995)).

**ARGUMENT**

Amendment of the judgment is appropriate because "the Court failed to address plaintiffs' additional request for injunctive relief" in the form of an order requiring Defendants to return the removed Individual Plaintiffs to the United States, regardless of whether it also ordered Defendants to grant parole. *See Flynn v. Masonry*, 444 F. Supp. 2d 221, 222-23 (D.D.C. 2006); *see also* 11 Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.) (amendment proper where judgment "failed to give relief" to which party was entitled).[1]

---

[1] Numerous other decisions confirm that this is a proper basis for amendment under Rule 59(e). *E.g.*, *Hicks v. Town of Hudson*, 390 F.2d 84, 88 (10th Cir. 1967) (affirming grant of motion to amend judgment on basis that the "original judgment . . . did not give consideration to" part of "the requested relief"); *Hinton v. Astrue*, 919 F. Supp. 2d 999, 1002, 1005-06 (S.D. Iowa 2013) (granting Rule 59(e) motion where prior judgment "did not address" request for relief); *United States v. Salama*, 890 F. Supp. 2d 1253, 1255-56 (E.D. Cal. 2012) (granting Rule 59(e) motion to address request for relief); *In re Partitions Plus of Wilmington, Inc.*, No. 04-06776-8-JRL, 2008 WL 1924035, at *1, 3 (Bankr. E.D.N.C. Apr. 30, 2008) (granting Rule 59(e) motion where movant did "not seek reconsideration" of an issue already decided but instead raised "for resolution in the first instance" a remedy issue that the court previously "did not address"); *Scott v. City of Topeka*,

2

Plaintiffs fairly presented their request for that relief in their summary judgment briefing and proposed order. The proposed order asked the Court to order "Defendants to bring back into the United States any Plaintiff who is outside the United States at no expense to the plaintiff, *and* parole them into the United States for the duration of their removal proceeding." ECF No. 23-3 at 1 (emphasis added). Plaintiffs therefore asked the Court to order Defendants *both* to return the removed Plaintiffs to the United States *and* to grant them parole upon their return.

Indeed, Plaintiffs' summary judgment briefs focused on seeking return rather than parole. Their summary judgment memorandum stated: "the Individual Plaintiffs request the Court vacate their negative credible fear determinations and removal orders, and order that Defendants return Plaintiffs who are abroad to the United States so that their claims can be processed in accordance with the law." Pls. MSJ Br., ECF No. 23 at 45. In support, Plaintiffs cited Judge Sullivan's order in *Grace v. Whitaker* and referenced only that order's requirement that the government "bring [removed plaintiffs] back into the United States." *Id.* (alteration in prior brief). Plaintiffs' brief did not reference that order's further requirement that the government also "parole [the *Grace* plaintiffs] into the United States." *See* Order at 3, *Grace v. Whitaker*, No. 18-cv-1853 (D.D.C. Dec. 19, 2018), ECF No. 105. Plaintiffs' subsequent summary judgment briefs were to the same effect. *See* Pls. MSJ Reply, ECF No. 48 at 44 ("Individual Plaintiffs ask the Court to vacate their negative CFI decisions and removal orders and order Defendants to return the Individual Plaintiffs who have been removed."); Pls. Suppl. Reply, ECF No. 65 at 13 ("Defendants assert that Plaintiffs have identified no 'authority to support' an order directing the government to return Individual Plaintiffs

---

739 F. Supp. 1434, 1437, 1439 (D. Kan. 1990) (granting Rule 59(e) motion to award plaintiff further injunctive relief that earlier judgment did not reach).

3

to the United States. But 'numerous cases confirm that courts have authority to order the return of noncitizens unlawfully removed.'").[2]

Defendants' summary judgment briefing likewise made clear that they understood Plaintiffs to be requesting both return *and* parole. *See* Defs. MSJ Reply, ECF No. 52 at 19-20 ("[T]he individual Plaintiffs do not identify any basis for an affirmative injunction requiring the government to 'return' them *or to parole them* into the United States. . . . Plaintiffs do not identify any statute that creates a specific, unequivocal duty requiring the government to take affirmative steps to return individuals—even those removed pursuant to a process later held unlawful—*or to parole anyone into the country*.") (emphasis added).

