# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAS AMERICAS IMMIGRATION ADVOCACY CENTER, et al., )<br>)<br>        *Plaintiffs*, )<br>v. )<br>)<br>U.S. DEPARTMENT OF HOMELAND SECURITY, )<br>et al., )<br>)<br>        *Defendants*. ) | No. 1:24-cv-1702-RC |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................1

    I.  The Prayer For Relief In Plaintiff's Amended Complaint Is Not Conclusive......................1

    II.  The Court Has Equitable Authority To Order The Removed Plaintiffs' Return ...............5

CONCLUSION.................................................................................................................................9

**INTRODUCTION**

The Court should grant Plaintiffs' Rule 59(e) motion and amend its Summary Judgment Order to grant Plaintiffs' previous request for an order requiring Defendants "to bring back into the United States any Plaintiff who is outside the United States at no expense to the plaintiff." *See* Pls. MSJ Proposed Order, ECF No. 23-3, at 1. Defendants' arguments in opposition are foreclosed by binding precedent. Defendants first argue that the Court can disregard the plain terms of Plaintiffs' summary judgment briefs and proposed order and instead look only to the prayer for relief in the Amended Complaint. But the D.C. Circuit has held that the prayer for relief "is not conclusive" of the relief that a plaintiff can seek at summary judgment. *PETA, Inc. v. Gittens*, 396 F.3d 416, 420-21 (D.C. Cir. 2005). Defendants next argue that Plaintiffs have not identified any basis for the Court to order that they be returned to the posture they were in prior to their unlawful removal. Among other defects, that assertion cannot be reconciled with the Supreme Court's recent unanimous holding that a district court "properly" ordered the government to facilitate the return an unlawfully removed noncitizen "to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).

**ARGUMENT**

**I.   The Prayer For Relief In Plaintiff's Amended Complaint Is Not Conclusive.**

As Plaintiffs' motion explained, their summary judgment briefs and proposed order clearly set out their request for an order requiring Defendants to *return* the removed Individual Plaintiffs to the United States as well as requiring their *parole* upon return; and Defendants' own summary judgment briefs reflect that Defendants understood Plaintiffs to have made both these requests. *See* ECF No. 93 ("Mot.") at 3-4. Defendants do not seriously dispute either point. *See* ECF No. 92 ("Opp.") at 1-2. Instead, Defendants first assert that Plaintiffs' summary judgment proposed order "contemplated that the mechanism for accomplishing that return would be parole." *Id.* at 2. But

1

Plaintiffs' proposed order said no such thing. To the contrary, it asked the Court to order "Defendants to bring back into the United States any Plaintiff who is outside the United States at no expense to the plaintiff, *and* parole them into the United States for the duration of their removal proceeding." ECF No. 23-3 at 1 (emphasis added). Defendants' suggestion that Plaintiffs' two distinct requests really collapsed into a single request for parole is contrary to the plain text of Plaintiffs' proposed order. And it is further belied by the fact that Defendants themselves clearly understood Plaintiffs to be seeking both forms of relief. *See* Defs. MSJ Reply, ECF No. 52 at 19-20 ("[T]he individual Plaintiffs do not identify any basis for an affirmative injunction requiring the government to 'return' them *or to parole them into the United States*. . . . Plaintiffs do not identify any statute that creates a specific, unequivocal duty requiring the government to take affirmative steps to return individuals—even those removed pursuant to a process later held unlawful—*or to parole anyone into the country*.") (emphasis added).