A longstanding DHS directive confirms this distinction between a baseline remedy of return itself and the additional benefit of granting parole upon return. *See* U.S. Immigration & Customs Enforcement, Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens (Feb. 24, 2012) ("ICE Directive 11061.1"), https://perma.cc/ZVH8-CJEC. That directive provides that facilitating return following removal involves "activities which allow a lawfully removed [noncitizen] to travel to the United States (such as by issuing a Boarding Letter to permit commercial air travel) *and, if warranted, parole the alien into the United States upon his or her arrival* at a U.S. port of entry." *Id.* § 3.1 (emphasis added).

However, the Court's summary judgment opinion addressed only Plaintiffs' request that the Court order Defendants to grant parole to the removed noncitizens. *See* ECF No. 92 at 48-52. The opinion did not address whether, regardless of parole, the removed Plaintiffs were at least

---

[2] By contrast, Plaintiffs' separate TRO motion on behalf of Individual Plaintiff S.O. and her children sought *solely* relief in the form of an order that "Defendants allow Plaintiffs S.O., W.O., and G.F. to be *paroled* into the United States." TRO Proposed Order, ECF No. 71-2 at 1 (emphasis added); *accord* TRO Mot., ECF No. 71, at 1, 8.

entitled to an order that Defendants return them to the United States. *See id.* Because that request for relief was fairly presented to the Court—and Defendants understood the request and responded to it—it would be a manifest injustice for the Court not to address it. That is particularly so here, where many of the removed Plaintiffs are now living in danger in the countries where they fear persecution and torture, and others are in precarious circumstances in Mexico due to their unlawful removals there as a third country.[3]

Neither of the Court's two reasons for denying relief concerning parole apply to Plaintiffs' separate request that the Court order Defendants to return the removed Individual Plaintiffs. First, the Court reasoned that it could not order Defendants to grant parole because "'parole under 8 U.S.C. § 1182(d)(5)(A) [is] a remedy that can be granted . . . only in the exclusive discretion of the Secretary of Homeland Security.'" ECF No. 92 at 51 (ellipsis in original) (quoting *Kiyemba v. Obama*, 555 F.3d 1022, 1029 n.14 (D.C. Cir. 2009)). That rationale relates specifically to parole. It does not prevent the Court from ordering Defendants to return the removed Plaintiffs to the United States *without* necessarily granting them parole—and thereby place them back in the situation they were in before their unlawful removals. *Kiyemba* is also factually distinct because the plaintiffs there had never previously been within the United States and had never been removed

---

[3] The fact that the prayer for relief in Plaintiffs' complaint mentioned ordering parole but not return, 2nd Am. Compl., ECF No. 56 at 38, "is not conclusive" of the relief they sought at summary judgment and to which they are entitled, *PETA v. Gittens*, 396 F.3d 416, 420-21 (D.C. Cir. 2005); *accord* 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2664 (4th ed.) ("the prayer for relief does not determine what relief ultimately will be awarded" unless the "plaintiff's failure to demand the appropriate relief has prejudiced the defendant"); *see also* Fed. R. Civ. P. 54(c) (any non-default "judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). And although "[a] party will be denied relief not specified in its Complaint where the opposing party would suffer prejudice," that is not the case here since, as noted above, Defendants' own summary judgment briefing made clear that they were "very much aware" that Plaintiffs sought return as well as parole. *See First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 28 (D.D.C. 1998); *see also* Defs. MSJ Reply, ECF No. 52 at 19-20.

from the United States; rather, they had been detained in Pakistan and then held at Guantanamo Bay. 555 F.3d at 1023-24. Therefore, an order requiring their parole into the United States would have permitted them to set foot on U.S. territory *for the first time*. Here by contrast, an order requiring Defendants to return the Individual Plaintiffs is not a request that they be permitted to come to the United States for the first time. It is instead a request that they be returned to the position they were in prior to Defendants' unlawful actions.