Defendants also appear to assert that Plaintiffs were limited to seeking the relief they had expressly identified in the prayer for relief of their Amended Complaint. Opp. 2. That is not the law. To the contrary, Rule 54(c) states that every non-default "final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." Fed. R. Civ. P. 54(c) (emphasis added). "Consequently, the prayer for relief does not determine what relief ultimately will be awarded." 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2664 (4th ed.). As the D.C. Circuit has explained, a plaintiff's failure to make a particular request for relief in its complaint "is not conclusive" of the relief the plaintiff can seek or receive at summary judgment, because Rule 54(c) "empowers courts to grant the relief to which the prevailing party is entitled, regardless [of] whether the party specifically requested the relief in its complaint." *PETA, Inc. v. Gittens*, 396 F.3d 416, 420-21 (D.C. Cir. 2005); *accord Cont'l Transfer Technique*

2

*Ltd. v. Fed. Gov't of Nigeria*, 603 F. App'x 1, 4 (D.C. Cir. 2015) (unpublished) (affirming grant of Rule 59(e) motion to award relief that "relief was not explicitly requested in the complaint") (citing Rule 54(c) and *PETA, Inc.*, 396 F.3d at 420-21); *see also Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 157–58 (D.D.C. 2013) (making clear that the plaintiff had requested the relief at issue in its "proposed order that it submitted with its motion for summary judgment").

The cases Defendants cite do not address whether Plaintiffs can seek relief at summary judgment that is different from that set forth in the prayer for relief of the operative complaint. *See* Mot. 2. Their cases instead concern an inapposite situation in which the plaintiffs' briefs sought to assert new *claims* against the defendants based on *factual allegations* not stated in their complaints. *See Middlebrooks v. Godwin Corp.,* 722 F. Supp. 2d 82, 87 & n.4 (D.D.C. 2010) (rejecting plaintiff's attempt to assert a contractual claim for the first time in her opposition to motion to dismiss based on the alleged existence of "numerous contracts," where the "plaintiff failed to include these allegations in her complaint"); *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (rejecting plaintiff's attempt to change theory of conversion claim in opposition to dismiss based on facts not alleged in the complaint); *see also Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (cited in *Calvetti*) (rejecting plaintiffs' reliance in opposition to motion to dismiss on new allegations about meetings and contracts where there was "no hint of these meetings and alleged express contracts in the Amended Complaint"). Here, by contrast, Plaintiffs' request that the Court order Defendants to return them to the United States is squarely premised on the factual allegations and claims against Defendants set forth in the complaint. Defendants' argument therefore boils down an assertion that the *prayer for relief* in

3

Plaintiffs' Amended Complaint negates the additional and different relief that Plaintiffs requested in their summary judgment briefs and proposed order.

The "only exception" to Rule 54(c)'s directive that the complaint does not govern the relief a plaintiff can seek at summary judgment is if the "plaintiff's failure to demand" particular relief in the complaint "has prejudiced the defendant." 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2664 (4th ed.); *accord First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 28 (D.D.C. 1998) ("A party will be denied relief not specified in its Complaint where the opposing party would suffer prejudice."). But Defendants do not and cannot claim such prejudice here. As Plaintiffs explained—and Defendants do not contest—Defendants' own summary judgment brief made clear that they were "very much aware" that Plaintiffs sought return as well as parole. *See First Am. Corp.*, 17 F. Supp. at 28; *see also* Mot. 4 (quoting Defs. MSJ Reply, ECF No. 52 at 19-20, which argued that "[t]he individual Plaintiffs do not identify any basis for an affirmative injunction requiring the government to 'return' them *or to parole them* into the United States").

Defendants also cite several out-of-circuit cases, Mot. 2, for the proposition that "'[a] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)); *see also Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (same). Even assuming that principle applies in this Circuit, and applies to final as well as preliminary relief, it is clearly satisfied. Plaintiffs' Amended Complaint challenged the Rule and Guidance as unlawful. ECF No. 14 ¶¶ 93-116. And it explicitly identified the removed Individual Plaintiffs' unlawful removal from the United States to dangerous locations abroad as part of their harm to be remedied. *Id.* ¶¶ 78-79. Ordering Defendants to return those Plaintiffs to the United

4

States is plainly related to remedying that harm. *Cf. Pac. Radiation Oncology*, 810 F.3d at 637 (request for preliminary relief that was "entirely unrelated" to underlying claims lacked "sufficient nexus" to complaint); *Colvin*, 605 F.3d at 300 (plaintiff had "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint"); *Devose*, 42 F.3d at 471 (no sufficient relationship where motion was "based on new assertions of mistreatment that are entirely different" from claims in underlying complaint).