Second, this Court reasoned that "[e]ven if the Court could generally order that noncitizens be paroled into the United States, the Court cannot do so here" because "President Trump's *Securing Our Borders* executive order shut down the CBP One application." ECF No. 92 at 51; *see also* Exec. Order 14165, "Securing Our Borders," § 7(a), 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025). Although the removed Plaintiffs can no longer be paroled into the country at the southern border via the CBP One appointment system, Defendants can still *return* them by other means, including by air—which would be Plaintiffs' preference. *See* ICE Directive 11061.1 § 3.1, *supra*, https://perma.cc/ZVH8-CJEC; Defs. Status Report, *D.V.D. v. DHS*, No. 1:25-cv-10676-BEM, ECF No. 143 (D. Mass. May 28, 2025) (reporting that, in response to court order requiring the government to return an unlawfully removed noncitizen, DHS was arranging "to bring [the noncitizen] back to the United States" on the "return leg" of a removal flight). Indeed, some of the removed Plaintiffs were removed to Colombia and are not in Mexico at all, and those who are in Mexico are not currently near the U.S. border where CBP One appointments were processed. If the Court orders Defendants to return the removed Plaintiffs, DHS will retain its discretion to decide whether or not to also grant parole to one or more of those Plaintiffs upon their arrival.[4]

---

[4] Although Defendants did not raise this argument, the Court also stated that "President Trump's *Securing Our Borders* executive order" means that the Individual Plaintiffs would "be unable to

6

As Plaintiffs previously explained, "numerous cases confirm that courts have authority to order the return of noncitizens." Pls. MSJ Reply, ECF No. 48 at 44 (collecting cases); *see also, e.g.*, *Singh v. Waters*, 87 F.3d 346, 350 (9th Cir. 1996) (ordering government to permit return for immigration hearing following unlawful removal); *Rantesalu v. Cangemi*, No. 04-cv-1375(JRT/SRN), 2004 WL 898584, at *8 (D. Minn. Apr. 23, 2004) (ordering government to "permit petitioner to re-enter the United States" after unlawful removal); *Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 408 (S.D.N.Y. 2004) (ordering noncitizen "be returned" after unlawful removal), *amended in part on other grounds on reconsideration*, 2004 WL 1348994 (S.D.N.Y. June 15, 2004); *Dennis v. INS*, No. 301-cv-279-SRU, 2002 WL 295100, at *4 (D. Conn. Feb. 19, 2002) (same).

Additionally, new developments since the completion of all supplemental summary judgment briefing in this case further confirm the Court's authority to order Defendants to return the unlawfully removed Individual Plaintiffs. In April, the Supreme Court unanimously ruled that

---

apply for asylum unless or until that executive order is also set aside or withdrawn, which falls outside the scope of this litigation." ECF No. 92 at 51-52. It appears that the Court may have meant to refer to a separate presidential proclamation issued on the same day, which bars certain noncitizens from invoking the asylum and withholding of removal statutes. *See* Proclamation 10888, 90 Fed. Reg. 8333 (Jan. 20, 2025). But that Proclamation applies to noncitizens who cross the border "on or after" January 20, 2025. *Id.* at 8335-36. The Individual Plaintiffs in this case all crossed the border in 2024. *See* 2nd Am. Compl. ¶¶ 11-33, ECF No. 56. Because the purpose of the request that Defendants return the removed Individual Plaintiffs is to place them in the same position they were in before Defendants' unlawful actions, their 2024 entry dates should control. Additionally, Proclamation 10888 does not bar noncitizens from seeking protection under the Convention Against Torture, which means their return would not be futile even if the Proclamation were to apply to them. *See* Defs. Cross-MSJ at 49, ECF No. 44, *RAICES v. Noem*, No. 1:25-cv-306-RDM (D.D.C. Mar. 24, 2025) ("CAT protection is not provided by the INA and so is not subject to the Proclamation's limitation on invoking provisions of the INA."). Moreover, Proclamation 10888 is being challenged on a nationwide basis in separate litigation in this District brought by Plaintiffs RAICES and Las Americas among others, including representatives of a proposed nationwide class. Cross-motions for summary judgment in that case are ripe for imminent decision before Judge Moss. *See RAICES v. Noem*, No. 1:25-cv-306-RDM (D.D.C. filed Feb. 3, 2025) (argument held April 29, 2025).