Tellingly, Defendants entirely ignore the discussions of relief for the Individual Plaintiffs contained in Plaintiffs' summary judgment briefs. *See* Opp. 1-2. As Plaintiffs' motion detailed, their "summary judgment briefs focused on seeking return rather than parole." *See* Mot. 3-4 (citing Pls. MSJ Br., ECF No. 23 at 45; Pls. MSJ Reply, ECF No. 48 at 44; and Pls. Suppl. Reply, ECF No. 65 at 13). Amendment of the judgment under Rule 59(e) is appropriate to remedy a manifest injustice because Plaintiffs' summary judgment briefs and proposed order squarely raised their request for an order requiring Defendants to bring the removed Plaintiffs back to the United States, and this Court's prior judgment did not address that request. *See* Mot. 2-3 & n.1 (collecting cases).

## II.   The Court Has Equitable Authority To Order The Removed Plaintiffs' Return.

Defendants also argue that Plaintiffs do "not identify any basis for an affirmative injunction requiring the government to 'return' them to the United States." Mot. 2. But the Supreme Court's unanimous decision in *Abrego Garcia* dispels any doubt that district courts have equitable authority to order noncitizens be returned to the United States to remedy unlawful removal. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (holding that district court order "properly" ordered government not only to facilitate noncitizen's return following removal, but also to first facilitate his release from imprisonment in foreign country); *see also, e.g.*, *Liu v. SEC*, 591 U.S. 71, 80 (2020) (remedies that restore the status quo are "squarely within the heartland of equity");

5

Fed. R. Civ. P. 65 (authorizing district courts to enter injunctive relief). Indeed, Defendants appear to acknowledge that "traditional equitable principles" can provide this Court authority to require agencies to take certain actions. *See* Opp. 3.

Defendants incorrectly suggest that the relief Plaintiffs seek is based on a claim "that 'an agency failed to take a discrete agency action that it is required to take'" under 5 U.S.C. § 706(1). Opp. 3 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Plaintiffs did not bring any claims under § 706(1). Instead, Plaintiffs' claims—on which this Court has granted them summary judgment—are that relevant aspects of the Rule and the Guidance are contrary to law and arbitrary and capricious under 5 U.S.C. §§ 706(2)(A)-(C). *See* Am. Compl., ECF No. 14 ¶¶ 93-116. The removed Individual Plaintiffs seek an order requiring their return not because of Defendants' *failure* to take some required action, but because of the unlawful action that Defendants have *already taken* by removing them pursuant to the Rule and Guidance. *Id.* ¶¶ 77-80. There is no longer any doubt that this Court has equitable authority to order Defendants to restore the status quo ante and return Plaintiffs to the position they were in before their unlawful removal. *See Abrego Garcia*, 145 S. Ct. at 1018.

Defendants then seek to make use of this Court's conclusion that "parole determinations" are committed to DHS's discretion. Opp. 3 (citing ECF No. 92 at 49-51). But Plaintiffs' motion makes clear that they "do not seek to relitigate the Court's denial of that parole relief." Mot. 1. And it is not true that an order requiring *only* the Plaintiffs' return to the United States "effectively grants them the same relief" as an order requiring *both* their return *and* their parole. *See* Opp. 3. As Plaintiffs explained, "[i]f the Court orders Defendants to return the removed Plaintiffs, DHS will retain its discretion to decide whether or not to also grant parole to one or more of those

6

Plaintiffs upon their arrival." Mot. 6; *see also id.* at 4 (citing longstanding DHS policy providing that parole may or may not be granted as part of facilitation of return following removal).