7

a district court properly ordered the government to "facilitate . . . the return" to the United States of a noncitizen, Kilmar Abrego Garcia, whose "removal to El Salvador was . . . illegal." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (internal quotation marks omitted). Indeed, even though Mr. Abrego Garcia was being detained in El Salvador, the Supreme Court held that the district court's order "properly requires the Government to 'facilitate'" not only his return but his "release from custody in El Salvador." *Id.* By comparison, the situation here is much more straightforward because the removed Plaintiffs are not being *detained* outside the United States; unlike in *Abrego Garcia*, here Defendants need not facilitate any of the Plaintiffs' *release* before returning them to the United States. Because the Supreme Court has held that district courts can order the government to return unlawfully removed noncitizens—even when they are detained abroad—this Court necessarily has authority to order Defendants to return the unlawfully removed Individual Plaintiffs. *See also J.O.P. v. DHS*, No. 25-1519, 2025 WL 1431263, at *1 (4th Cir. May 19, 2025) (holding that separate district court properly ordered the government to facilitate the release and return of another noncitizen detained in El Salvador).

Plaintiffs did not previously and do not now ask the Court to micro-manage Defendants' return of the removed Individual Plaintiffs, which can be handled in coordination with Plaintiffs and their counsel. As before, Plaintiffs simply ask the Court to order Defendants "to bring back into the United States any Plaintiffs who is outside the United States at no expense to the plaintiff." Pls. MSJ Proposed Order, ECF No. 23-3 at 1. That relief will merely place the removed Plaintiffs back in the position they were in before their unlawful removals. *See Abrego Garcia*, 145 S. Ct. at 1018 (holding that order for return would properly permit noncitizen's immigration case "to be handled as it would have been had he not been improperly sent to El Salvador").

8

## CONCLUSION

For the foregoing reasons, the Court should amend its Summary Judgment Order to further order Defendants to return to the United States the Individual Plaintiffs who were removed under the Rule, at no expense to the Plaintiffs.

Dated: June 3, 2025

Respectfully submitted,

/s Lee Gelernt

Lindsay Harrison (D.C. Bar #977407)
Mary E. Marshall (D.C. Bar #1739058)
Maura E. Smyles (D.C. Bar #90006775)*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
T: 202-639-6000
*lharrison@jenner.com*
*mmarshall@jenner.com*
*msmyles@jenner.com*

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
T: 312-222-9350
*mroot@jenner.com*
*aosborne@jenner.com*

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
*aspitzer@acludc.org*
*smichelman@acludc.org*

Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

Morgan Russell*
Cody Wofsy (D.D.C. Bar No. CA00103)
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
*mrussell@aclu.org*
*cwofsy@aclu.org*

Keren Zwick (D.D.C. Bar. No. IL0055)
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370
*kzwick@immigrantjustice.org*
*mgeorgevich@immigrantjustice.org*

Daniel Hatoum*  
Texas Civil Rights Project  
P.O. Box 219  
Alamo, Texas 78516  
T: 512-474-5073, ext. 208  
*daniel@texascivilrightsproject.org*

Blaine Bookey*  
Center for Gender & Refugee Studies  
200 McAllister Street  
San Francisco, CA 94102  
T: 415-581-8825  
*bbookey@uclawsf.edu*

Ashley Alcantara Harris*  
David A. Donatti*  
American Civil Liberties Foundation of Texas  
P.O. Box 8306  
Houston, TX 77288  
T: 713-942-8146  
*aharris@aclutx.org*  
*ddonatti@aclutx.org*

Melissa Crow (D.C. Bar. No. 453487)  
Center for Gender & Refugee Studies  
1121 14th Street NW  
Suite 200  
Washington, D.C. 20005  
T: 202-355-4471  
*crowmelissa@uclawsf.edu*

Edith Sangueza*  
Center for Gender and Refugee Studies  
26 Broadway, 3rd Floor  
New York, NY 10004  
T: 415-581-8835  
*sanguezaedith@uclawsf.edu*

Robert Pauw*  
Center for Gender and Refugee Studies  
c/o Gibbs Houston Pauw  
1000 Second Avenue, Suite 1600  
Seattle, WA 98104  
T: 206-682-1080  
*rpauw@ghp-law.net*

*Attorneys for Plaintiffs*

*\*Admitted via certificate of pro bono representation or pro hac vice*