Along similar lines, Defendants assert that there is "no limiting principle" to courts' ability to order return to remedy unlawful removal. Opp. 4 (quotation marks omitted) (quoting ECF 92 at 50). But there is an obvious limiting principle: Unlike an order requiring parole, an order requiring the Plaintiffs' return to the United States will merely put them back in the same position they were in prior to their unlawful removal—and not any *better* position. Prior to their removals, the removed Plaintiffs were physically within the United States but none of them had been granted parole and none had been granted asylum. If Defendants return those Plaintiffs to the United States pursuant to an order from this Court, those Plaintiffs will all once again physically be on U.S. territory. But none of them will have parole (unless Defendants exercise their own discretion to grant it), and none of them will have asylum (unless and until they demonstrate their eligibility for that relief and Defendants exercise their discretion to grant it).[1]

Defendants also cite the statement in *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), that the district court there lacked authority to order the government to bring the petitioners "to the United States and release them here." Opp. 4 (quoting *Kiyemba*, 555 F.3d at 1028). As Plaintiffs explained, however, *Kiyemba* is factually distinct from this case—and from *Abrego Garcia* and the many other cases Plaintiffs cite—because *Kiyemba* did not involve any allegation of unlawful *removal* from the United States. Mot. 5-6. Instead, the *Kiyemba* petitioners "had never previously been within the United States and had never been removed from the United States" and so "an order requiring their parole into the United States would have permitted them to set foot on U.S.

---

[1] Defendants state that "there is no basis to grant Plaintiffs *greater access* to the United States than they had prior to being subject to the challenged policies," Opp. 5 (emphasis added), but Plaintiffs motion does not request any such relief.

7

territory *for the first time*." *Id.* (citing *Kiyemba*, 555 F.3d at 1023-24). Here, Plaintiffs are in a fundamentally different posture. As in *Abrego Garcia* and other cases ordering the return of noncitizens to remedy unlawful removals, the relief that the removed Plaintiffs seek will restore the status quo ante by literally returning them to the position—within the United States—they were in prior to Defendants' unlawful actions.

Finally, return to the United States is plainly appropriate to afford the removed Plaintiffs complete relief for their unlawful removals. Defendants suggest that the removed Plaintiffs have already "received complete relief" because this Court's vacatur of their prior removal orders places "them *legally* in the same position they were in before the application of the challenged policies." Opp. 5 (emphasis added). But that effectively acknowledges that the removed Plaintiffs have not yet been *factually* placed back in the same position they were in before Defendants' unlawful actions. As in *Abrego Garcia* and other cases, return to the United States is an appropriate and necessary aspect of restoring that status quo ante. *See, e.g.*, *Abrego Garcia*, 145 S. Ct. at 1018 (holding that order for return would properly permit noncitizen's immigration case "to be handled as it would have been had he not been improperly sent to El Salvador"); *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 58 (D.D.C. 2020) (explaining that restoring the status quo ante required the government to return the removed plaintiffs "back to the United States, at no cost to" the plaintiffs).

Defendants also fail to distinguish *Abrego Garcia* or Plaintiffs' other cases. Defendants claim that "all of [Plaintiffs'] cases" concerned noncitizens who "were removed following some sort of *order* limiting removal or request to stay their removal." Opp. 5 (emphasis added). But Defendants ignore the decisions in *Grace* and *Kiakombua*, neither of which concerned removals in violation of prior judicial or administrative orders. Apart from any discussion of parole, both those cases ordered the government to return noncitizens to the United States to remedy removals

8

pursuant to agency policies held to violate statutes. *See* Order at 3, *Grace v. Whitaker*, No. 18-cv-1853 (D.D.C. Dec. 19, 2018) (cited by Plaintiffs at Mot. 3 and ECF No. 48 at 44); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144 (D.D.C. 2018) (cited by Plaintiffs at ECF No. 48 at 44); *Kiakombua*, 498 F. Supp. 3d at 57-58 (cited by Plaintiffs at ECF No. 48 at 44); *see also* Mot. 3 (citing ECF No. 48 at 44 as "collecting cases" that "[']confirm that courts have authority to order the return of noncitizens'"). This Court has already identified the same kind of unlawful removals here, by ruling that "the individual Plaintiffs' removal orders . . . were issued pursuant to unlawful provisions in the Rule and Guidance." ECF 92 at 49; *see generally id.* at 29-38, 42-45. Nor do Defendants offer any explanation for why federal courts would have equitable authority to remedy agencies' violations of administrative orders—as in *Abrego Garcia*, 145 S. Ct. at 1018, and *Singh v. Waters*, 87 F.3d 346, 347, 349-50 (9th Cir. 1996)—but not to remedy agencies' violations of statutes as in this case, *Kiakombua*, and *Grace*. *See also Singh*, 87 F.3d at 349-50 (ordering return to remedy removal that was unlawful both because it violated immigration judge's order and because it violated statute); *cf. Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 402-08 (S.D.N.Y. 2004) (ordering return to remedy removal that violated court order, regulation, and statute).

Finally, Defendants again do not assert that President Trump's Proclamation 10888 issued on January 20, 2025, prevents this Court from ordering Defendants to return the Individual Plaintiffs to the United States. *See* Mot. 6-7 n.2. They have therefore forfeited that argument.

## CONCLUSION

The Court should amend its Summary Judgment Order to grant Plaintiffs' request for an order requiring Defendants "to bring back into the United States any Plaintiffs who is outside the United States at no expense to the plaintiff." *See* Pls. MSJ Proposed Order, ECF No. 23-3 at 1.

9

Dated: June 18, 2025

Lindsay Harrison (D.C. Bar #977407)
Mary E. Marshall (D.C. Bar #1739058)
Maura E. Smyles (D.C. Bar #90006775)*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
T: 202-639-6000
*lharrison@jenner.com*
*mmarshall@jenner.com*
*msmyles@jenner.com*

Melissa Root*
Andrew L. Osborne*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
T: 312-222-9350
*mroot@jenner.com*
*aosborne@jenner.com*

Keren Zwick (D.D.C. Bar. No. IL0055)
Mary Georgevich*
National Immigrant Justice Center
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: 312-660-1370
*kzwick@immigrantjustice.org*
*mgeorgevich@immigrantjustice.org*

Richard Caldarone*
Refugee and Immigrant Center
for Education and Legal Services
P.O. Box 786100
San Antonio, TX 78278
T: (210) 960-3206
*richard.caldarone@raicestexas.org*

Daniel Hatoum*
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
T: 512-474-5073, ext. 208

Respectfully submitted,

/s Lee Gelernt
Lee Gelernt (D.D.C. Bar No. NY0408)
Omar C. Jadwat*
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: 212-549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

Morgan Russell*
Cody Wofsy (D.D.C. Bar No. CA00103)
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, Suite 700
San Francisco, CA 94104
T: 415-343-0770
*mrussell@aclu.org*
*cwofsy@aclu.org*

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street NW
Suite 200
Washington, D.C. 20005
T: 202-355-4471
*crowmelissa@uclawsf.edu*

Blaine Bookey*
Edith Sangueza*
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
T: 415-581-8825
*bbookey@uclawsf.edu*
*sanguezaedith@uclawsf.edu*

Robert Pauw*
Center for Gender and Refugee Studies
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: 206-682-1080

*daniel@texascivilrightsproject.org*
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: 202-457-0800
*aspitzer@acludc.org*
*smichelman@acludc.org*

*rpauw@ghp-law.net*

Ashley Alcantara Harris*
David A. Donatti*
American Civil Liberties Foundation of Texas
P.O. Box 8306
Houston, TX 77288
T: 713-942-8146
*aharris@aclutx.org*
*ddonatti@aclutx.org*

*Attorneys for Plaintiffs*

*\*Admitted via certificate of pro bono representation or pro hac vice*

11